# Exhibit A



# DEPARTMENT OF LAW
## CITY OF CHICAGO

# MEMORANDUM

TO: TRACEY TRAUTMAN
Acting Director, Bureau of Justice Assistance
Office of Justice Programs
United States Department of Justice

FROM: EDWARD SISKEL
Corporation Counsel, Department of Law

RE: Validation of Compliance with 8 U.S.C. § 1373
FY 2016 Byrne JAG Grant
Project Number: 2016-DJ-BX-0106 (City of Chicago)
Date of Award: September 7, 2016

DATE: June 30, 2017

---

In response to Special Condition #52 of the FY 2016 Byrne JAG grant received by the City of Chicago ("Chicago"), and correspondence dated April 21, 2017 from Acting Assistant Attorney General Alan R. Hanson to Chicago Police Superintendent Eddie Johnson, this office has reviewed the Municipal Code of Chicago ("Municipal Code"), including Chicago's Welcoming City Ordinance ("WCO"), codified at Section 2-173, as well as the general and special orders of the Chicago Police Department promulgated thereunder, to determine whether they comply with 8 U.S.C. § 1373 ("Section 1373").[1]

This evaluation was informed by the Office of Justice Programs' July 7, 2016 guidance statement, "Office of Justice Programs Guidance Regarding Compliance with 8 U.S.C. § 1373;" and that office's subsequent October 6, 2016 guidance statement, "Additional Guidance Regarding Compliance with 8 U.S.C. § 1373."

Based on that guidance, as well as the statutory text and other relevant provisions of law, we understand that Section 1373 (1) does not impose any affirmative obligation on state or local entities to collect information from private individuals regarding their immigration status; (2) does not require that state or local entities take any specific actions upon obtaining information concerning a private individual's immigration status in the absence of an intergovernmental

---

[1] By submitting this memorandum validating its compliance, Chicago reserves all rights, and specifically does not concede that Section 1373 constitutes "applicable federal law" within the meaning of the Edward Byrne Memorial Justice Assistance grant program's authorizing statute, 42 U.S.C. § 3752, or that federal funding can lawfully be conditioned on compliance with Section 1373.

request for such information; (3) does not address any restrictions by state or local entities on cooperation with ICE regarding detainers or release date notification requests, and (4) does not require state or local entities to act in a manner inconsistent with the U.S. Constitution or federal law.

Having reviewed the applicable statute, ordinances, general and special orders of the Chicago Police Department, and Department of Justice guidance, Chicago can certify that the WCO and police department orders comply with Section 1373. Neither the WCO nor the police department orders prohibits or in any way restricts Chicago or Chicago's employees from sending to or receiving from Immigration and Customs Enforcement ("ICE") information regarding the lawful or unlawful citizenship or immigration status of any person. Furthermore, neither the WCO nor the police department orders prohibits, or in any way restricts, information concerning the lawful or unlawful immigration status of any person from being sent to, or requested from, ICE; maintaining such information; or exchanging such information with any other federal, state, or local government entity.

## BACKGROUND

### 1. Chicago's Welcoming City Ordinance and Police Department Orders

Chicago has long been committed to serving as a welcoming city, and to fostering an environment of safety and inclusion among its residents. That commitment was embodied in an Executive Order issued by Mayor Harold Washington on March 7, 1985 ("Order").[2] The Order's purpose was to encourage equal access where permitted by law to benefits and services to which Chicago residents are entitled regardless of national origin or citizenship status. To that end, Section 3 of the Order prohibited Chicago agents and agencies from requesting information about or otherwise investigating or assisting in the investigation of a person's citizenship or residency status. Section 4 of the Order prohibited an agent or agency from disseminating information about a person's citizenship or residency status "unless required to do so by legal process."

On March 29, 2006, the City Council of the City of Chicago codified the Order by enacting the WCO. *See* Coun. J. 3-29-06, p. 74325. In its preamble, the WCO affirmed Chicago's policy of ensuring that all residents have access to city services for which they are eligible or entitled, without regard to their immigration status under federal law. The preamble further stated that requiring local law enforcement to enforce federal civil immigration law would cause a chilling effect on crime prevention and investigation, as witnesses and victims might be afraid to cooperate with local authorities for fear of possible deportation.

Mayor Rahm Emanuel amended the WCO in 2012 to add sections stating the ordinance's purpose and intent, and clarifying that the enforcement of civil immigration law is primarily a federal responsibility. Mayor Emanuel amended the WCO again in 2016 to prohibit City agents and agencies from making threats based on a person's citizenship or immigration status. Given Chicago's unwavering commitment to public safety and community policing, cooperation between law enforcement officials and the immigrant community was of vital concern to Chicago—and it remains a vital concern today.

---

[2] Mayor Washington's Executive Order 85-1 was ratified and adopted in subsequent mayoral administrations by Mayor David Orr as Executive Order 87-5, Mayor Eugene Sawyer as Executive Order 87-8, and Mayor Richard M. Daley as Executive Order 89-6.

Like Sections 3 and 4 of the Order, Sections 20 and 30 of the WCO address sharing information concerning a person's citizenship or immigration status:

### 2-173-020    Requesting information prohibited.

No agent or agency shall request information about or otherwise investigate or assist in the investigation of the citizenship or immigration status of any person unless such inquiry or investigation is required by Illinois State Statute, federal regulation, or court decision. Notwithstanding this provision, the Corporation Counsel may investigate and inquire about immigration status when relevant to potential or actual litigation or an administrative proceeding in which the City is or may be a party.

### 2-173-030    Disclosing information prohibited.[3]

Except as otherwise provided under applicable federal law, no agent or agency shall disclose information regarding the citizenship or immigration status of any person unless required to do so by legal process or such disclosure has been authorized in writing by the individual to whom such information pertains, or if such individual is a minor or is otherwise not legally competent, by such individual's parent or guardian.

The policies embodied by the WCO are reflected in Chicago Police Department Special Order S06-14-03 ("Special Order").[4] The Special Order deals primarily with issues related to detainer and notification requests that the Chicago Police Department receives from ICE. In addition, consistent with the WCO's non-collection policy concerning an individual's citizenship or immigration status, the Special Order provides that the Chicago Police Department "may seek information on immigration status during the course of an investigation … only when the individual is in custody and" certain other criteria are met. It does not restrict individuals from sharing information regarding citizenship or immigration status with the federal government.

2.    **8 U.S.C. Section 1373**

Section 1373 bars state or local entities from "prohibit[ing], or in any way restrict[ing], any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a). In addition, "no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual: (1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service. (2) Maintaining such information. (3) Exchanging such information with any other Federal, State, or local government entity." 8 U.S.C. § 1373(b).

---

[3] Headings provided in the Municipal Code are for convenience and reference only, and are not considered part of the text of any section. Municipal Code § 1-4-100.
[4] *Available at* https://goo.gl/KetR56.

3

By its plain terms, Section 1373 relates solely to prohibitions on sharing an individual's citizenship or immigration status among governmental entities, and does not require that such information be shared. Furthermore, Section 1373 creates no affirmative obligation to collect information concerning a person's citizenship or immigration status. *See* Dep't of Justice, July 7, 2016 Guidance ("Section 1373 does not impose on states and localities the affirmative obligation to collect information from private individuals regarding their immigration status, nor does it require that states and localities take specific actions upon obtaining such information.").

Additionally, Section 1373 does not require Chicago to comply with immigration detainer requests issued by ICE. *See* Memorandum from the United States Department of Justice, Office of the Inspector General dated May 31, 2016 ("IG Memo") at p. 4 ("A primary and frequently cited indicator of limitations placed on cooperation by…local jurisdictions with ICE is how the particular…local jurisdiction handles immigration detainer requests issued by ICE, although Section 1373 does not specifically address restrictions by…local entities on cooperation with ICE regarding detainers.") (Emphasis added). Section 1373 refers only to "information regarding the citizenship or immigration status" of an individual. In contrast, a detainer request asks a local law enforcement agency to detain a person of interest to ICE for up to an additional 48 hours after that person would have been released in order to provide ICE an opportunity to take the person into custody. By its terms, Section 1373's prohibition on restricting information sharing with ICE regarding immigration status cannot be construed to include a mandate that local government keep a person in custody.

## DISCUSSION

The WCO complies with Section 1373 for at least two independent reasons. First, the WCO generally prohibits Chicago from requesting or otherwise investigating a person's citizenship or immigration status, whereas Section 1373 prohibits restrictions on the sharing of such information. It follows that Chicago cannot share information concerning a person's citizenship or immigration status if it does not have that information in its possession. Second, while the WCO contains an overall prohibition on the sharing of a person's citizenship or immigration status, it also contains an exception for compliance with applicable federal law. As such, if Chicago were to come into possession of this information, the WCO would not bar Chicago or its officials from sharing the information with the federal government, such as in response to a lawful request.

**1.    Chicago cannot share information that is not in its possession.**

By its terms, Section 1373's scope is limited to addressing policies that prohibit or restrict sharing ("sending" or "receiving") individual citizenship or immigration status information with another unit of government. A policy that prohibits the collection of such information in the first place simply is not a violation of Section 1373. Like the 1985 Order before it, Section 20 of the WCO and the Special Order prohibit the collection of such information unless collection is required by state or federal law, a court decision, or as part of anticipated or pending litigation. To the extent that Chicago might nonetheless come into possession of information concerning an individual's citizenship or immigration status, Section 1373 only addresses policies that prohibit or restrict the sharing of such information with other units of government. But outside of such particular instances, Chicago's overarching policy is non-collection—and Chicago cannot share (or restrict the sharing of) information that it does not have in its possession in the first place. The non-collection policy means that Chicago generally does not possess information to "send[]," but that policy does not prevent any "sending" or "receiving." Thus, except where

4

Chicago acquires immigration status information notwithstanding its non-collection policy, Section 1373 does not apply.

## 2. The WCO does not restrict sharing citizenship or immigration status information with ICE when required by applicable federal law.

To the extent that Chicago has any citizenship or immigration status information, the non-disclosure provisions of Section 30 of the WCO do not restrict such information from being shared within the meaning of Section 1373. Section 30 restricts the disclosure of an individual's citizenship or immigration status information, "[e]xcept as otherwise provided under applicable federal law." Section 30 thus makes clear that an individual's citizenship or immigration status information will *not* be kept confidential if federal law provides otherwise, or the individual has consented to the release of such information.[5] This language, referred to as a "savings clause" in the IG Memo, makes Section 30 compliant with Section 1373.

The IG Memo raised questions about whether the savings clause was sufficient to demonstrate compliance with Section 1373. In particular, the IG Memo stated that the savings clause in Section 30 "creates a potential ambiguity as to the proper construction of the [WCO] ... because, to be effective, the 'savings clause' would render the ordinance null and void whenever ICE officials requested immigration status information from city employees." With respect, this interpretation is wrong for at least two reasons.

*First*, the plain text of Section 30 is clear that City employees are permitted to share immigration information as "provided under applicable federal law" – including Section 1373 to the extent it is applicable and enforceable. To the extent that Chicago comes into possession of information concerning an individual's citizenship or immigration status, Section 30 prevents Chicago from releasing this information publicly, except where such disclosure is provided for under federal law. There is no ambiguity as to when citizenship and immigration status information may be disclosed.

*Second*, Section 30 is not rendered "null and void" when the conditions of the saving clause are met. Rather, Section 30's prohibition on disclosure continues to "do work," because (except to the extent provided by federal law) it bars the release of immigration status information to *private* entities making the same request. Moreover, Section 30 also prevents Chicago from *sua sponte* releasing an individual's citizenship or immigration status information to the general public.

The IG Memo further states that "the very purpose of the Chicago ordinance, based on our review of its history, was to restrict and largely prohibit the cooperation of city employees with ICE." IG Memo at p. 6. This characterization of the purpose of Chicago's WCO is wrong as demonstrated by the history outlined above. The IG Memo's sole support for its assertion is a July 11, 2012 *Chicago Tribune* article in which Mayor Emanuel is quoted as saying "[w]e're not going to turn people over to ICE and we're not going to check their immigration status, we'll check for criminal background, but not for immigration status." Respectfully, this article addresses an amendment to the WCO enacted in September of 2012 that added a new Section 42 concerning the circumstances under which Chicago would comply with detainer or notification

---

[5] This assumes that a governmental request for information concerning an individual's citizenship and immigration status is consistent with the U.S. Constitution and the federal authority being invoked. In the event that the request was unlawful, Chicago would be under no obligation to provide the requested information.

5

requests, and does not restrict in any way the provision of information about citizenship or immigration status information. *See* Coun. J. 9-12-06, p. 33041, § 1. This September 2012 amendment made no change to Sections 20 or 30's information sharing policies, which were enacted six years earlier in 2006.

In sum, Section 30 does not prohibit or restrict the sharing of citizenship or immigration status information with other units of government, and therefore complies with Section 1373. Nor do other Chicago ordinances or any policy of the Chicago Police Department. That conclusion is consistent with decades of practice under the 1985 Order and the WCO, whereby Chicago has applied for and received many grants from the Department of Justice, and at no previous time has Chicago's compliance with Section 1373 been called into question.

## CONCLUSION

Having reviewed the Municipal Code, 8 U.S.C. § 1373, the general and special orders of the Chicago Police Department, and guidance issued by the Department of Justice, we can validate that the WCO and the Police Department's orders are in compliance with 8 U.S.C. § 1373. Should you, or any entity receiving this validation, have questions or wish to discuss further, please do not hesitate to contact me.