# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| THE CITY Of CHICAGO, | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| vs. | ) ) | Civil Action No.1:17-cv-5720 |
| JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States, | ) ) ) | Hon. Harry D. Leinenweber |
| *Defendant.* | ) ) ) ) ) | |

---

## ADDENDUM—LIST OF PROPOSED *AMICI CURIAE*

---

The **American Civil Liberties Union (ACLU)** is a nationwide, nonprofit, nonpartisan organization dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil rights laws. The ACLU, through its Immigrants' Rights Project and state affiliates, engages in a nationwide program of litigation, advocacy, and public education to enforce and protect the constitutional and civil rights of noncitizens. In particular, the ACLU has a longstanding interest in enforcing the constitutional and statutory constraints on the federal government's use of state and local police to enforce civil immigration laws. The ACLU has been counsel and amicus in a variety of cases involving immigration detainers and anti-sanctuary laws, including *Morales v. Chadbourne*, 793 F.3d 208 (1st Cir. 2015); *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014); *Gonzalez v. ICE*, No. 13-cv-4416 (C.D. Cal. filed June 19, 2013); and *City of El Cenizo v. State of Texas*, No. 17-cv-404 (W.D. Tex. filed May 8, 2017).

The **Asian Americans Advancing Justice – Asian Law Caucus (AAAJ-ALC)** is a non-profit organization founded in 1972 and is the nation's first legal and civil rights organization serving the low-income Asian and Pacific Islander communities. AAAJ-ALC has seven program areas focused on housing rights, voting rights, immigrant rights, immigrant youth, labor and employment issues, civil rights and national security, and criminal justice reform. AAAJ-ALC's

immigrant rights' program primarily defends immigrants in deportation proceedings. The mission of AAAJ-ALC is to promote, advance, and represent the legal and civil rights of Asian and Pacific Islander communities. Recognizing that social, economic, political, and racial inequalities continue to exist in the United States, AAAJ-ALC is committed to the pursuit of equality and justice for all sectors of our society, with a specific focus directed toward addressing the needs of low-income, immigrant, and underserved Asians, Pacific Islanders, and other vulnerable communities. AAAJ-ALC was an organizational sponsor of the Trust Act, 2013 Cal. Stat. 4650 (codified at Cal. Gov't Code §§ 7283-7282.5), a California state law that went into effect in California on January 1, 2014, that limits detentions in response to ICE detainer requests. AAAJ-ALC also assisted in drafting and supporting passage of the California Values Act (SB 54) in the 2017 California state legislative cycle to limit local law enforcement entanglement with ICE.

The **Immigrant Legal Resource Center (ILRC)** is a national organization that provides legal trainings, educational materials, and advocacy to advance immigrant rights. ILRC works with grassroots immigrant organizations to promote civic engagement and social change, and trains attorneys, paralegals, and community-based advocates who work with immigrants around the country. ILRC also maintains a comprehensive national map of the extent to which counties are involved in immigration enforcement: www.ilrc.org/local-enforcement-map. Critically, the ILRC advises organizations and elected officials around the country on crafting local policies to protect their immigrant residents from unlawful detention and discrimination. ILRC publishes legal and policy analyses on ICE detainers and the authority of local law enforcement agencies to be involved in immigration enforcement. ILRC also works with law enforcement agencies, public defenders, prosecutors, and various actors in the criminal justice system to protect the rights of immigrants. ILRC provides numerous public resources to explain the complex issues around immigration enforcement and the importance of local policies in protecting immigrant communities.

The **National Immigrant Justice Center (NIJC)** is a program of Heartland Alliance, which provides resettlement services to refugees and mental health services for immigrants and refugees. NIJC, through its staff of attorneys, paralegals and a network of over 1,500 *pro bono* attorneys, provides free or low-cost legal services to immigrants, including detained non-citizens. NIJC's direct representation, as well as its immigration advisals to criminal defense attorneys, has informed its strategic policy and litigation work around the myriad legal and policy problems of entangling local law enforcement in civil immigration enforcement. NIJC is counsel on a host of immigration detainer-related cases including *Jimenez Moreno v. Napolitano*, 11-5452 (N.D. Ill.) and *Makowski v. United States*, 12-5265 (N.D. Ill.). NIJC also advocated for the amendments to the Welcoming City Ordinance (Ch 2-173) in 2012, the Cook County detainer ordinance (11-O-73) in 2011, and the recently enacted Illinois TRUST Act (S.B. 31).

The **National Immigration Project of the National Lawyers Guild (NIPNLG)** is a nonprofit membership organization of immigration attorneys, legal workers, jailhouse lawyers, grassroots

advocates, and others working to defend immigrants' rights and to secure a fair administration of the immigration and nationality laws. The NIPNLG provides technical assistance to the bench and bar, litigates on behalf of noncitizens as amici curiae in the federal courts, hosts continuing legal education seminars on the rights of noncitizens, and is the author of numerous practice advisories as well as IMMIGRATION LAW AND DEFENSE and three other treatises published by Thompson West. Through its membership network and its litigation, the NIPNLG is acutely aware of the problems faced by noncitizens subject to mandatory detention under 8 U.S.C. § 1226(c) and non-citizens unconstitutionally detained by local law-enforcement.

The **New Orleans Workers' Center for Racial Justice (NOWCRJ)** is membership organization founded by guestworkers, immigrant workers, and Black residents of New Orleans in the aftermath of Hurricane Katrina. The Center's members have organized for and won welcoming city policies in New Orleans that make the city safer for all residents, both immigrant and U.S.-born.

The **Northwest Immigrant Rights Project (NWIRP)** is a non-profit legal organization dedicated to the defense and advancement of the rights of noncitizens in the United States. NWIRP provides direct representation to low-income immigrants who are applying for immigration and naturalization benefits and to persons who are placed in removal proceedings. In addition, NWIRP engages in community education to immigrant communities who interact both with federal immigration enforcement and local law enforcement agencies. Thus, NWIRP has a direct interest in the issues presented in this case.

The **Southern Poverty Law Center (SPLC)** fights all forms of discrimination and works to protect society's most vulnerable members through litigation, education, and monitoring organizations that promote hate. SPLC addresses the unique legal needs of immigrant communities, including immigrants affected by law enforcement abuse and immigration detention, as well as immigrant workers in administrative, state, and federal courts throughout the southern United States, including Alabama, Florida, Georgia, Louisiana, and Mississippi.

The **Washington Defender Association (WDA)** is a statewide non-profit association of over 1,300 public defenders, criminal defense attorneys, and investigators across Washington State. WDA is the voice of the public defense community and provides support for zealous and high-quality legal representation by advocating for change, educating defenders, and collaborating with other justice system stakeholders and the broader community to bring about just solutions. WDA works to improve the administration of justice and stimulate efforts to remedy inadequacies in substantive and procedural law that contribute to injustice. For nearly 20 years, WDA's Immigration Project has provided support, training and advocacy to stakeholders in the criminal justice system and the immigration system. WDA has participated as amici and has been granted leave to file amicus briefs at all levels of state and federal courts in Washington and throughout the United States.

# EXHIBIT B



# OFFICE OF THE GOVERNOR

JRTC, 100 W. RANDOLPH, SUITE 16-100
CHICAGO, ILLINOIS 60601

**PAT QUINN**
GOVERNOR

May 4, 2011

Mr. Marc Rapp
Acting Assistant Director, Secure Communities
Immigration and Customs Enforcement
Department of Homeland Security
500 12th Street, S.W.
Washington, D.C. 20536

Dear Acting Assistant Director Rapp:

Re: Secure Communities Program

Please see the enclosed letter from Illinois State Police (ISP) Director Hiram Grau, providing notice of termination of the Secure Communities Memorandum of Agreement (MOA) between ISP and the U.S. Department of Homeland Security's Immigration and Customs Enforcement (ICE).

ISP and ICE executed the Secure Communities MOA in November 2009. The stated purpose of the program, as set forth in the MOA, is to "identify, detain and remove from the United States aliens who have been <u>convicted</u> of <u>serious criminal offenses</u> and are subject to removal" (emphasis added). ICE's statistics on the Secure Communities program, compiled through February 28, 2011, reveal that the implementation of the Secure Communities program in Illinois is contrary to the stated purpose of the MOA: more than 30% of those deported from the United States, under the program, have never been convicted of <u>any</u> crime, much less a serious one. In fact, by ICE's own measure, less than 20% of those who have been deported from Illinois under the program have ever been convicted of a serious crime.

On November 9, 2010, my office directed ISP to suspend the Secure Communities program until a review of the program and its adherence to the MOA could be conducted. Upon evaluation of data provided by ICE to the State of Illinois, conversations between ICE and members of my administration, and a new, proposed MOA from ICE, it is clear that the conflict between the MOA as signed by ISP and ICE's implementation of the program cannot be resolved to the State of Illinois' satisfaction.

Due to the conflict between the stated purpose of Secure Communities and the implementation of the program, ISP will no longer participate in the Secure Communities program.



Mr. Marc Rapp
May 4, 2011
Page 2 of 2

With this termination of the MOA, ISP will play no role in Secure Communities, either actively or as a pass-through for information. As ISP is a necessary party under the current Secure Communities process, with this termination, no new counties in Illinois can be activated and those counties that were previously activated, for their information to pass through ISP to ICE, must be deactivated and removed from the Secure Communities program.

I appreciate your assistance and cooperation with terminating the MOA and ensuring that all Illinois counties are removed from the program. Please feel free to contact my General Counsel, John Schomberg, should you have any additional questions or concerns, at (312) 814-1687.

Sincerely,

Pat Quinn
Governor of Illinois

Enclosure

cc:     Director Hiram Grau, Illinois State Police
        Assistant Director Daniel D. Roberts, FBI
        Assistant Director David Venturella, ICE



## ILLINOIS STATE POLICE
*Office of the Director*

Pat Quinn
*Governor*

May 4, 2011

Hiram Grau
*Director*

Mr. Marc Rapp
Acting Assistant Director, Secure Communities
Immigration and Customs Enforcement
Department of Homeland Security
500 12th Street, S.W.
Washington, D.C. 20536

Dear Acting Assistant Director Rapp:

Re: Secure Communities Program

Pursuant to Section VIII of the Secure Communities Memorandum of Agreement (MOA) between the Illinois State Police (ISP) and the U.S. Department of Homeland Security's Immigration and Customs Enforcement (ICE), executed in November 2009, this letter serves as notice of termination of the MOA.

With this termination of the MOA, ISP will play no role in Secure Communities, either actively or as a pass-through for information. As ISP is a necessary party under the current Secure Communities process, with this termination, no new counties in Illinois can be activated and those counties that were previously activated, for their information to pass through ISP to ICE, must be deactivated and removed from the Secure Communities program.

I appreciate your assistance and cooperation with terminating the MOA and ensuring that all Illinois counties are removed from the program. Please feel free to contact my Interim Chief Legal Counsel, Ms. Suzanne L.Y. Bond, at (217) 782-7658, should you have any additional questions or concerns.

Respectfully,

Hiram Grau
Director

cc:     Assistant Director David Venturella, ICE
        Assistant Director Daniel D. Roberts, FBI

# EXHIBIT C

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



**U.S. Immigration and Customs Enforcement**

The Honorable Jack Markell
Governor of Delaware
Tatnall Building
William Penn Street, 2nd Floor
Dover, DE 19901

AUG 0 5 2011

Dear Governor Markell:

I write regarding the deployment of Secure Communities in your state. U.S. Immigration and Customs Enforcement (ICE) has long viewed state and local governments as being valuable partners that can serve a helpful role in assisting ICE in fulfilling its responsibilities with respect to immigration matters. Accordingly, we take concerns that have been raised with our immigration enforcement programs very seriously.

I seek to clarify an issue that has been the subject of substantial confusion: whether a memorandum of agreement (MOA) between ICE and a state is necessary to operate the program in that state. ICE has determined that an MOA is not required to activate or operate Secure Communities for any jurisdiction. Once a state or local law enforcement agency voluntarily submits fingerprint data to the federal government, no agreement with the state is legally necessary for one part of the federal government to share it with another part. For this reason, ICE has decided to terminate all existing Secure Communities MOAs.

This change will have no effect on the operation of Secure Communities in your state. ICE will continue to operate Secure Communities for jurisdictions where it is already deployed and will continue to activate the program for new jurisdictions. Of course, we will notify your office prior to the activation of any new jurisdictions for your state. We anticipate that all remaining jurisdictions will be activated by 2013.

I would also like to take this opportunity to highlight some recent improvements to the Secure Communities program. These improvements will better advance our shared goals when it comes to immigration enforcement, namely focusing ICE's limited resources on the removal of individuals who pose a threat to public safety or who have flagrantly violated the nation's immigration laws, and to do so in a way that respects civil rights and civil liberties.

First, we have issued a new memorandum designed to assist ICE agents, officers, and attorneys in ensuring that our limited resources are expended on individuals who meet ICE's enforcement priorities by encouraging the exercise of discretion in appropriate cases that fall outside these priorities. At the direction of the Secretary, we also issued a new policy specifically designed to protect victims of domestic violence and other crimes and to make

The Honorable Jack Markell
Page 2

certain these crimes continue to be reported and prosecuted. These new memoranda will help ensure that ICE enforcement programs, including Secure Communities, are focused on individuals who fall within ICE's enforcement priorities—priorities that I am confident you share.

In addition, ICE and the Department of Homeland Security's (DHS) Office for Civil Rights and Civil Liberties (CRCL) announced plans for the enhanced civil rights monitoring of Secure Communities based on in-depth statistical analysis of the operation of the program. ICE and CRCL also implemented new training for state and local law enforcement, unveiled a new civil rights complaint process, and revised the detainer form ICE sends to state and local jurisdictions to emphasize the longstanding guidance that state and local authorities are not to detain an individual for more than 48 hours. These measures will help guarantee that Secure Communities is operated in a manner that is fully consistent with all applicable civil rights and civil liberties laws and policies.

Finally, a special task force of the Homeland Security Advisory Council has been created to provide, among other things, recommendations regarding ways ICE could implement changes to the manner in which Secure Communities addresses those arrested for minor traffic offenses. This task force will also explore whether other minor criminal offenses should be handled in a similar manner. These reforms will help better focus Secure Communities on those individuals that meet ICE's enforcement priorities.

Thank you for your attention to our immigration enforcement efforts. ICE welcomes your thoughts about how our immigration enforcement activities operate in Delaware. With these reforms to Secure Communities, I am confident that we can continue to build a productive relationship between ICE and Delaware.

Enclosed is a fact sheet that more fully describes these changes and responds to other questions about the program. If you have any questions or I can be of further assistance, please feel free to contact me at (202) 732-3000.

Sincerely yours,

John Morton
Director

Enclosure

# EXHIBIT D

DEPARTMENT OF HOMELAND SECURITY
## IMMIGRATION DETAINER - NOTICE OF ACTION

| Subject ID:<br>Event #: | File No:<br>Date: |
|---|---|

| TO: (Name and Title of Institution - OR Any Subsequent Law Enforcement Agency) | FROM: (Department of Homeland Security Office Address) |
|---|---|

Name of Alien: _____

Date of Birth: _____ Citizenship: _____ Sex: _____

**1. DHS HAS DETERMINED THAT PROBABLE CAUSE EXISTS THAT THE SUBJECT IS A REMOVABLE ALIEN. THIS DETERMINATION IS BASED ON (complete box 1 or 2).**

☐ A final order of removal against the alien;
☐ The pendency of ongoing removal proceedings against the alien;
☐ Biometric confirmation of the alien's identity and a records check of federal databases that affirmatively indicate, by themselves or in addition to other reliable information, that the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law; and/or
☐ Statements made by the alien to an immigration officer and/or other reliable evidence that affirmatively indicate the alien either lacks immigration status or notwithstanding such status is removable under U.S. immigration law.

**2. DHS TRANSFERRED THE ALIEN TO YOUR CUSTODY FOR A PROCEEDING OR INVESTIGATION (complete box 1 or 2).**

☐ Upon completion of the proceeding or investigation for which the alien was transferred to your custody, DHS intends to resume custody of the alien to complete processing and/or make an admissibility determination.

**IT IS THEREFORE REQUESTED THAT YOU:**

- **Notify DHS** as early as practicable (at least 48 hours, if possible) before the alien is released from your custody. Please notify DHS by calling ☐ U.S. Immigration and Customs Enforcement (ICE) or ☐ U.S. Customs and Border Protection (CBP) at _____. If you cannot reach an official at the number(s) provided, please contact the Law Enforcement Support Center at: (802) 872-6020.
- **Maintain custody** of the alien for a period **NOT TO EXCEED 48 HOURS** beyond the time when he/she would otherwise have been released from your custody to allow DHS to assume custody. The alien **must be served with a copy of this form** for the detainer to take effect. This detainer arises from DHS authorities and should not impact decisions about the alien's bail, rehabilitation, parole, release, diversion, custody classification, work, quarter assignments, or other matters
- Relay this detainer to any other law enforcement agency to which you transfer custody of the alien.
- Notify this office in the event of the alien's death, hospitalization or transfer to another institution.

☐ If checked: please cancel the detainer related to this alien previously submitted to you on _____ (date).

_____<br>(Name and title of Immigration Officer)　　　　_____<br>(Signature of Immigration Officer) (Sign in ink)

**Notice:** If the alien may be the victim of a crime or you want the alien to remain in the United States for a law enforcement purpose, notify the ICE Law Enforcement Support Center at (802) 872-6020. You may also call this number if you have any other questions or concerns about this matter.

**TO BE COMPLETED BY THE LAW ENFORCEMENT AGENCY CURRENTLY HOLDING THE ALIEN WHO IS THE SUBJECT OF THIS NOTICE:**

Please provide the information below, sign, and return to DHS by mailing, emailing or faxing a copy to _____ .

Local Booking/Inmate #: _____ Estimated release date/time: _____

Date of latest criminal charge/conviction: _____ Last offense charged/conviction: _____

This form was served upon the alien on _____ , in the following manner:

☐ in person ☐ by inmate mail delivery ☐ other (please specify): _____

_____<br>(Name and title of Officer)　　　　_____<br>(Signature of Officer) (Sign in ink)

DHS Form I-247A (3/17)　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1 of 3

### NOTICE TO THE DETAINEE

The Department of Homeland Security (DHS) has placed an immigration detainer on you. An immigration detainer is a notice to a law enforcement agency that DHS intends to assume custody of you (after you otherwise would be released from federal custody) because there is probable cause that you are subject to removal from the United States under federal immigration law.  DHS has requested that the law enforcement agency that is currently detaining you maintain custody of you for a period not to exceed 48 hours beyond the time when you would have been released based on your criminal charges or convictions. **If DHS does not take you into custody during this additional 48 hour period, you should contact your custodian** (the agency that is holding you now) to inquire about your release. **If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.**

### NOTIFICACIÓN A LA PERSONA DETENIDA

El Departamento de Seguridad Nacional (DHS) le ha puesto una retención de inmigración. Una retención de inmigración es un aviso a una agencia de la ley que DHS tiene la intención de asumir la custodia de usted (después de lo contrario, usted sería puesto en libertad de la custodia) porque hay causa probable que usted está sujeto a que lo expulsen de los Estados Unidos bajo la ley de inmigración federal. DHS ha solicitado que la agencia de la ley que le tiene detenido actualmente mantenga custodia de usted por un periodo de tiempo que no exceda de 48 horas más del tiempo original que habría sido puesto en libertad en base a los cargos judiciales o a sus antecedentes penales. **Si DHS no le pone en custodia durante este periodo adicional de 48 horas, usted debe de contactarse con su custodio** (la agencia que le tiene detenido en este momento) para preguntar acerca de su liberación. **Si usted cree que es un ciudadano de los Estados Unidos o la víctima de un crimen, por favor avise al DHS llamando gratuitamente al Centro de Apoyo a la Aplicación de la Ley ICE al (855) 448-6903.**

### AVIS AU DETENU OU À LA DÉTENUE

Le Département de la Sécurité Intérieure (DHS) a placé un dépositaire d'immigration sur vous. Un dépositaire d'immigration est un avis à une agence de force de l'ordre que le DHS a l'intention de vous prendre en garde à vue (après celà vous pourrez par ailleurs être remis en liberté) parce qu'il y a une cause probable que vous soyez sujet à expulsion des États-Unis en vertu de la loi fédérale sur l'immigration. Le DHS a demandé que l'agence de force de l'ordre qui vous détient actuellement puisse vous maintenir en garde pendant une période ne devant pas dépasser 48 heures au-delà du temps après lequel vous auriez été libéré en se basant sur vos accusations criminelles ou condamnations. **Si le DHS ne vous prenne pas en garde à vue au cours de cette période supplémentaire de 48 heures, vous devez contacter votre gardien (ne)** (l'agence qui vous détient maintenant) pour vous renseigner sur votre libération. **Si vous croyez que vous êtes un citoyen ou une citoyenne des États-Unis ou une victime d'un crime, s'il vous plaît aviser le DHS en appelant gratuitement le centre d'assistance de force de l'ordre de l'ICE au (855) 448-6903**

### NOTIFICAÇÃO AO DETENTO

O Departamento de Segurança Nacional (DHS) expediu um mandado de detenção migratória contra você. Um mandado de detenção migratória é uma notificação feita a uma agência de segurança pública que o DHS tem a intenção de assumir a sua custódia (após a qual você, caso contrário, seria liberado da custódia) porque existe causa provável que você está sujeito a ser removido dos Estados Unidos de acordo com a lei federal de imigração. ODHS solicitou à agência de segurança pública onde você está atualmente detido para manter a sua guarda por um período de no máximo 48 horas além do tempo que você teria sido liberado com base nas suas acusações ou condanações criminais. **Se o DHS não leva-lo sob custódia durante este período adicional de 48 horas, você deve entrar em contato com quem tiver a sua custódia** (a agência onde você está atualmente detido) para perguntar a respeito da sua liberação. **Se você acredita ser um cidadão dos Estados Unidos ou a vítima de um crime, por favor informe ao DHS através de uma ligação gratuita ao Centro de Suporte de Segurança Pública do  Serviço de Imigração e Alfândega (ICE) pelo telefone (855) 448-6903.**

**THÔNG BÁO CHO NGƯỜI BỊ GIAM**

Bộ Nội An (DHS) đã ra lệnh giam giữ di trú đối với quý vị. Giam giữ di trú là một thông báo cho cơ quan công lực rằng Bộ Nội An sẽ đảm đương việc lưu giữ quý vị (sau khi quý vị được thả ra) bởi có lý do khả tín quý vị là đối tượng bị trục xuất khỏi Hoa Kỳ theo luật di trú liên bang. Sau khi quý vị đã thi hành đầy đủ thời gian của bản án dựa trên các tội phạm hay các kết án, thay vì được thả tự do, Bộ Nội An đã yêu cầu cơ quan công lực giữ quý vị lại thêm không quá 48 tiếng đồng hồ nữa. Nếu Bộ Nội An không đến bắt quý vị sau 48 tiếng đồng hồ phụ trội đó, quý vị cần liên lạc với cơ quan hiện đang giam giữ quý vị để tham khảo về việc trả tự do cho quý vị. Nếu quý vị là công dân Hoa Kỳ hay tin rằng mình là nạn nhân của một tội ác, xin vui lòng báo cho Bộ Nội An bằng cách gọi số điện thoại miễn phí 1(855) 448-6903 cho Trung Tâm Hỗ Trợ Cơ Quan Công Lực Di Trú.

被拘留者通知書

國土安全部(Department of Homeland Security，簡稱DHS)已經對你發出移民拘留令。移民拘留令為一給予執法機構的通知書，闡明DHS意欲獲取對你的羈押權(若非有此羈押權，你將會被釋放)；因為根據聯邦移民法例，並基於合理的原因，你將會被遞解離美國國境。DHS亦已要求現正拘留你的執法機構，在你因受到刑事檢控或定罪後，而在本應被釋放的程序下，繼續對你作出不超過四十八小時的監管。若你在這附加的四十八小時內，仍未及移交至DHS的監管下，你應當聯絡你的監管人(即現正監管你的機構)查詢有關你釋放的事宜。若你認為你是美國公民或為罪案受害者，請致電**ICE**執法部支援中心**(Law Enforcement Support Center)**知會DHS，免費電話號碼：**(855)448-6903**。

# EXHIBIT E

DEPARTMENT OF HOMELAND SECURITY
**IMMIGRATION DETAINER - NOTICE OF ACTION**

| Subject ID:<br>Event #: | | File No:<br>Date: |
|---|---|---|

| TO: (Name and Title of Institution - OR Any Subsequent Law Enforcement Agency) | FROM: (Department of Homeland Security Office Address) |
|---|---|

**MAINTAIN CUSTODY OF ALIEN FOR A PERIOD NOT TO EXCEED 48 HOURS**

Name of Alien: _____

Date of Birth: _____ Nationality: _____ Sex: _____

**THE U.S. DEPARTMENT OF HOMELAND SECURITY (DHS) HAS TAKEN THE FOLLOWING ACTION RELATED TO THE PERSON IDENTIFIED ABOVE, CURRENTLY IN YOUR CUSTODY:**

☐ Initiated an investigation to determine whether this person is subject to removal from the United States.

☐ Initiated removal proceedings and served a Notice to Appear or other charging document. A copy of the charging document is attached and was served on _____.
(Date)

☐ Served a warrant of arrest for removal proceedings. A copy of the warrant is attached and was served on _____.
(Date)

☐ Obtained an order of deportation or removal from the United States for this person.

*This action does not limit your discretion to make decisions related to this person's custody classification, work, quarter assignments, or other matters. DHS discourages dismissing criminal charges based on the existence of a detainer.*

**IT IS REQUESTED THAT YOU:**

☐ Maintain custody of the subject for a period **NOT TO EXCEED 48 HOURS**, excluding Saturdays, Sundays, and holidays, beyond the time when the subject would have otherwise been released from your custody to allow DHS to take custody of the subject. This request flows from federal regulation 8 C.F.R. § 287.7, which provides that a law enforcement agency "shall maintain custody of an alien" once a detainer has been issued by DHS. **You are not authorized to hold the subject beyond these 48 hours.** As early as possible prior to the time you otherwise would release the subject, please notify the Department by calling _____ during business hours or _____ after hours or in an emergency. If you cannot reach a Department Official at these numbers, please contact the Immigration and Customs Enforcement (ICE) Law Enforcement Support Center in Burlington, Vermont at: (802) 872-6020.

☐ Provide a copy to the subject of this detainer.

☐ Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.

☐ Notify this office in the event of the inmate's death, hospitalization or transfer to another institution.

☐ Consider this request for a detainer operative only upon the subject's conviction.

☐ Cancel the detainer previously placed by this Office on _____.
(Date)

| _____ | _____ |
|---|---|
| (Name and title of Immigration Officer) | (Signature of Immigration Officer) |

**TO BE COMPLETED BY THE LAW ENFORCEMENT AGENCY CURRENTLY HOLDING THE SUBJECT OF THIS NOTICE:**

Please provide the information below, sign, and return to the Department using the envelope enclosed for your convenience or by faxing a copy to _____. You should maintain a copy for your own records so you may track the case and not hold the subject beyond the 48-hour period.

Local Booking or Inmate # _____ Date of latest criminal charge/conviction: _____

Last criminal charge/conviction: _____

Estimated release date: _____

**Notice:** Once in our custody, the subject of this detainer may be removed from the United States. If the individual may be the victim of a crime, or if you want this individual to remain in the United States for prosecution or other law enforcement purposes, including acting as a witness, please notify the ICE Law Enforcement Support Center at (802) 872-6020.

| _____ | _____ |
|---|---|
| (Name and title of Officer) | (Signature of Officer) |

## NOTICE TO THE DETAINEE

The Department of Homeland Security (DHS) has placed an immigration detainer on you. An immigration detainer is a notice from DHS informing law enforcement agencies that DHS intends to assume custody of you after you otherwise would be released from custody. DHS has requested that the law enforcement agency which is currently detaining you maintain custody of you for a period not to exceed 48 hours (excluding Saturdays, Sundays, and holidays) beyond the time when you would have been released by the state or local law enforcement authorities based on your criminal charges or convictions. **If DHS does not take you into custody during that additional 48 hour period, not counting weekends or holidays, you should contact your custodian** (the law enforcement agency or other entity that is holding you now) to inquire about your release from state or local custody. **If you have a complaint regarding this detainer or related to violations of civil rights or civil liberties connected to DHS activities, please contact the ICE Joint Intake Center at 1-877-2INTAKE (877-246-8253). If you believe you are a United States citizen or the victim of a crime, please advise DHS by calling the ICE Law Enforcement Support Center toll free at (855) 448-6903.**

## NOTIFICACIÓN A LA PERSONA DETENIDA

El Departamento de Seguridad Nacional (DHS) de EE. UU. ha emitido una orden de detención inmigratoria en su contra. Mediante esta orden, se notifica a los organismos policiales que el DHS pretende arrestarlo cuando usted cumpla su reclusión actual. El DHS ha solicitado que el organismo policial local o estatal a cargo de su actual detención lo mantenga en custodia por un período no mayor a 48 horas (excluyendo sábados, domingos y días festivos) tras el cese de su reclusión penal. **Si el DHS no procede con su arresto inmigratorio durante este período adicional de 48 horas, excluyendo los fines de semana o días festivos, usted debe comunicarse con la autoridad estatal o local que lo tiene detenido** (el organismo policial u otra entidad a cargo de su custodia actual) para obtener mayores detalles sobre el cese de su reclusión. **Si tiene alguna queja que se relacione con esta orden de detención o con posibles infracciones a los derechos o libertades civiles en conexión con las actividades del DHS, comuníquese con el Joint Intake Center (Centro de Admisión) del ICE (Servicio de Inmigración y Control de Aduanas) llamando al 1-877-2INTAKE (877-246-8253). Si usted cree que es ciudadano de los Estados Unidos o que ha sido víctima de un delito, infórmeselo al DHS llamando al Centro de Apoyo a los Organismos Policiales (Law Enforcement Support Center) del ICE, teléfono (855) 448-6903 (llamada gratuita).**

## Avis au détenu

Le département de la Sécurité Intérieure [Department of Homeland Security (DHS)] a émis, à votre encontre, un ordre d'incarcération pour des raisons d'immigration. Un ordre d'incarcération pour des raisons d'immigration est un avis du DHS informant les agences des forces de l'ordre que le DHS a l'intention de vous détenir après la date normale de votre remise en liberté. Le DHS a requis que l'agence des forces de l'ordre, qui vous détient actuellement, vous garde en détention pour une période maximum de 48 heures (excluant les samedis, dimanches et jours fériés) au-delà de la période à la fin de laquelle vous auriez été remis en liberté par les autorités policières de l'État ou locales en fonction des inculpations ou condamnations pénales à votre encontre. **Si le DHS ne vous détient pas durant cette période supplémentaire de 48 heures, sans compter les fins de semaines et les jours fériés, vous devez contacter votre gardien** (l'agence des forces de l'ordre qui vous détient actuellement) pour vous renseigner à propos de votre libération par l'État ou l'autorité locale. **Si vous avez une plainte à formuler au sujet de cet ordre d'incarcération ou en rapport avec des violations de vos droits civils liées à des activités du DHS, veuillez contacter le centre commun d'admissions du Service de l'Immigration et des Douanes [ICE - Immigration and Customs Enforcement] [ICE Joint Intake Center] au 1-877-2INTAKE (877-246-8253). Si vous croyez être un citoyen des États-Unis ou la victime d'un crime, veuillez en aviser le DHS en appelant le centre d'assistance des forces de l'ordre de l'ICE [ICE Law Enforcement Support Center] au numéro gratuit (855) 448-6903.**

## AVISO AO DETENTO

O Departamento de Segurança Nacional (DHS) emitiu uma ordem de custódia imigratória em seu nome. Este documento é um aviso enviado às agências de imposição da lei de que o DHS pretende assumir a custódia da sua pessoa, caso seja liberado. O DHS pediu que a agência de imposição da lei encarregada da sua atual detenção mantenha-o sob custódia durante, no máximo, 48 horas (excluindo-se sábados, domingos e feriados) após o período em que você seria liberado pelas autoridades estaduais ou municipais de imposição da lei, de acordo com as respectivas acusações e penas criminais. **Se o DHS não assumir a sua custódia durante essas 48 horas adicionais, excluindo-se os fins de semana e feriados, você deverá entrar em contato com o seu custodiante** (a agência de imposição da lei ou qualquer outra entidade que esteja detendo-o no momento) para obter informações sobre a sua liberação da custódia estadual ou municipal. **Caso você tenha alguma reclamação a fazer sobre esta ordem de custódia imigratória ou relacionada a violações dos seus direitos ou liberdades civis decorrente das atividades do DHS, entre em contato com o Centro de Entrada Conjunta da Agência de Controle de Imigração e Alfândega (ICE) pelo telefone 1-877-246-8253. Se você acredita que é um cidadão dos EUA ou está sendo vítima de um crime, informe o DHS ligando para o Centro de Apoio à Imposição da Lei do ICE pelo telefone de ligação gratuita (855) 448-6903**

### THÔNG BÁO CHO NGƯỜI BỊ GIAM GIỮ

Bộ Quốc Phòng (DHS) đã có lệnh giam giữ quý vị vì vì lý do di trú. Lệnh giam giữ vì lý do di trú là thông báo của DHS cho các cơ quan thi hành luật pháp là DHS có ý định tạm giữ quý vị sau khi quý vị được thả. DHS đã yêu cầu cơ quan thi hành luật pháp hiện đang giữ quý vị phải tiếp tục tạm giữ quý vị trong không quá 48 giờ đồng hồ (không kể thứ Bảy, Chủ nhật, và các ngày nghỉ lễ) ngoài thời gian mà lẽ ra quý vị sẽ được cơ quan thi hành luật pháp của tiểu bang hoặc địa phương thả ra dựa trên các bản án và tội hình sự của quý vị. **Nếu DHS không tạm giam quý vị trong thời gian 48 giờ bổ sung đó, không tính các ngày cuối tuần hoặc ngày lễ, quý vị nên liên lạc với bên giam giữ quý vị** (cơ quan thi hành luật pháp hoặc tổ chức khác hiện đang giam giữ quý vị) để hỏi về việc cơ quan địa phương hoặc liên bang thả quý vị ra. **Nếu quý vị có khiếu nại về lệnh giam giữ này hoặc liên quan tới các trường hợp vi phạm dân quyền hoặc tự do công dân liên quan tới các hoạt động của DHS, vui lòng liên lạc với ICE Joint Intake Center tại số 1-877-2INTAKE (877-246-8253). Nếu quý vị tin rằng quý vị là công dân Hoa Kỳ hoặc nạn nhân tội phạm, vui lòng báo cho DHS biết bằng cách gọi ICE Law Enforcement Support Center tại số điện thoại miễn phí (855) 448-6903.**

### 对被拘留者的通告

美国国土安全部（DHS）已发出对你的移民监禁令。移民监禁令是美国国土安全部用来通告执法当局，表示美国国土安全部意图在你可能从当前的拘留被释放以后继续拘留你的通知单。美国国土安全部已经向当前拘留你的执法当局要求，根据对你的刑事起诉或判罪的基础，在本当由州或地方执法当局释放你时，继续拘留你，为期不超过 48 小时（星期六、星期天和假日除外）。如果美国国土安全部未在不计周末或假日的额外 48 小时期限内将你拘留，你应该联系你的监管单位（现在拘留你的执法当局或其他单位），询问关于你从州或地方执法单位被释放的事宜。如果你对于这项拘留或关于美国国土安全部的行动所涉及的违反民权或公民自由权有任何投诉，请联系美国移民及海关执法局联合接纳中心（ICE Joint Intake Center），电话号码是 1-877-2INTAKE (877-246-8253)。如果你相信你是美国公民或犯罪被害人，请联系美国移民及海关执法局的执法支援中心（ICE Law Enforcement Support Center），告知美国国土安全部。该执法支援中心的免费电话号码是 (855) 448-6903。

# EXHIBIT F

U.S. Department of Justice

Immigration and Naturalization Service

# Immigration Detainer - Notice of Action

|  |
|---|
| File No. |
| Date: |

| To: (Name and title of institution) | From: (INS office address) |
|---|---|
|  |  |

Name of alien: _____

Date of birth: _____  Nationality: _____  Sex: _____

## You are advised that the action noted below has been taken by the Immigration and Naturalization Service concerning the above-named inmate of your institution:

☐ Investigation has been initiated to determine whether this person is subject to removal from the United States.

☐ A Notice to Appear or other charging document initiating removal proceedings, a copy of which is attached, was served on

_____.
(Date)

☐ A warrant of arrest in removal proceedings, a copy of which is attached, was served on _____.
(Date)

☐ Deportation or removal from the United States has been ordered.

## It is requested that you:

Please accept this notice as a detainer. This is for notification purposes only and does not limit your discretion in any decision affecting the offender's classification, work and quarters assignments, or other treatment which he or she would otherwise receive.

☐ Federal regulations (8 CFR 287.7) require that you detain the alien for a period not to exceed 48 hours (excluding Saturdays, Sundays and Federal holidays) to provide adequate time for INS to assume custody of the alien. You may notify INS by calling
_____ during business hours or _____ after hours in an emergency.

☐ Please complete and sign the bottom block of the duplicate of this form and return it to this office. ☐ A self-addressed stamped envelope is enclosed for your convenience. ☐ Please return a signed copy via facsimile to _____.
(Area code and facsimile number)

Return fax to the attention of _____, at _____.
(Name of INS officer handling case)    (Area code and phone number)

☒ Notify this office of the time of release at least 30 days prior to release or as far in advance as possible.

☒ Notify this office in the event of the inmate's death or transfer to another institution.

☐ Please cancel the detainer previously placed by this Service on _____.

_____          _____
(Signature of INS official)                      (Title of INS official)

**Receipt acknowledged:**

Date of latest conviction: _____  Latest conviction charge: _____
Estimated release date: _____

Signature and title of official: _____

Form I-247 (Rev. 4-1-97)N

# EXHIBIT G



U.S. Department of Justice

Office of Justice Programs

*Office of the Assistant Attorney General*

*Washington, D.C. 20531*

July 7, 2016

**MEMORANDUM**

TO:         Michael Horowitz
            Inspector General
            U.S. Department of Justice

FROM:       Karol V. Mason
            Assistant Attorney General
            Office of Justice Programs

SUBJECT:    Response: Department of Justice Referral of Allegations of Potential
            Violations of 8 U.S.C. § 1373 by Grant Recipients

We appreciate the review undertaken by the Department of Justice (DOJ or the Department), Office of the Inspector General (OIG) regarding compliance with 8 U.S.C. § 1373 (Section 1373) by the Department's grant recipients. In conducting this review, OIG selected 10 state and local jurisdictions for further review. For these jurisdictions, OIG researched the local laws and policies that govern their interactions with U.S. Immigration and Customs Enforcement (ICE) and compared these local laws and policies with Section 1373. OIG then provided this report to the Department to assist the Department in determining the appropriate next steps to ensure compliance with Section 1373.

The Office of Justice Programs (OJP) has determined that Section 1373 is an applicable federal law for the purposes of the Edward Byrne Memorial Justice Assistance Grant (JAG) program and the State Criminal Alien Assistance Program (SCAAP). To ensure that grantees comply with Section 1373, OJP has provided the attached guidance to all JAG and SCAAP grantees. Notably, this guidance provides grantees and applicants with clear direction on the requirements of Section 1373:

Title 8, United States Code, Section 1373 addresses the exchange of information regarding citizenship and immigration status among federal, state, and local government entities and officials. Subsection (a) prevents federal, state and local government entities and officials from "prohibit[ing] or in any way restrict[ing]" government officials or entities from sending to, or receiving from, federal immigration officers information concerning an individual's citizenship or immigration status. Subsection (b) provides that no person or agency may

"prohibit, or in any way restrict," a federal, state, or local government entity from (1) sending to, or requesting or receiving from, federal immigration officers information regarding an individual's immigration status, (2) maintaining such information, or (3) exchanging such information with any other federal, state, or local government entity. Section 1373 does not impose on states and localities the affirmative obligation to collect information from private individuals regarding their immigration status, nor does it require that states and localities take specific actions upon obtaining such information. Rather, the statute prohibits government entities and officials from taking action to prohibit or in any way restrict the maintenance or intergovernmental exchange of such information, including through written or unwritten policies or practices.

To ensure that grantees comply with Section 1373 and all other applicable federal law, OJP already requires all applicants for any grant program electronically to acknowledge and accept the conditions contained in two attached documents titled "Standard Assurances" and "Certifications Regarding Lobbying; Debarment, Suspension and Other Responsibility Matters; and Drug-Free Workplace Requirements" as preconditions to a grant award. The Standard Assurances document currently states: "The applicant hereby assures and certifies compliance with all applicable Federal statutes, regulations, policies, guidelines, and requirements ...." These assurances and certifications are required for participation in the SCAAP repayment program as well.

Accompanying this letter are Q&As in response to questions received from Bureau of Justice Assistance grantees regarding compliance with Section 1373. Additionally, OJP has requested that grantees ensure that the Department's guidance is clearly communicated to their personnel and subrecipients, as well as other relevant partners and/or other entities. We believe that these steps will help ensure that grantees are complying with Section 1373.

Attachments

cc:     The Honorable Peter J. Kadzik
        Assistant Attorney General
        Office of Legislative Affairs