UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CITY OF CHICAGO,<br><br>                       *Plaintiff*,<br>    v.<br><br>JEFF SESSIONS, Attorney General of the United States,<br><br>                       *Defendant*. | Civil Action No. 1:17-cv-05720<br><br>Hon. Harry D. Leinenweber |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO STAY NATIONWIDE APPLICATION OF PRELIMINARY INJUNCTION**

DATED: September 26, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOEL R. LEVIN
Acting United States Attorney

JOHN R. TYLER
Assistant Director

STEPHEN J. BUCKINGHAM
Special Counsel

ARJUN GARG
W. SCOTT SIMPSON
Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*

**INTRODUCTION**

This Court entered a preliminary injunction against the Department of Justice's "imposition of the notice and access conditions on the Byrne JAG grant," and declared that the injunction "is nationwide in scope." (Dkt. No. 78 at 40-41.) Concurrent with filing this motion, Defendant has appealed the Court's Order. (Dkt. No. 79.) Pursuant to Federal Rule of Civil Procedure 62(d), Defendant respectfully requests that this Court stay the portion of the preliminary injunction that gives the injunction nationwide application, pending the resolution of appellate review.

Defendant respectfully believes both that the notice and access conditions are lawful and, separately, that a nationwide injunction is improper here. This stay request focuses only on the nationwide scope of the injunction, however, because that aspect of the Court's ruling, in combination with the contemplated timeline for 2017 Byrne JAG grant-making, threatens irreparable, broad, and especially inequitable harm. Nearly 1,000 applications for 2017 Byrne JAG funds were submitted and remain outstanding, and the Department intended by September 30, 2017 to issue award documents to applicants nationwide stating the applicable 2017 grant conditions. But the Department now faces a true Hobson's choice: either (1) issue 2017 Byrne JAG awards without the notice and access conditions for *any* outstanding application, making those conditions unenforceable for the grant cycle—*even if Defendant ultimately prevails* on the lawfulness of those conditions; or (2) inordinately delay issuing 2017 award documents while the conditions' lawfulness is further adjudicated, delaying the flow of funding to law enforcement around the nation.

The nationwide preliminary injunction thus triggers for the Department a dilemma between forfeiting imposition of the notice and access conditions for all outstanding 2017 Byrne JAG applications versus disrupting prudent administration of the Byrne JAG program to await the result of further litigation. Because of that predicament, and because there is a substantial likelihood that

1

the nationwide scope of the injunction will be overturned, a stay as to the nationwide scope of the injunction is necessary.

Under Defendant's proposed stay, the City of Chicago would retain for itself the benefit of the Court's preliminary injunction of the notice and access conditions. In response to other jurisdictions' 2017 Byrne JAG applications, the Department would, under this proposal, anticipate issuing, in an expeditious manner, award documents that include the notice and access conditions. In this scenario where the nationwide application of the preliminary injunction is stayed, applicants who do not contest the conditions would be free to accept the award and receive funds immediately. Those applicants who do contest the conditions would be free either to await resolution in this case or seek relief themselves. That state of play—not the Hobson's choice that the nationwide preliminary injunction creates for the Department—is more equitable.

For these reasons, Defendant respectfully requests a stay of the nationwide scope of the preliminary injunction pending the resolution of appellate proceedings. If the Court declines to grant that relief, Defendant asks alternatively that the Court stay the nationwide scope of the preliminary injunction until the Seventh Circuit decides whether such a stay is appropriate pending the resolution of appellate proceedings. To promote efficient disposition of this motion, Defendant proposes that, if the Court believes additional briefing is necessary, the City may have until October 3 (one week) to file its response, and Defendant will waive a reply.

## BACKGROUND

### A. The 2017 Byrne JAG Grant-Making Cycle

Applications for 2017 Byrne JAG awards were generally due by September 5, 2017. (Second Decl. of Alan R. Hanson ("2d Hanson Decl.") ¶ 3, filed herewith.) The Department has received nearly 1,000 applications from State and local jurisdictions nationwide seeking 2017 Byrne JAG funds. (*Id.* ¶ 4). In response to these applications, the Department has not as of this

time issued 2017 Byrne JAG award documents to any jurisdictions other than the County of Greenville, South Carolina and the City of Binghamton, New York—both of which were issued award documents on August 23, 2017. (*Id.* ¶ 5).

With respect to 2017 Byrne JAG applications generally, the Department had "aim[ed] . . . to issue the award notifications by September 30, 2017, although that timing is not mandatory." (Dkt. No. 28 ¶ 4; *see also* 2d Hanson Decl. ¶ 7.) Once the Department issues award documents to an applicant, "the applicant has at least 45 calendar days to sign and submit the award acceptance document." (Dkt. No. 28 ¶ 5.) "Only at *that* time [of acceptance] – upon signing the award document – does a grantee commit to abide by the grant conditions." (*Id.*)

### B. The Court's Nationwide Preliminary Injunction

In this case, the City sought a preliminary injunction concerning what the Court describes as "the notice condition, the access condition, and the compliance condition" that the Department sought to apply to 2017 Byrne JAG awards. (Dkt. No. 78 at 5.) The Court preliminarily enjoined the notice and access conditions, but granted no relief to the City as to the compliance condition "because the City has failed to establish a likelihood of success on the merits" as to that condition. (*Id.* at 41.)

In opposing the City's motion for a preliminary injunction, Defendant argued as to the scope of any injunction that, if the Court were to "determine that injunctive relief is appropriate here, any such relief should be limited to the City." (Dkt. No. 32 at 25.) With respect to the two conditions that the Court determined to enjoin, the Court stated instead that its "injunction against imposition of the notice and access conditions is nationwide in scope, there being no reason to think that the legal issues present in this case are restricted to Chicago or that the statutory authority given to the Attorney General would differ in another jurisdiction." (Dkt. No. 78 at 41 (citing *Int'l Refugee Assistance Project v. Trump*, 857 F.3d 554, 605 (4th Cir. 2017).)

3

## LEGAL STANDARD

"While an appeal is pending from an interlocutory order . . . that grants . . . an injunction, the court may suspend . . . an injunction on terms for bond or other terms that secure the opposing party's rights." Fed. R. Civ. P. 62(c). In determining whether to stay an order pending appeal, a court considers "the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014).

A stay pending appeal is intended "to minimize the costs of error" and can be "necessary to mitigate the damage that can be done during the interim period before a legal issue is finally resolved on its merits." *Id.* Such interim relief to preserve the status quo is especially appropriate with respect to a preliminary injunction, because "one reason for permitting the immediate appeal of a preliminary injunction is that such an injunction is entered after a summary proceeding, increasing the risk of error." *Ty, Inc. v. Publications Int'l Ltd.*, 292 F.3d 512, 516 (7th Cir. 2002).[1]

## ARGUMENT

**I.   Defendant Is Likely to Succeed on the Merits in Appealing the Nationwide Scope of the Preliminary Injunction.**

Defendant is likely to succeed in demonstrating on appeal that the nationwide scope of the Court's preliminary injunction is improper. Any injunction here should have been limited to the City's Byrne JAG application, because both constitutional and equitable principles require that injunctive relief be limited to redressing a plaintiff's own cognizable injuries.

Article III requires that "a plaintiff must demonstrate standing . . . for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (citation

---

[1] Before moving in the Court of Appeals for a stay pending appeal, "[a] party must ordinarily move first in the district court for . . . an order suspending . . . an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1).

4

omitted). "The remedy" sought therefore must "be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis* v. *Casey*, 518 U.S. 343, 357 (1996). "The actual-injury requirement would hardly serve [its] purpose . . . of preventing courts from undertaking tasks assigned to the political branches[,] if once a plaintiff demonstrated harm from one particular inadequacy in government administration, the court were authorized to remedy all inadequacies in that administration." *Id*.

Equitable principles independently require that the extraordinary relief of an injunction "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (citation omitted); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 163 (2010) (narrowing injunction in part because the plaintiffs "do not represent a class, so they could not seek to enjoin such an order on the ground that it might cause harm to other parties"); *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1272 (7th Cir. 1995) (stating that "a court abuses its discretion where the scope of injunctive relief exceeds the extent of the plaintiff's protectible rights" (citation omitted)).

These constitutional and equitable limits countermand the nationwide injunction entered here. The injunction is overbroad because the City suffers no cognizable injury based on the imposition of the conditions on other Byrne JAG applicants. To the extent the City has a cognizable injury, it is fully redressed by an injunction limited to the imposition of conditions on the City itself. Relatedly, it is inequitable to disrupt administration of the Byrne JAG program nationwide on the basis of asserted harms to a single applicant, where no class action has been certified.

As a constitutional matter, the nationwide scope of the injunction is improper because the City's ability to obtain grant funding and its obligation to comply with conditions are wholly

unaffected by the nature of conditions imposed on other applicants. Thus, the City cannot demonstrate that its own injury would be less than fully redressed if the notice and access conditions were enjoined as to the City only. To the extent that other Byrne JAG applicants believe they would be injured by those conditions, they are free to bring their own challenges—and a few have done so, although most have not (presumably in part because many applicants are perfectly content to comply with the notice and access conditions). Here, in all events, the City does not have, and has never claimed, standing to assert purported injuries to Byrne JAG applicants at large.

Apart from these standing constraints, equitable considerations also counsel against the nationwide scope of the injunction. The nationwide injunction imposes sweeping disruption of the Department's administration of the Byrne JAG program on the basis of asserted harms to only one of over nearly 1,000 applicants. Moreover, because this case is not a class action where the result will bind all Byrne JAG applicants, entry of a nationwide injunction asymmetrically subjects the Department to the risk of a nationwide class action if the Department loses, without allowing the Department the corresponding benefit if the Department wins. Here, for example, Byrne JAG applicants apart from the City remain free to seek a preliminary injunction of the compliance condition, even though this Court found that relief unwarranted. For all of these reasons, any injunctive relief here should be focused on the City and not on other Byrne JAG applicants who are not before the Court.

The City, for its part, has previously echoed these same principles in protesting against a nationwide injunction, exhorting the Supreme Court last year to scrutinize whether a "proven standing injury justified an expansive nationwide injunction," because courts should not adopt "a standing rule for nationwide injunctions that effectively gives objecting parties the right to veto federal policies in every locality in the country . . . through sweeping injunctions that bear little

6

relation to the narrow harms asserted." *See* Brief for Amici Curiae, *United States v. Texas*, 136 S. Ct. 2271 (2016) (No. 15-674), 2016 WL 891345, at *5, *19 (Mar. 7, 2016).

In support of the nationwide injunction here, this Court cited the Fourth Circuit's *International Refugee Assistance Project* ("*IRAP*") decision. (Dkt. No. 78 at 41.) That non-controlling authority is presently on appeal to the Supreme Court, including as to the overbreadth of the injunction in that case. *See Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2086 (2017). The Fourth Circuit's *IRAP* decision is wrong, but even on its own terms it is distinguishable from this case, because that decision relied on factors that are not present here. First, the *IRAP* court asserted that "Plaintiffs are dispersed throughout the United States." 857 F.3d at 605. Second, the court stated that "nationwide injunctions are especially appropriate in the immigration context, as Congress has made clear that 'the immigration laws of the United States should be enforced vigorously and uniformly.'" *Id*. (citation omitted). Third, because the court had found a violation of the Establishment Clause, it reasoned that even enforcement against others would "reinforce the 'message' that Plaintiffs 'are outsiders, not full members of the political community.'" *Id*. (citation omitted). Here, by contrast, there is only a single plaintiff; the case involves conditions on grant funding rather than the application of immigration law to foreign nationals; and the Establishment Clause is not implicated. The Fourth Circuit's *IRAP* decision (even if it were correct) thus does not bear the weight of the nationwide injunction entered here.

Because Defendant has made a strong showing that success is likely on appeal of the nationwide scope of the preliminary injunction, this factor weighs in favor of granting the requested stay pending appeal.

**II.    Absent a Stay, the Nationwide Preliminary Injunction Will Cause Irreparable Injury.**

The nationwide injunction, if left unstayed, bestows irreparable harm on the Department no matter the path the Department takes in response. As the Department earlier announced in

7

previewing the 2017 Byrne JAG cycle, and as it told the Court, the Department had "aim[ed] . . . to issue the award notifications by September 30, 2017." (Dkt. No. 28 ¶ 4; *see also* 2d Hanson Decl. ¶ 7.) In view of the constitutional notice requirement for imposing conditions on grants, *see South Dakota v. Dole*, 483 U.S. 203, 207 (1987), any conditions that the Department proposes to attach to 2017 Byrne JAG awards seemingly need to be stated in the award notifications that are issued for prospective recipients to consider accepting.

Although the September 30 target "is not mandatory," (Dkt. No. 28 ¶ 4), reasonably timely issuance of award notifications is important for prudent administration of the Byrne JAG program, so that jurisdictions can timely receive funding to support law enforcement activity. (2d Hanson Decl. ¶ 10.) Even without any additional delay, never before have virtually all Byrne JAG applications remained outstanding for the issuance of award documents at this advanced juncture (*i.e.*, late September) in the grant-making cycle. (*Id.* ¶ 9.) A significant delay in the grant-making process past September 30 raises the prospect of imposing particular burdens for localities with relatively small budgets (*id.* ¶ 11), disrupting State grant-making processes under which States issue sub-awards of Byrne JAG funds (*id.* ¶ 12), and undermining recovery efforts in jurisdictions that have recently suffered disasters (*id.* ¶ 13).

At the present juncture in the 2017 Byrne JAG grant-making process, nearly 1,000 applications for Byrne JAG grants have been received from applicants nationwide. (2d Hanson Decl. ¶ 4.) Those applications await the Department's issuance of award notifications so that the recipients can accept the grant (with whatever grant conditions are stated in the award) and Byrne JAG award money can flow. (*Id.* ¶ 5.) Nationwide 2017 Byrne JAG funding available to be awarded is projected to total up to approximately $257 million. (*Id.* ¶ 6.)

In view of the status of the 2017 Byrne JAG grant-making process, the nationwide injunction leaves the Department with dueling, irreconcilable imperatives. On one hand, the

Department could prioritize minimizing disruption to the Byrne JAG program by proceeding now with issuing award notifications nationwide that omit the preliminarily enjoined notice and access conditions. But doing so would sacrifice the Department's ability to impose those conditions for 2017 even if the Department prevails in this litigation, meaning that the preliminary injunction would have final effect for this grant cycle. On the other hand, the Department could hold the issuance of 2017 Byrne JAG award notifications while further litigating the lawfulness of including the notice and access conditions, litigation the Department would naturally pursue given the constraints on its grant administration resulting from the Court's injunction. But doing so will disrupt the timely administration of the Byrne JAG program, delaying the release of hundreds of millions of dollars in law enforcement funding.

Neither alternative is palatable; both cause irreparable harm. A stay of the nationwide scope of the preliminary injunction, by contrast, would allow reasonably timely award notifications to proceed while largely preserving the Department's ability to pursue imposing the notice and access conditions for 2017 Byrne JAG grants. This factor thus supports the requested stay pending appeal.

**III.   Staying Nationwide Application of the Preliminary Injunction Will Not Injure the City of Chicago.**

The City faces no injury from a stay of the nationwide scope of the preliminary injunction. Defendant emphasizes that the Court is not being asked to stay the effect of that injunction with respect to the City's 2017 Byrne JAG application, as to which the notice and access conditions would remain preliminarily enjoined under Defendant's proposed stay. (Consistent with the Court's preliminary injunction ruling, any 2017 Byrne JAG grant to the City remains contingent on the City's ability to establish that it is in compliance with 8 U.S.C. § 1373 as per stated conditions.) Accordingly, this factor favors granting the requested stay pending appeal.

IV. **The Public Interest Favors Staying Nationwide Application of the Preliminary Injunction.**

The proposed stay supports the public interest because, as discussed above, it enables the Department to avoid a tradeoff between disrupting administration of the Byrne JAG program and forfeiting for 2017 the notice and access grant conditions that support federal immigration enforcement priorities. The public suffers under either of those options. But with the nationwide scope of the preliminary injunction stayed pending appeal, the 2017 Byrne JAG grant-making process can proceed without the Department altogether losing its ability to pursue imposing the notice and access conditions for 2017 Byrne JAG grants. This factor, too, thus supports the requested stay.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court stay the nationwide application of its preliminary injunction during the pendency of appellate review. If the Court declines to grant that relief, Defendant asks alternatively that the Court stay the nationwide scope of the preliminary injunction until the Seventh Circuit decides whether such a stay is appropriate pending the resolution of appellate proceedings.

DATED: September 26, 2017   Respectfully submitted,

                                                 CHAD A. READLER
                                                 Acting Assistant Attorney General

                                                 JOEL R. LEVIN
                                                 Acting United States Attorney

                                                 JOHN R. TYLER
                                                 Assistant Director

                                                 STEPHEN J. BUCKINGHAM
                                                 Special Counsel

                                              */s/ Arjun Garg*
ARJUN GARG
W. SCOTT SIMPSON
Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*