# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **THE CITY OF CHICAGO,** | |
| *Plaintiff*, | **Civil Action No. 1:17-cv-05720** |
| **v.** | |
| **JEFF SESSIONS, Attorney General of the United States,** | **Hon. Harry D. Leinenweber** |
| *Defendant*. | |

## NOTICE OF APPEAL

**PLEASE TAKE NOTICE** that Defendant Jeff Sessions, Attorney General of the

United States, hereby appeals to the United States Court of Appeals for the Seventh Circuit

from the Memorandum Opinion and Order dated September 15, 2017 (Dkt. No. 78).

DATED:  September 26, 2017          Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOEL R. LEVIN
Acting United States Attorney

JOHN R. TYLER
Assistant Director

STEPHEN J. BUCKINGHAM
Special Counsel

 */s/ Arjun Garg*
ARJUN GARG
W. SCOTT SIMPSON
Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE CITY OF CHICAGO,

                   Plaintiff,

      v.

JEFFERSON BEAUREGARD
SESSIONS III, Attorney
General of the United States,

                   Defendant.

Case No. 17 C 5720

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

This case involves the intersection between federal immigration policies and local control over policing. Defendant Jefferson Beauregard Sessions III, the Attorney General of the United States, seeks to impose new conditions on an annual federal grant relied on by the City of Chicago for law enforcement initiatives. These conditions require additional cooperation with federal immigration officials and directly conflict with Chicago's local policy, codified in its Welcoming City Ordinance, which restricts local officials' participation in certain federal immigration efforts. Chicago claims its policies engender safer streets by fostering trust and cooperation between the immigrant community and local police. Chicago's policies are at odds with the immigration enforcement

priorities and view of public safety espoused by the Attorney General.

Against this backdrop, the City of Chicago claims that these new conditions are unlawful and unconstitutional, and implores this Court to grant a preliminary injunction enjoining their imposition. For the reasons described herein, the Court grants in part, and denies in part, the City of Chicago's Motion for a Preliminary Injunction.

## I.  FACTUAL BACKGROUND

### A.  The Edward Byrne Memorial<br>Justice Assistance Grant Program

The federal grant at issue is awarded by the Edward Byrne Memorial Justice Assistance Grant Program (the "Byrne JAG grant"). *See,* 34 U.S.C. § 10151 (formerly 42 U.S.C. § 3750). Named after a fallen New York City police officer, the Byrne JAG grant supports state and local law enforcement efforts by providing additional funds for personnel, equipment, training, and other criminal justice needs. *See,* 34 U.S.C. § 10152 (formerly 42 U.S.C. § 3751). The Byrne JAG grant is known as a formula grant, which means funds are awarded based on a statutorily defined formula. *See,* 34 U.S.C. § 10156 (formerly 42 U.S.C. § 3755). Each state's allocation is keyed to its population and the amount of reported violent crimes. *Ibid.* The

City of Chicago (the "City") has received Byrne JAG funds since 2005, including $2.33 million last year on behalf of itself and neighboring political entities. (*See,* Decl. of Larry Sachs, ¶¶ 3, 11-12.) The City has used these funds to buy police vehicles and to support the efforts of non-profit organizations working in high crime communities. (*See, id.* ¶ 4.)

**B. New Conditions on the Byrne JAG Grant**

In late July 2017, the Attorney General announced two new conditions on every grant provided by the Byrne JAG program. (*See,* Byrne JAG Program, FY 2017 Local Solicitation, Ex. 11 to Def.'s Br.) The two new conditions require, first, that local authorities provide federal agents advance notice of the scheduled release from state or local correctional facilities of certain individuals suspected of immigration violations, and, second, that local authorities provide immigration agents with access to City detention facilities and individuals detained therein. Additionally, a condition on Byrne JAG funds was added last year that requires the City to certify compliance with a federal statute, 8 U.S.C. § 1373, which prohibits local government and law enforcement officials from restricting the sharing of information with the Immigration and Naturalization Service ("INS") regarding the citizenship status of any individual. (*See,* FY 2016 Chicago/Cook County JAG Program Grant

- 3 -

Award, dated Sept. 7, 2017, at 2-13, Ex. C to Decl. of Alan Hanson ("Hanson Decl.").) The condition to certify compliance is also imposed on 2017 Byrne JAG funds. (*See,* Byrne JAG Program, FY 2017 Local Solicitation, Ex. 11 to Def.'s Br.) The exact text of the three conditions is as follows:

> (1) A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that, when a State (or State-contracted) correctional facility receives from DHS a formal written request authorized by the Immigration and Nationality Act that seeks advance notice of the scheduled release date and time for a particular alien in such facility, then such facility will honor such request and -- as early as practicable -- provide the requested notice to DHS.

> (2) A State statute, or a State rule, -regulation, -policy, or -practice, must be in place that is designed to ensure that agents of the United States acting under color of federal law in fact are given to access any State (or State-contracted) correctional facility for the purpose of permitting such agents to meet with individuals who are (or are believed by such agents to be) aliens and to inquire as to such individuals' right to be or remain in the United States.

> (3) The applicant local government must submit the required 'Certification of Compliance with 8 U.S.C. 1373' (executed by the chief legal officer of the local government).

(Byrne JAG Program Grant Award for County of Greenville, Special Conditions ("Byrne Conditions"), ¶¶ 53, 55-56, Ex. A to Hanson Decl.; *see also* Hanson Decl., ¶ 6.) These conditions will be

- 4 -

referred to respectively as the notice condition, the access condition, and the compliance condition. The City claims all three conditions are unlawful and unconstitutional, even though it acquiesced to the compliance condition when accepting the 2016 Byrne JAG funds.

The compliance condition requires the City to certify compliance with Section 1373. (Byrne Conditions ¶ 53.) Section 1373 is titled "Communication between government agencies and the Immigration and Naturalization Service" and provides as follows, 8 U.S.C. § 1373:

**(a) In General**

Notwithstanding any other provision of Federal, State, or local law, a Federal, State, or local government entity or official may not prohibit, or in any way restrict, any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual.

**(b) Additional Authority of Government Entities**

Notwithstanding any other provision of Federal, State, or local law, no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual:
**(1)** Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service.
**(2)** Maintaining such information.
**(3)** Exchanging such information with any other Federal, State, or local government entity.

- 5 -

**(c) Obligation to Respond to Inquiries**

The Immigration and Naturalization Service shall respond to an inquiry by a Federal, State, or local government agency, seeking to verify or ascertain the citizenship or immigration status of any individual within the jurisdiction of the agency for any purpose authorized by law, by providing the requested verification or status information.

### C. The City's Welcoming Ordinance

Chicago's Welcoming City Ordinance (the "Ordinance") is a codified local policy that restricts the sharing of immigration status between residents and police officers. *See,* Chicago, Illinois, Municipal Code § 2-173-005 *et seq*. The explicit purpose of the Ordinance is to "clarify what specific conduct by City employees is prohibited because such conduct significantly harms the City's relationship with immigrant communities." *Id.* § 2-173-005. The Ordinance reflects the City's belief that the "cooperation of the City's immigrant communities is essential to prevent and solve crimes and maintain public order, safety and security in the entire City" and that the "assistance from a person, whether documented or not, who is a victim of, or a witness to, a crime is important to promoting the safety of all its residents." *Ibid.* Since the mid-1980s, the City has had in place some permutation of this policy, typically in the form of executive orders that prohibited City agents and agencies from

requesting or disseminating information about individuals'
citizenship. (*See*, Executive Order 85-1, 89-6, Exs. A-B to
Pl.'s Br.) First codified in Chicago's Municipal Code in 2006,
the Ordinance was augmented in 2012 to refuse immigration agents
access to City facilities and to deny immigration detainer
requests unless certain criteria were met. *See,* Chicago,
Illinois Municipal Code § 2-173-005. An immigration detainer
request is a request from Immigration and Customs Enforcement
("ICE"), asking local law enforcement to detain a specific
individual for up to 48 hours to permit federal assumption of
custody.

The Ordinance prohibits any "agent or agency" from
"request[ing] information about or otherwise investigat[ing] or
assist[ing] in the investigation of the citizenship or
immigration status of any person unless such inquiry or
investigation is required by Illinois State Statute, federal
regulation, or court decision." *Id.* § 2-173-020. It goes on to
forbid any agent or agency from "disclos[ing] information
regarding the citizenship or immigration status of any person."
*Id.* § 2-173-030. The Ordinance specifically characterizes
"[c]ivil immigration enforcement actions" as a "[f]ederal
responsibility," and provides as follows:

- 7 -

a.  Except for such reasonable time as is necessary to conduct the investigation specified in subsection (c) of this section, no agency or agent shall:

    1.  arrest, detain or continue to detain a person solely on the belief that the person is not present legally in the United States, or that the person has committed a civil immigration violation;

    2.  arrest, detain, or continue to detain a person based on an administrative warrant entered into the Federal Bureau of Investigation's National Crime Information Center database, or successor or similar database maintained by the United States, when the administrative warrant is based solely on a violation of a civil immigration law; or

    3.  detain, or continue to detain, a person based upon an immigration detainer, when such immigration detainer is based solely on a violation of a civil immigration law.

b.

    1.  Unless an agency or agent is acting pursuant to a legitimate law enforcement purpose that is unrelated to the enforcement of a civil immigration law, no agency or agent shall:

        A.  permit ICE agents access to a person being detained by, or in the custody of, the agency or agent;

        B.  permit ICE agents use of agency facilities for investigative interviews or other investigative purpose; or

- 8 -

           C.    while on duty, expend their time
           responding to ICE inquiries or
           communicating with ICE regarding
           a person's custody status or release
           date.

        2.    An agency or agent is authorized to
        communicate with ICE in order to determine
        whether any matter involves enforcement
        based solely on a violation of a civil
        immigration law.

     c.    This section shall not apply when an
     investigation conducted by the agency or agent
     indicates that the subject of the investigation:

        1.    has an outstanding criminal warrant;

        2.    has been convicted of a felony in
        any court of competent jurisdiction;

        3.    is a defendant in a criminal case in
        any court of competent jurisdiction where
        a judgment has not been entered and
        a felony charge is pending; or

        4.    has been identified as a known gang
        member either in a law enforcement agency's
        database or by his own admission.

*Id.* § 2-173-042. The Ordinance is thus irreconcilable with the notice and access conditions the Attorney General has imposed on the 2017 Byrne JAG grant.

After receiving notice of the Attorney General's new conditions on the Byrne JAG grant program, the City filed suit alleging that the conditions were unconstitutional and unlawful. Throughout this litigation, the City has strenuously argued for

its prerogative to allocate scarce local police resources as it sees fit – that is, to areas other than civil immigration enforcement – and for the soundness of doing so based on the integral role undocumented immigrant communities play in reporting and solving crime. (*See,* Pl.'s Br. at 2-4.) Before the Court is the City's Motion for a Preliminary Injunction, requesting the Court enjoin the Attorney General from imposing the three above-described conditions on FY 2017 Byrne JAG funds.

The Court grants the City a preliminary injunction against the imposition of the notice and access conditions on the Byrne JAG grant. The Court declines to grant the preliminary injunction with respect to the compliance condition.

## II.  <u>ANALYSIS</u>

### A.  Legal Standard

To warrant the entry of a preliminary injunction, the City "must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in its favor, and that an injunction is in the public interest." *Higher Soc'y of Indiana v. Tippecanoe Cty., Indiana,* 858 F.3d 1113, 1116 (7th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008)). Where the Government is the opposing party, the last two factors merge. *Nken v. Holder,*

556 U.S. 418, 435 (2009).  Further, under Seventh Circuit precedent, the Court must also "weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one."  *Harlan v. Scholz,* 866 F.3d 754, 758 (7th Cir. 2017).

### B.  Likelihood of Success on the Merits

This case presents three questions:  Did Congress authorize the Attorney General to impose substantive conditions on the Byrne JAG grant?  If so, did Congress have the power to authorize those conditions under the Spending Clause?  And finally, does Section 1373 violate the Tenth Amendment?  We take these questions in turn.

### 1.  *Executive Authority under the Byrne JAG Statute*

Whether the new conditions on the Byrne JAG grant are proper depends on whether Congress conferred authority on the Attorney General to impose them.  Congress may permissibly delegate authority and discretion to the Executive Branch through statute.  *See, Whitman v. Am. Trucking Ass'ns,* 531 U.S. 457, 472 (2001).  The contours of the Executive Branch's authority are circumscribed by statute because the "power to act . . . [is] authoritatively prescribed by Congress."  *City of Arlington, Tex. v. F.C.C.,* 569 U.S. 290, 297-98 (2013).  Accordingly, we must look to the statute to determine the

- 11 -

authority of the Attorney General to impose conditions on the Byrne JAG grant. In determining the scope of a statute, we look first to its language. *See, United States v. Berkos,* 543 F.3d 392, 396 (7th Cir. 2008). "If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Russello v. United States,* 464 U.S. 16, 20 (1983) (internal quotations omitted). The language and design of the statute as a whole may guide the Court in determining the plain meaning of the text. *Berkos,* 543 F.3d at 396.

The Byrne JAG program was created in 2006 and is codified at 34 U.S.C. §§ 10151-10158 (formerly 42 U.S.C. §§ 3750-3757). These provisions are housed in Subchapter V of Chapter 101 entitled "Justice System Improvement." Subchapter V enumerates the various "Bureau of Justice Assistance Grant Programs" in three parts: Part A covering the Byrne JAG program, Part B covering "Discretionary Grants," and Part C discussing "Administrative Provisions." The authority explicitly granted to the Attorney General within the Byrne JAG statute is limited. The Attorney General is authorized to: determine the "form" of the application, 34 U.S.C. § 10153(a); "reasonably require" "the applicant [to] maintain and report . . . data, records, and

- 12 -

information (programmatic and financial)," 34 U.S.C. § 10152(a)(4); and "develop[] guidelines" for "a program assessment" "in coordination with the National Institute of Justice," 34 U.S.C. § 10152.

In light of the limited express authority the statute confers on the Attorney General, the City argues that Congress did not authorize the Attorney General to place substantive conditions on the Byrne JAG grant. The fact that Congress *did* authorize the Attorney General to place substantive conditions on *other* grants, the City contends, indicates an express reservation of that authority. *See,* 34 U.S.C. § 10142 (formerly 42 U.S.C. § 3742). By failing to direct the Court to any textual authority within the Byrne JAG statute itself, the Attorney General appears to concede the point.

However, the Attorney General argues that Congress expressly authorized imposition of the challenged conditions through a provision of Subchapter I establishing the Office of Justice Programs, which provision allows the Assistant Attorney General to "plac[e] special conditions on all grants" and to "determin[e] priority purposes for formula grants." 34 U.S.C. § 10102(a)(6) (formerly 42 U.S.C. § 3712(a)(6)). The difficulty with the Attorney General's reading of the statute is that this grant of authority to the Assistant Attorney General is located

- 13 -

in an entirely different subchapter governing Office of Justice Programs, whereas Congress codified the later-in-time Byrne JAG program under the aegis of Bureau of Justice Assistant Grant Programs. The statute contains no textual reference that applies this section to the rest of the chapter or specifically to the Byrne JAG program. In fact, Chapter 101 comprises 38 subchapters implicating a broad swath of federal programs and subject matter, ranging from grants for residential substance abuse treatment, *see*, 34 U.S.C. §§ 10421-10426, to criminal child support enforcement, *see*, 34 U.S.C. §§ 10361-10367.

Even assuming that § 10102(a) applies to the Byrne JAG grant, reading the statute as the Attorney General advises results in multiple incongruities within the text.

First, it renders superfluous the explicit statutory authority Congress gave to the Director to impose conditions on *other* Bureau of Justice Assistance grants housed within the same subchapter as the Byrne JAG statute. Congress explicitly provides the Director of the Bureau of Justice Assistance with authority to "determine[]" "terms and conditions" for the discretionary grants itemized in Part B of the statute:

The Director shall have the following duties:

[. . .]

- 14 -

> (2) *Establishing programs in accordance with part B of subchapter V of this chapter* and, following public announcement of such programs, awarding and allocating funds and technical assistance in accordance with the criteria of part B of subchapter V of this chapter, *and on terms and conditions determined by the Director to be consistent with part B of subchapter V of this chapter.*

34 U.S.C. § 10142 (emphases added). As noted earlier, the Byrne JAG grant is a formula grant located in Part A of Subchapter V. The most natural reading of the statute, then, is that Congress endowed the Director with authority to impose conditions on the discretionary grants under Part B, but specifically withheld that authorization for the formula grant, the Byrne JAG grant, in Part A. *See, ibid.* The Attorney General's reading of the statute therefore ignores the ostensibly clear decision by Congress to withhold comparable authority in the Byrne JAG provisions. *See, N.L.R.B. v. SW General, Inc.,* 137 S.Ct. 929, 940 (2017) (noting the *expressio unius* canon's application when "circumstances support a sensible inference that the term left out must have been meant to be excluded") (quotations and alterations omitted). Regardless, it would be quite odd for Congress to give the Attorney General authority to impose conditions on the discretionary grants if it had already provided the Attorney General authority to impose conditions on *all* grants through Section 10102(a)(6). *See,* 34 U.S.C. §

- 15 -

10102(a)(6). This reading would render superfluous the explicit statutory grant of authority to impose conditions on the discretionary grants in Part B. *See, Marquez v. Weinstein, Pinson & Riley, P.S.,* 836 F.3d 808, 811 (7th Cir. 2016) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (quotations and citations omitted).

This conclusion is supported by the fact that Congress specifically conferred authority to impose conditions on other grants housed in the same chapter. Where Congress did so, it did so clearly. For example, Subchapter XIX of Chapter 101 provides federal funds for efforts designed to combat violence against women. *See,* 34 U.S.C. § 10446-10453 (formerly 42 U.S.C. §§ 3796gg-0 to 3796gg-11). There, Congress expressly authorized the Attorney General to impose conditions when administering the grant:

> *In disbursing grants under this subchapter, the Attorney General may impose reasonable conditions on grant awards* to ensure that the States meet statutory, regulatory, and other program requirements.

34 U.S.C. § 10446(e)(3) (emphasis added). Further, Congress expressly limited its delegation of authority to apply only to funds awarded under that specific subchapter. *Ibid.* "Where

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello,* 464 U.S. at 23. What is more, "[w]e do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest." *Jama v. Immigration & Customs Enf't,* 543 U.S. 335, 341 (2005).

Second, even if there were a basis for importing § 10102(a) into the Byrne JAG statute, it is suspect to ground the Attorney General's authority to impose the challenged conditions via the power Congress conferred on the *Assistant* Attorney General. *See,* 34 U.S.C. § 10102(a)(6); *Whitman,* 531 U.S. at 468 ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."). Furthermore, § 10102(a)(6) provides that the Assistant Attorney General shall exercise "such other powers and functions as *may* be vested in the Assistant Attorney General pursuant to this chapter or by delegation of the Attorney General." 34 U.S.C. § 10102(a)(6) (emphasis added). The language of the statute,

- 17 -

including its use of the term "may," implies that any authority
of the Assistant Attorney General to place special conditions on
grants must flow either from the statute itself or from a
delegation of power independently possessed by the Attorney
General. *See, Jama,* 543 U.S. at 346 ("The word 'may'
customarily connotes discretion."). Yet the Attorney General in
this litigation has pointed to no provision other than §
10102(a)(6) to ground its purported authority to condition Byrne
JAG grants.

The Attorney General's reliance on 34 U.S.C. § 10102(a)(6)
is persuasive only to the extent one scrutinizes the provision
without the illumination of the rest of the statute. *See,
Gonzales v. Oregon,* 546 U.S. 243, 273 (2006) (statutes "should
not be read as a series of unrelated and isolated provisions").
Viewed in its context, however, § 10102(a)(6) is better
understood as allowing the Attorney General to delegate powers
to the Assistant Attorney General to aid in administering the
Office of Justice Programs – whereas the Byrne JAG grant is a
Bureau of Justice Assistance Program that is both housed in a
distinctly different subchapter of Chapter 101 and isolated from
other discretionary grants within its own subchapter. Reading
§ 10102(a)(6) to authorize the Attorney General to impose
substantive conditions on all grants under the entire chapter is

- 18 -

discordant with the specific and clear grants of authority in other sections of the statute.

This conclusion rests on principles of statutory interpretation. It does not imply that Congress *cannot* impose the conditions at issue. *See, Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 17 (1981) ("[O]ur cases have long recognized that Congress may fix the terms on which it shall disburse federal money to the States."). On the contrary, Congress may well have Spending Clause power to impose the conditions or delegate to the Executive Branch the power to impose them, including the notice and access condition, but it must exert that power through statute. The Executive Branch cannot impose the conditions without Congressional authority, and that authority has not been conferred through Section 10102.

The notice and access conditions therefore exceed statutory authority, and, consequently, the efforts to impose them violate the separation of powers doctrine and are *ultra vires*. The City has shown a likelihood of success on the merits as to these conditions. We do not reach the question whether the notice and access conditions violate the Spending Clause because, regardless, Congress did not authorize the Attorney General to impose them.

The Attorney General points to one other statutory provision, 34 U.S.C. § 10153 (formerly 42 U.S.C. § 3752), for the authority to impose the compliance condition specifically. Section 10153(a) lays out the Byrne JAG application requirements, which read in relevant part:

(A) In general
To request a grant under this part, the chief executive officer of a State or unit of local government shall submit an application to the Attorney General within 120 days after the date on which funds to carry out this part are appropriated for a fiscal year, in such form as the Attorney General may require. *Such application shall include the following:*

[. . .]

(5) *A certification, made in a form acceptable to the Attorney General* and executed by the chief executive officer of the applicant (or by another officer of the applicant, if qualified under regulations promulgated by the Attorney General), *that—*

[. . .]

(D) *the applicant will comply with* all provisions of this part and *all other applicable Federal laws.*

34 U.S.C. § 10153(a) (emphases added). Specifically, the Attorney General argues that § 10153(a)(5)(D) furnishes the authority to require a Byrne JAG applicant's compliance with federal law, including Section 1373. *See, ibid.* Undeniably, Section 1373 is a federal law that, by its terms, is applicable

- 20 -

to the City.  The City responds that "all other applicable Federal laws" merely refers to compliance with the narrow body of law governing federal grant-making. *See, e.g.,* 42 U.S.C. § 2000d; 29 U.S.C. § 794(a); 42 U.S.C. § 6102.  Both positions are plausible, but for the reasons discussed below, the Attorney General's position is more consistent with the plain language of the statute.

We, as always, begin with the plain language of the statute. *See, Jackson v. Blitt & Gaines, P.C.,* 833 F.3d 860, 863 (7th Cir. 2016).  We "must look to the particular statutory language at issue, as well as the language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291 (1988).  "If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Russello,* 464 U.S. at 20.

The statutory language at issue here is "all other applicable Federal laws."  Black's Law Dictionary defines "applicable" as "[c]apable of being applied; fit and right to be applied" or "affecting or relating to a particular person, group, or situation; having direct relevance." *Black's Law Dictionary* (10th ed. 2014).  This definition embraces both parties' interpretations.  However, the prefatory term in

- 21 -

§ 10153(a)(5)(D), "all other," implies a broader meaning than that tolerated by the City's interpretation. Furthermore, if Congress intended to have the applicant only certify compliance with a limited body of Federal grant-making law, it could have so stated. The City seeks to read into § 10153(a)(5)(D) references to specific federal statutes that are not there.

The City argues that the word "applicable" must have a narrowing effect. (Pl.'s Brief at 19.) However, it is equally reasonable to read "applicable" as referring to the noun, in other words, to refer to the federal laws applicable to the *applicant* – in this case, Chicago. 34 U.S.C. § 10153(a)(5)(D).

The Court will not stretch the natural meaning of the text, especially here where the City offers no case law or other authority to support its straitjacketed interpretation of "all other applicable Federal laws." 34 U.S.C. § 10153; *see also, Sandifer v. U.S. Steel Corp.,* 134 S.Ct. 870, 876 (2014) ("It is a fundamental canon of statutory construction that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.") (quotations omitted).

The Court found no directly analogous case, but when interpreting similar constructions, the Supreme Court has broadly interpreted the term "applicable laws." *See, e.g., Dep't of Treasury v. Fed. Labor Relations Auth.,* 494 U.S. 922,

- 22 -

930 (1990) (interpreting the statutory term "applicable laws" as "laws outside the Act"); *see also, Bennett Enters., Inc. v. Domino's Pizza*, *Inc.,* 45 F.3d 493, 497 (D.C. Cir. 1995) (noting that "all applicable laws" is "not reasonably or fairly susceptible to an interpretation that does not encompass compliance with state and federal tax laws"); *United States Dep't of Health & Human Servs. v. F.L.R.A.,* 844 F.2d 1087, 1094-95 (4th Cir. 1988) (finding statutory requirement that Executive Branch managers follow "applicable laws" to exclude Office of Management and Budget circulars but to encompass a broad panoply of statutory law); *United States v. Odneal,* 565 F.2d 598, 600 (9th Cir. 1977) (reference to "all applicable laws" relating to admiralty grants "very broad statutory authority").

With no authority to support a more narrow reading of "applicable . . . laws" in a statutory context, and some authority (albeit in a different context) to support a broad reading of the phrase, combined with the plain meaning of the language, the Court finds that "all other applicable Federal laws" encompasses Section 1373 as applicable to the Byrne JAG applicant – in this case, the City of Chicago. Here, it is the City's burden as the movant to show otherwise, and it fails to meet that burden on this record. *See, Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997) ("It frequently is observed that a

- 23 -

preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.").

This interpretation leads to a rational reading of the statute, as Congress could expect an entity receiving federal funds to certify its compliance with federal law, as the entity is – independent of receiving federal funds – obligated to comply. At oral argument, the City argued that this interpretation is limitless, allowing the Attorney General to pick from the United States Code like a menu at a restaurant. For several reasons, the City's consternation can be assuaged. First, the default assumption is that states and localities *do* comply with all federal laws. Second, the discretion to demand certifications of compliance is not limitless. The limitations on federal grant conditions announced in *South Dakota v. Dole,* 483 U.S. 203, 207-08 (1987), require that a particular condition, such as a compliance certification, bear some relation to the purpose of the federal funds. And further, as noted at oral argument, any condition attached to federal grants that is too burdensome defeats itself because a state or local government could reject the funds and thus undermine the Attorney General's attempt to induce compliance with the condition.

The City argues that previous conditions have all been tethered to statutes that by their terms apply to federal grant recipients. This may be true, but the fact that the Attorney General has not exercised authority does not necessarily speak to whether he possesses it, especially where the statutory terms embrace such an authorization.

The City has not met its burden to show a likelihood of success on the merits regarding the lack of statutory authority for the compliance condition. The most natural reading of the statute authorizes the Attorney General to require a certification of compliance with all other applicable federal laws, which by the plainest definition includes Section 1373. The City offers no statutory or case law authority to support its narrower reading. Because the lack of authority supporting a narrower interpretation and the plain language of the statute counsel against the City's interpretation of "all other applicable Federal laws," the Court finds that the Attorney General has statutory authority to impose the compliance condition on the Byrne JAG grant.

### 2. *Constitutionality of Section 1373*

Even with Congressional authorization, the compliance condition must be proper under the Spending Clause, and Section 1373 must pass constitutional muster. As the City has

not argued that the compliance condition violates the Spending Clause, the Court now turns to the Section 1373 question.

Although Congressional power is substantial, Congress may not simply "commandeer the legislative processes of the States by directly compelling them to enact and enforce a federal regulatory program." *Travis v. Reno,* 163 F.3d 1000, 1003 (7th Cir. 1998). It also cannot require states "to govern according to Congress' instructions" or circumvent the rule by "conscripting the State's officers directly." *Printz v. United States,* 521 U.S. 898, 935 (1997); *New York v. United States,* 505 U.S. 144, 162 (1992). These prohibitions derive from principles of federalism ingrained in our constitutional system, under which "both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. United States*, 567 U.S. 387, 398 (2012); *see also, Gregory,* 501 U.S. at 459 ("In the tension between federal and state power lies the promise of liberty.").

With the existence of two sovereigns comes occasional conflict. The Supremacy Clause provides the clear rule that federal law "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. "As long as it is acting

within the powers granted it under the Constitution, Congress may impose its will on the States [and] . . . may legislate in areas traditionally regulated by the States." *Gregory,* 501 U.S. at 459-60. Further, the presumption attached to every statute is that it is a constitutional exercise of legislative power. *Reno,* 528 U.S. at 148. We start there, attaching the presumption of constitutionality to Section 1373. Section 1373, in relevant part, provides that "no person or agency may prohibit, or in any way restrict, a Federal, State, or local government entity from doing any of the following with respect to information regarding the immigration status, lawful or unlawful, of any individual: (1) Sending such information to, or requesting or receiving such information from, the Immigration and Naturalization Service; (2) Maintaining such information; (3) Exchanging such information with any other Federal, State, or local government entity." 8 U.S.C. § 1373(b).

It is undisputed that Congress has plenary power to legislate on the subject of aliens. *See, Takahashi v. Fish and Game Commission,* 334 U.S. 410, 419 (1948) ("The Federal Government has broad constitutional powers in determining what aliens shall be admitted to the United States, the period they may remain, regulation of their conduct before naturalization,

- 27 -

and the terms and conditions of their naturalization."). Indeed, immigration regulation and enforcement are federal functions. *See, Arizona,* 567 U.S. at 396-97. Nonetheless, the City argues that Section 1373 violates the Tenth Amendment because it "requires state and local officers to provide information that belongs to Chicago and is available to them only in their official capacity" and requires "state officials to assist in the enforcement of federal statute by regulating private individuals." (Pl.'s Brief at 20 (internal quotations omitted).) Specifically, the City contends that Section 1373 commandeers state and local governments by "controlling the actions of their employees." *Ibid.*

The constitutionality of Section 1373 has been challenged before. The Second Circuit in *City of New York v. United States,* 179 F.3d 29 (2d Cir. 1999), addressed a facial challenge to Section 1373 in similar circumstances. By executive order, New York City prohibited its employees from voluntarily providing federal immigration authorities with information concerning the immigration status of any alien. *Id.* at 31-32. The city sued the United States, challenging the constitutionality of Section 1373 under the Tenth Amendment. *Id.* at 32.

The Second Circuit found that Section 1373 did not compel state or local governments to enact or administer any federal regulatory program or conscript local employees into its service, and therefore did not run afoul of the rules gleaned from the Supreme Court's *Printz* and *New York* decisions. *City of New York,* 179 F.3d at 35. Rather, the court held that Section 1373 prohibits local governmental entities and officials only from directly restricting the voluntary exchange of immigration information with the INS. *Ibid.* The Court found that the Tenth Amendment, normally a shield from federal power, could not be turned into "a sword allowing states and localities to engage in passive resistance that frustrates federal programs." *Ibid.* The Second Circuit concluded that Congress may forbid state and local governments from outlawing their officials' voluntary cooperation with the INS without violating the Tenth Amendment. *Ibid.* As such, the court nullified New York City's executive order mandating non-cooperation with federal immigration authorities to the extent it conflicted with Section 1373. *Id.* at 37.

The City argues that *City of New York v. United States* contravenes the Seventh Circuit's decision in *Travis v. Reno,* 163 F.3d 1000 (7th Cir. 1998), by impermissibly applying a balancing analysis to encroachments on federalism. We agree

- 29 -

with the City that balancing the weight of a federalism infringement is inappropriate, not only under this Circuit's precedent in *Travis,* 163 F.3d at 1003, but Supreme Court precedent as well. *See, Printz,* 521 U.S. at 932 (noting that, where "it is the whole object of the law to direct the functioning of the state executive, and hence to compromise the structural framework of dual sovereignty, such a 'balancing' analysis is inappropriate . . . [N]o comparative assessment of the various interests can overcome that fundamental defect.") (emphasis omitted). However, the logic of *City of New York*'s holding is not indebted to an impermissible balancing test. Rather, *City of New York* relies on the distinction between an affirmative obligation and a proscription:

> In the case of Sections 434 and [1373], Congress has not compelled state and local governments to enact or administer any federal regulatory program. Nor has it affirmatively conscripted states, localities, or their employees into the federal government's service. These Sections do not directly compel states or localities to require or prohibit anything. Rather, they prohibit state and local governmental entities or officials only from directly restricting the voluntary exchange of immigration information with the INS.

*City of New York,* 179 F.3d at 34-35 (citation omitted). The improper balancing the City highlights occurs where the Second Circuit addressed a secondary question yet found the record insufficient to supplant its prior analysis. *Id.* at 36-37. The

prior analysis was its holding – free from any inappropriate balancing – that states do not have the power "to command passive resistance to federal programs." *Id.* at 37. Granted, *City of New York* does not fully address or answer two arguments that are presented in this case: first, that the federal government cannot demand information belonging to the state; and second, that it cannot (even indirectly) control the scope and nature of the duties of state and local employees. *Id.* at 36. The Second Circuit merely deemed the record insufficient on both scores. *Ibid.* Regardless, Supreme Court precedent does not command a different result.

The City relies on *Printz,* but there, the statute at issue required state officers to perform mandatory background checks on prospective handgun purchasers – an affirmative act foisted on local officials by Congress. *See,* 521 U.S. at 933. The Supreme Court held that the statute violated the Tenth Amendment, because the federal government cannot "command the States' officers . . . to administer or enforce a federal regulatory program." *Id.* at 935. However, Section 1373 does not require the "forced participation" of state officers to "administer or enforce a federal regulatory program." *Id.* at 917-18. It merely precludes a state or local government from "prohibit[ing], or in any way restrict[ing], any . . . official"

from sending, requesting, maintaining, or exchanging "information regarding the immigration status . . . of any individual." 8 U.S.C. § 1373. In other words, it prohibits prohibitions on local officials' voluntary participation.

For similar reasons, other cases cited by the City do not advance the ball either. *See, e.g., Reno,* 528 U.S. at 151 (finding the Driver's Privacy Protection Act constitutional because "[i]t does not require the [state] Legislature to enact any laws or regulations, and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals"); *New York,* 505 U.S. at 188 (finding a "take title" provision on nuclear waste unconstitutional because it forced a state to "enact or administer a federal regulatory program" by affirmatively requiring it to legislate a certain way or take ownership of nuclear waste); *F.E.R.C. v. Mississippi,* 456 U.S. 742, 765 (1982) (finding no Tenth Amendment violation in provisions of the Public Utilities Regulatory Policies Act permitting states to regulate public utilities on the condition that they entertain federal proposals, as the statute contained nothing "directly compelling" states to enact a legislative program).

At its core, this case boils down to whether state and local governments can restrict their officials from voluntarily

- 32 -

cooperating with a federal scheme. The Court has not been presented with, nor could it uncover, any case holding that the scope of state sovereignty includes the power to forbid state or local employees from voluntarily complying with a federal program. Like the statute at issue in *Reno,* Section 1373 "does not require" the City "to enact any laws or regulations, and it does not require state officials to assist in the enforcement of federal statutes regulating private individuals." *Reno,* 528 U.S. at 151. Without a doubt, Section 1373 restricts the ability of localities to prohibit state or local officials from assisting a federal program, but it does not *require* officials to assist in the enforcement of a federal program. This distinction is meaningful. In this distinction, Section 1373 is consistent with the constitutional principles enunciated in *New York* and *Printz*. *See, Printz,* 521 U.S. at 935; *New York*, 505 U.S. at 161-63. Because no case has gone so far as to prohibit the federal government from restricting actions that directly frustrate federal law, the Court finds that Congress acts constitutionally when it determines that localities may not prevent local officers from *voluntarily* cooperating with a federal program or discipline them for doing so.

It is worth noting, however, that this case poses a unique and novel constitutional question. The characterization of

Section 1373 as a prohibition that requires no affirmative state action accurately conveys the literal text of the statute, but it does not accurately portray its practical import. Section 1373 mandates that state and city employees have the option of furnishing to the INS information on individuals' immigration status while the employee is acting in his or her capacity as a state or local official. The corollary is that local governments cannot both comply with Section 1373 and discipline an employee for choosing to spend his or her time assisting in the enforcement of federal immigration laws. If a state or local government cannot control the scope of its officials' employment by limiting the extent of their paid time spent cooperating with the INS, then Section 1373 may practically limit the ability of state and local governments to decline to administer or enforce a federal regulatory program. In this way, Section 1373 may implicate the logic underlying the *Printz* decision more than it does the *Reno* rationale. *See, Printz,* 521 U.S. at 929-30.

Read literally, Section 1373 imposes no affirmative obligation on local governments. But, by leaving it up to local officials whether to assist in enforcement of federal immigration priorities, the statute may effectively thwart policymakers' ability to extricate their state or municipality

- 34 -

from involvement in a federal program. Under current case law, however, only affirmative demands on states constitute a violation of the Tenth Amendment. Here, we follow binding Supreme Court precedent and the persuasive authority of the Second Circuit, neither of which elevates federalism to the degree urged by the City here. A decision to the contrary would require an expansion of the law that only a higher court could establish.

Accordingly, the City has not shown a likelihood of success on the merits on the constitutionality of Section 1373.

### C. Irreparable Harm

The City has demonstrated the second factor of the preliminary injunction analysis – irreparable harm. In assessing irreparable harm, courts must analyze whether the "harm . . . cannot be prevented or fully rectified by the final judgment after trial." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is deemed irreparable. *Stuller, Inc. v. Steak N Shake Enterprises, Inc.,* 695 F.3d 676, 680 (7th Cir. 2012). Here, the City contends that, in the absence of an injunction, it must either forego the Byrne JAG grant funds it has specifically earmarked for life-saving technology that detects when and where

gunshots are fired (P.I. Hrg. Tr. at 31:8-32:9) or accede to the new conditions the Attorney General has placed on the funds and suffer the collapse of trust between local law enforcement and immigrant communities that is essential to ferreting out crime.

Two recent cases have dealt with preliminary injunctions regarding facts similar to those before the Court. Though the legal issues presented in these cases are different than those at bar, the harms alleged are sufficiently analogous. In both cases, the district court found that the plaintiff established irreparable injury. In *City of El Cenizo v. State,* the court entered a preliminary injunction and credited the plaintiff's assertion that it would suffer two forms of irreparable harm: (1) "Trust between local law enforcement and the people they serve, which police departments have worked so hard to promote, will be substantially eroded and result in increased crime rates"; and (2) "Local jurisdictions face severe economic consequences . . . including . . . the loss of grant money." *City of El Cenizo v. State,* No. SA-17-CV-404-OLG, 2017 WL 3763098, at *39 (W.D. Tex. Aug. 30, 2017). In *County of Santa Clara v. Trump,* the court found that the plaintiff established a "constitutional injury" and irreparable harm "by being forced to comply with an unconstitutional law or else face financial injury." *County of Santa Clara v. Trump,* No. 17-CV-00485-WHO,

2017 WL 1459081, at *27 (N.D. Cal. Apr. 25, 2017), *reconsideration denied,* No. 17-CV-00485-WHO, 2017 WL 3086064 (N.D. Cal. July 20, 2017).

The harm to the City's relationship with the immigrant community if it should accede to the conditions is irreparable. Once such trust is lost, it cannot be repaired through an award of money damages, making it the type of harm that is especially hard to "rectif[y] by [a] final judgment." *Roland Mach.,* 749 F.2d at 386.

The Attorney General minimizes the impact of the relatively modest Byrne JAG funds on public safety and argues that the City could, by simply declining the funds, avoid any loss of trust between local law enforcement and the immigrant communities. However, a "Hobson's choice" can establish irreparable harm. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381 (1992). In *Morales,* the Supreme Court held that a forced choice between acquiescing to a law that the plaintiff believed to be unconstitutional and violating the law under pain of liability was sufficient to establish irreparable injury. *Ibid.* In the same way, forcing the City either to decline the grant funds based on what it believes to be unconstitutional conditions or accept them and face an irreparable harm, is the type of "Hobson's choice" that supports irreparable harm. Further, a

- 37 -

constitutional violation may be sufficient to establish irreparable injury as a matter of law. *See,* 11A Charles Alan Wright et al., Federal Practice & Procedure § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."); *see also, Ezell v. City of Chicago,* 651 F.3d 684, 698–700 (7th Cir. 2011); *Doe v. Mundy,* 514 F.2d 1179, 1183 (7th Cir. 1975).

The lack of injury afflicting the Attorney General in the absence of an injunction buttresses the City's showing of irreparable harm. The Seventh Circuit has described this factor as follows:

> In deciding whether to grant a preliminary injunction, the court must also consider any irreparable harm that the defendant might suffer from the injunction—harm that would not be either cured by the defendant's ultimately prevailing in the trial on the merits or fully compensated by the injunction bond that Rule 65(c) of the Federal Rules of Civil Procedure requires the district court to make the plaintiff post. The cases do not usually speak of the defendant's *irreparable* harm, but the qualification is implicit; if the defendant will not be irreversibly injured by the injunction because a final judgment in his favor would make him whole, the injunction will not really harm him. But since the defendant may suffer irreparable harm from the entry of a preliminary injunction, the court must not only determine that the plaintiff will suffer irreparable harm if the preliminary injunction is denied—a threshold requirement for granting a preliminary injunction—but also weigh that harm against any irreparable harm that

the defendant can show he will suffer if the injunction is granted.

*Roland Mach.,* 749 F.2d at 387 (emphasis in original). Although harm to federal interests should not be diminished, a delay in the imposition of new conditions that have yet to go into effect will likely not cause any harm akin to that alleged by the City. The Attorney General has put forth no comparable claim that a delay in imposition of the new Byrne JAG conditions would permanently harm community relationships or any other interest that would be difficult to remedy through money damages. *See, Kansas v. United States,* 249 F.3d 1213, 1227 (10th Cir. 2001) (noting that maintaining the status quo was unlikely to affect a substantial public interest in the short time of the injunction).

Thus, the Court finds that the City has established that it would suffer irreparable harm if a preliminary injunction is not entered.

### D. Balancing of Equities and the Public Interest

The remaining two factors in the preliminary injunction analysis merge where the Government is a party. *Nken,* 556 U.S. at 435. These two factors are not outcome-determinative here. Both sides can claim that concerns of public safety justify their positions.

The City and *amici* strongly emphasize the studies and other evidence demonstrating that sanctuary cities are safer than their counterparts. Although both parties before the Court have emphatically stressed the importance of their policy choice to decrease crime and support law enforcement – with Chicago emphasizing the benefits that flow from immigrant communities freely reporting crimes and acting as witnesses, and the Attorney General emphasizing the need to enforce federal immigration law – choosing between competing public policies is outside the realm of judicial expertise and is best left to the legislative and executive branch. *See, Nat'l Fed'n of Indep. Bus. v. Sebelius,* 567 U.S. 519, 538 (2012) (noting that the courts are "vested with the authority to interpret the law; [they] possess neither the expertise nor the prerogative to make policy judgments").

Accordingly, the final two factors favor neither party. Both parties have strong public policy arguments, the wisdom of which is not for the Court to decide. Accordingly, the Court finds that balancing the equities and weighing the public interest do not tip the scale in favor of either party.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Court grants the City a preliminary injunction against the Attorney General's imposition

of the notice and access conditions on the Byrne JAG grant. The City has established a likelihood of success on the merits as to these two conditions and irreparable harm if an injunction does not issue, and the other two preliminary injunction factors do not sway the analysis. This injunction against imposition of the notice and access conditions is nationwide in scope, there being no reason to think that the legal issues present in this case are restricted to Chicago or that the statutory authority given to the Attorney General would differ in another jurisdiction. *See, Int'l Refugee Assistance Project v. Trump,* 857 F.3d 554, 605 (4th Cir. 2017).

The Court denies the City's Motion for a Preliminary Injunction with respect to the compliance condition, because the City has failed to establish a likelihood of success on the merits.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated:  September 15, 2017

- 41 -

APPEAL,MASON

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 6.1.1.2 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:17-cv-05720
## Internal Use Only

The City of Chicago v. Sessions III
Assigned to: Honorable Harry D. Leinenweber
Cause: 05:702 Administrative Procedure Act

Date Filed: 08/07/2017
Jury Demand: None
Nature of Suit: 899 Other Statutes:
Administrative Procedures Act/Review or
Appeal of Agency Decision
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**The City of Chicago**                    represented by   **Andrew W Worseck**
City of Chicago, Department of Law
30 North LaSalle Street
Suite 1230
Chicago, IL 60602
312.744.0220
Email: aworseck@cityofchicago.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward N Siskel**
City of Chicago
Department of Law
121 N. LaSalle
Room 600
Chicago, IL 60602
(312) 744-0220
Email: edward.siskel@cityofchicago.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Ari Holtzblatt**
Wilmer Cutler Pickering Hale and Dorr
LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6964
Email: Ari.Holtzblatt@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ari J Savitzky**
Wilmer Cutler Pickering Hale and Dorr
LLP
1875 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6232
Email: Ari.Savitzky@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Bridget Fahey**
WilmerHale
1875 Pennsylvania Ave NW
Washington, DC 20006
(202) 663-6746
Email: Bridget.Fahey@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**David W. Ogden**
Wilmer Cutler Pickering Hale & Dorr LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6440
Email: David.Ogden@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Debo P. Adegbile**
Wilmer Cutler Pickering Hale and Dorr
LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10013
(212) 295-6717
Email: Debo.Adegbile@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Harnaik Singh Kahlon**
Riley Safer Holmes & Cancila, LLP
70 West Madison Avenue
Suite 2900
Chicago, IL 60602
(312) 471-8751
Email: nkahlon@rshc-law.com

*ATTORNEY TO BE NOTICED*

**Jamie S Gorelick**
Wilmer Cutler Pickering Hale and Dorr
LLP
Washington, DC 20006
Washington, DC, DC 20006
(202) 663-6500
Email: Jamie.Gorelick@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura A Kleinman**
Riley Safer Holmes & Cancila, LLP
Three First National Plaza
70 W. Madison Street, Suite 2900
Chicago, IL 60602
312.471.8685
Email: lkleinman@rshc-law.com
*ATTORNEY TO BE NOTICED*

**Matthew Charles Crowl**
Riley Safer Holmes & Cancila LLP
Three First National Plaza
70 West Madison Street
Suite 2900
Chicago, IL 60602
312-471-8720
Email: mcrowl@rshc-law.com
*ATTORNEY TO BE NOTICED*

**Molly Jennings**
Wilmer Cutler Pickering Hale and Dorr
LLP
1801 Pennsylvania Avenue NW
Washington, DC 20006
(202) 663-6947
Email: Molly.Jennings@wilmerhale.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Ronald S. Safer**
Riley Safer Holmes & Cancila LLP
Three First National Plaza
70 West Madison St
Suite 2900
Chicago, IL 60602

(312) 471-8736
Email: rsafer@rshc-law.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **Jefferson Beauregard Sessions III**<br>*Attorney General of the United States* | represented by | **Arjun Garg**<br>U.S. Department of Justice<br>20 Massachusetts Ave, NW<br>Civil Division, Federal Programs Branch<br>Washington, DC 20530<br>(202) 305-8613<br>Email: arjun.garg@usdoj.gov<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Stephen Joseph Buckingham**
United States Department of Justice
20 Massachusetts Avenue, NW
Room 7119
Washington, DC 20001
202 514 3330
Email: stephen.buckingham@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**AUSA - Chicago**
United States Attorney's Office (NDIL - Chicago)
219 South Dearborn Street
Chicago, IL 60604
Email: USAILN.ECFAUSA@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **The California State Legislature** | represented by | **David Meir Zionts**<br>Covington & Burling LLP<br>One CityCenter<br>850 Tenth St. NW<br>Washington, DC 20001<br>(202) 662-5987<br>Email: dzionts@cov.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**George P. Apostolides**
Saul Ewing Arnstein & Lehr LLP
161 N. Clark Street
Suite 4200
Chicago, IL 60601
(312) 876-7102
Email: gpapostolides@saul.com
*ATTORNEY TO BE NOTICED*

**John C. Gekas**
Saul Ewing Arnstein & Lehr LLP
161 N. Clark Street
Suite 4200
Chicago, IL 60601
312 876-7124
Email: john.gekas@saul.com
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **County of Santa Clara**<br>Office of the County Counsel<br>70 W. Hedding Street<br>East Wing, 9th Floor<br>San Jose, CA 95110<br>(408) 299-5900 | represented by | **Brian C Haussmann**<br>Tabet DiVito Rothstein<br>209 South LaSalle Street<br>7th Floor<br>Chicago, IL 60604<br>(312)762 9450<br>Email: bhaussmann@tdrlawfirm.com<br>*ATTORNEY TO BE NOTICED* |

**Caesar A. Tabet**
Tabet DiVito & Rothstein, LLC
The Rookery Building
209 South LaSalle Street
Seventh Floor
Chicago, IL 60604
(312) 762-9450
Email: ctabet@tdrlawfirm.com
*ATTORNEY TO BE NOTICED*

**John Matthew Fitzgerald**
Tabet DiVito Rothstein
209 South LaSalle Street
7th Floor
Chicago, IL 60604
(312) 762-9450
Email: jfitzgerald@tdrlawfirm.com
*ATTORNEY TO BE NOTICED*

**Kavita Kandala Narayan**
Office of the County Counsel, County of
Santa Clara
East Wing, 9th Floor
70 W. Hedding Street
San Jose, CA 95110
(408) 299-5900
Email: kavita.narayan@cco.sccgov.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laura Susan Trice**
Office of the County Counsel, County of
Santa Clara
East Wing, 9th Floor
70 W. Hedding Street
San Jose, CA 95110
(408) 299-5900
Email: laura.trice@cco.sccgov.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**Administrative Law, Constitutional
Law, and Immigration Law Scholars**          represented by  **Harry Sandick**
Patterson Belknap Webb & Tyler Llp
1133 Avenue Of The Americas
New York, NY 10036
(212) 336-2000
Email: hsandick@pbwt.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Edward Francis Malone**
Barack Ferrazzano Kirschbaum &
Nagelberg LLP
200 West Madison Street
#3900
Chicago, IL 60606
(312)984-3100
Email: edward.malone@bfkn.com
*ATTORNEY TO BE NOTICED*

**Jamison Michael Isaac Davies**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-0000

Email: jmdavies@pbwt.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Michael D Schwartz**
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, NY 10036
(212) 336-2252
Email: mschwartz@pbwt.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

| | | |
|---|---|---|
| **Current and Former Prosecutors and Law Enforcement Leaders** | represented by | **Chirag Gopal Badlani**<br>Hughes Socol Piers Resnick & Dym, Ltd.<br>70 W. Madison Street<br>Suite 4000<br>Chicago, IL 60602<br>(312) 604-2776<br>Email: cbadlani@hsplegal.com<br>*ATTORNEY TO BE NOTICED* |

**Amicus**

| | | |
|---|---|---|
| **Illinois Business Immigration Coalition** | represented by | **Chad Ian Golder**<br>Munger, Tolles & Olson LLP<br>7th Floor<br>1155 F Street NW<br>Washington, DC 20004<br>(202) 220-1100<br>Email: chad.golder@mto.com<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**John J. Hamill , Jr.**
DLA Piper LLP (US)
444 West Lake Street
Suite 900
Chicago, IL 60606
(312) 368-7036
Email: john.hamill@dlapiper.com
*ATTORNEY TO BE NOTICED*

**Kenneth L. Schmetterer**
DLA Piper LLP (US)
444 West Lake Street
Suite 9900

Chicago, IL 60606
(312) 368-4000
Email: kenneth.schmetterer@dlapiper.com
*ATTORNEY TO BE NOTICED*

**Molly K. Priedeman**
Munger, Tolles & Olson LLP
27th Floor
560 Mission Street
San Francisco, CA 94105
(415) 512-4065
Email: molly.priedeman@mto.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Nicholas Stephen Dufau**
Munger, Tolles & Olson LLP
350 South Grand Avenue
50th Floor
Los Angeles, CA 90071
(213) 683-9541
Email: nick.dufau@mto.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Amicus**

**Erie Neighborhood House**          represented by  **David B. Sudzus**
Drinker Biddle & Reath LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606
(312) 569-1000
Email: david.sudzus@dbr.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kelly Ann Petrocelli**
Drinker Biddle & Reath LLP
191 N. Wacker Drive
Suite 3700
Chicago, IL 60606
(312) 569-1343
Email: Kelly.Petrocelli@dbr.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**National Immigrant Justice Center**

**Amicus**

**Cook County**            represented by   **David Henry Hoffman**
Sidley Austin LLP (Chicago)
One South Dearborn Street
Chicago, IL 60603
(312) 853-2174
Email: david.hoffman@sidley.com
*ATTORNEY TO BE NOTICED*

**Jillian Rebecca Dent**
Sidley Austin Llp
One South Dearborn
Room #: 35s053
Chicago, IL 60603
(312) 853-7022
Email: jdent@sidley.com
*ATTORNEY TO BE NOTICED*

**Justin Adam Benson**
Sidley Austin LLP
1501 K ST NW
Washington, DC 20005
(202) 736-8000
Email: jbenson@sidley.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Lindsay Nicole Walter**
Sidley Austin LLP
#600
1501 K. Street, N.W.
Washington, DC 20005
(202) 736-8752
Email: lindsay.walter@sidley.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Neil Gerard Nandi**
Sidley Austin Llp
One South Dearborn
Chicago, IL 60603
(312) 853-6105
Email: nnandi@sidley.com
*ATTORNEY TO BE NOTICED*

**Amicus**

**City of Calumet City**        represented by   **Burton S. Odelson**
Odelson & Sterk, Ltd.
3318 West 95th Street
Evergreen Park, IL 60805
(708) 424-5678
Email: attyburt@aol.com
*ATTORNEY TO BE NOTICED*

**Robert R. Wilder**
Odelson & Strek
3318 W. 95th Street
Evergreen Park, IL 60805
708-424-5678
Email: rwilder@odelsonsterk.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 08/07/2017 | 1 | COMPLAINT filed by The City of Chicago; Filing fee $ 400, receipt number 0752-13449393. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Worseck, Andrew) (Entered: 08/07/2017) |
| 08/07/2017 | 2 | CIVIL Cover Sheet (Worseck, Andrew) (Entered: 08/07/2017) |
| 08/07/2017 | 3 | ATTORNEY Appearance for Plaintiff The City of Chicago by Andrew W Worseck (Worseck, Andrew) (Entered: 08/07/2017) |
| 08/07/2017 | 4 | ATTORNEY Appearance for Plaintiff The City of Chicago by Matthew Charles Crowl (Crowl, Matthew) (Entered: 08/07/2017) |
| 08/07/2017 | 5 | ATTORNEY Appearance for Plaintiff The City of Chicago by Laura A Kleinman (Kleinman, Laura) (Entered: 08/07/2017) |
| 08/07/2017 | 6 | NOTICE by The City of Chicago *of Claims of Unconstitutionality* (Worseck, Andrew) (Entered: 08/07/2017) |
| 08/07/2017 | 7 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13450122. (Jamie, Gorelick) (Entered: 08/07/2017) |
| 08/07/2017 | 8 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13450224. (Ogden, David) (Entered: 08/07/2017) |
| 08/07/2017 | | CASE ASSIGNED to the Honorable Harry D. Leinenweber. Designated as Magistrate Judge the Honorable Michael T. Mason. (meg, ) (Entered: 08/07/2017) |
| 08/07/2017 | 9 | ATTORNEY Appearance for Plaintiff The City of Chicago by Harnaik Singh Kahlon (Kahlon, Harnaik) (Entered: 08/07/2017) |
| 08/07/2017 | 10 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13450359. (Holtzblatt, Ari) (Entered: 08/07/2017) |

Case: 1:17-cv-05720 Document #: 85 Filed: 09/26/17 Page 53 of 58 PageID #:1232

| 08/07/2017 | 11 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13450651. (Savitzky, Ari) (Entered: 08/07/2017) |
|---|---|---|
| 08/07/2017 | 12 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13450712. (Jennings, Molly) (Entered: 08/07/2017) |
| 08/07/2017 | 13 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13450767. (Fahey, Bridget) (Entered: 08/07/2017) |
| 08/07/2017 | 14 | ATTORNEY Appearance for Plaintiff The City of Chicago by Edward N Siskel (Siskel, Edward) (Entered: 08/07/2017) |
| 08/07/2017 | 15 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13451085. (Adegbile, Debo) (Entered: 08/07/2017) |
| 08/07/2017 | 16 | SUMMONS Issued as to Jefferson Beauregard Sessions III, U.S. Attorney. (tt, ) (Entered: 08/08/2017) |
| 08/08/2017 | 17 | AFFIDAVIT of Service filed by Plaintiff The City of Chicago regarding Summons in a Civil Action; Complaint; Exhibits served on David Burroughs, Mail Clerk Supervisor & Authorized Agent, 950 Pennsylvania Ave., NW, Washington, DC 20530 on August 7, 2017 (Crowl, Matthew) (Entered: 08/08/2017) |
| 08/09/2017 | 18 | ATTORNEY Appearance for Plaintiff The City of Chicago by Ronald S. Safer (Safer, Ronald) (Entered: 08/09/2017) |
| 08/10/2017 | 19 | MOTION by Plaintiff The City of Chicago to expedite *Briefing Schedule and Unopposed Motion for Leave to File Oversized Brief* (Attachments: # 1 Text of Proposed Order)(Siskel, Edward) (Entered: 08/10/2017) |
| 08/10/2017 | 20 | NOTICE of Motion by Edward N Siskel for presentment of motion to expedite 19 before Honorable Harry D. Leinenweber on 8/15/2017 at 09:30 AM. (Siskel, Edward) (Entered: 08/10/2017) |
| 08/10/2017 | 21 | MOTION by Plaintiff The City of Chicago for preliminary injunction (Attachments: # 1 Text of Proposed Order)(Siskel, Edward) (Entered: 08/10/2017) |
| 08/10/2017 | 22 | NOTICE of Motion by Edward N Siskel for presentment of motion for preliminary injunction 21 before Honorable Harry D. Leinenweber on 8/15/2017 at 09:30 AM. (Siskel, Edward) (Entered: 08/10/2017) |
| 08/10/2017 | 23 | MEMORANDUM by The City of Chicago in support of motion for preliminary injunction 21 (Siskel, Edward) (Entered: 08/10/2017) |
| 08/10/2017 | 24 | DECLARATION of Lt. Kevin R. Hannigan regarding motion for preliminary injunction 21 (Siskel, Edward) (Entered: 08/10/2017) |
| 08/10/2017 | 25 | DECLARATION of Larry Sachs regarding motion for preliminary injunction 21 (Siskel, Edward) (Entered: 08/10/2017) |
| 08/10/2017 | 26 | Request for Judicial Notice by The City of Chicago *in Support of Motion for Preliminary Injunction* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit |

| | | |
|---|---|---|
| | | C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q)(Siskel, Edward) (Entered: 08/10/2017) |
| 08/10/2017 | 27 | DECLARATION of Andrew W. Worseck regarding motion for preliminary injunction 21 (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I)(Worseck, Andrew) (Entered: 08/10/2017) |
| 08/14/2017 | 28 | MEMORANDUM by Jefferson Beauregard Sessions III in Opposition to motion to expedite 19 (Attachments: # 1 Excerpt from 2015 DOJ Grants Financial Guide)(Simpson, W.) (Entered: 08/14/2017) |
| 08/15/2017 | 29 | MINUTE entry before the Honorable Harry D. Leinenweber:Motion hearing held on 8/15/2017. The City's Motion to expedite briefing schedule 19 is denied. The Unopposed motion to file oversized brief is granted. Defendant's response to plaintiff's motion for preliminary injunction to be filed by 8/24/2017. Plaintiff's reply brief to be filed by 8/31/2017. Any Amicus Curiae brief to be filed by 8/31/2017. Preliminary Injunction hearing set for 9/11/2017 at 10:00 a.m. The Applications of Jamie S. Gorelick, David W. Ogden, Ari J. Holtzblatt, Ari J. Savitzky, Molly M. Jennings, Bridget Fahey and and Debo P. Adegbile to appear pro hac vice [7,8,10,11,12,13,15] are granted. Mailed notice (wp, ) (Entered: 08/16/2017) |
| 08/18/2017 | 🔒 30 | TRANSCRIPT OF PROCEEDINGS held on 08/15/2017 before the Honorable Harry D. Leinenweber. Court Reporter Contact Information: Judith A. Walsh, CSR, RDR, F/CRR, Official Court Reporter. judith_walsh@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 9/8/2017. Redacted Transcript Deadline set for 9/18/2017. Release of Transcript Restriction set for 11/16/2017. (Walsh, Judy) (Entered: 08/18/2017) |
| 08/23/2017 | 31 | ATTORNEY Appearance for Defendant Jefferson Beauregard Sessions III by Stephen Joseph Buckingham (Buckingham, Stephen) (Entered: 08/23/2017) |
| 08/24/2017 | 32 | MEMORANDUM by Jefferson Beauregard Sessions III in Opposition to motion for preliminary injunction 21 (Attachments: # 1 Exhibit 1, # 2 Exhibit 2)(Buckingham, Stephen) (Entered: 08/24/2017) |
| 08/29/2017 | 33 | ATTORNEY Appearance for Defendant Jefferson Beauregard Sessions III by Arjun Garg (Garg, Arjun) (Entered: 08/29/2017) |
| 08/30/2017 | 34 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13528239. (Zionts, David) (Entered: 08/30/2017) |

| 08/30/2017 | 35 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13531161. (Trice, Laura) (Entered: 08/30/2017) |
| 08/30/2017 | 36 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13531407. (Narayan, Kavita) (Entered: 08/30/2017) |
| 08/31/2017 | 37 | ATTORNEY Appearance for Amicus Administrative Law, Constitutional Law, and Immigration Law Scholars by Harry Sandick (Sandick, Harry) (Entered: 08/31/2017) |
| 08/31/2017 | 38 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13533779. (Schwartz, Michael) (Entered: 08/31/2017) |
| 08/31/2017 | 39 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13533800. (Davies, Jamison) (Entered: 08/31/2017) |
| 08/31/2017 | 40 | ATTORNEY Appearance for Amicus The California State Legislature by John C. Gekas (Gekas, John) (Entered: 08/31/2017) |
| 08/31/2017 | 41 | ATTORNEY Appearance for Amicus Current and Former Prosecutors and Law Enforcement Leaders by Chirag Gopal Badlani (Badlani, Chirag) (Entered: 08/31/2017) |
| 08/31/2017 | 42 | Brief of Amici Curiae in Support of Plaintiff's Motion for Preliminary Injunction by Current and Former Prosecutors and Law Enforcement Leaders (Attachments: # 1 Exhibit A)(Badlani, Chirag) (Entered: 08/31/2017) |
| 08/31/2017 | 43 | MINUTE entry before the Honorable Harry D. Leinenweber:The Applications of David M. Zionts, Laura S. Trice and Kavita Narayan to appear pro hac vice [34, 35, 36] are granted. Mailed notice (wp, ) (Entered: 08/31/2017) |
| 08/31/2017 | 44 | ATTORNEY Appearance for Amicus Illinois Business Immigration Coalition by John J. Hamill, Jr (Hamill, John) (Entered: 08/31/2017) |
| 08/31/2017 | 45 | ATTORNEY Appearance for Amicus Illinois Business Immigration Coalition by Kenneth L. Schmetterer (Schmetterer, Kenneth) (Entered: 08/31/2017) |
| 08/31/2017 | 46 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13535680. - *Illinois Business Immigration Coalition* (Golder, Chad) (Entered: 08/31/2017) |
| 08/31/2017 | 47 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13535748. - *Illinois Business Immigration Coalitition* (Priedeman, Molly) (Entered: 08/31/2017) |
| 08/31/2017 | 48 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13535780. - *Illinois Business Immigration Coalition* (Dufau, Nicholas) (Entered: 08/31/2017) |
| 08/31/2017 | 49 | Brief of Amicus Curiae Illinois Business Immigration Coalition In Support Of Plaintiff's Motion For Preliminary Injunction Relief - by Illinois Business Immigration Coalition (Hamill, John) (Entered: 08/31/2017) |

| 08/31/2017 | 50 | ATTORNEY Appearance for Amicus County of Santa Clara by Brian C Haussmann (Haussmann, Brian) (Entered: 08/31/2017) |
| 08/31/2017 | 51 | 08.31.17 Brief of Amici Curiae by County of Santa Clara (Haussmann, Brian) (Entered: 08/31/2017) |
| 08/31/2017 | 52 | ATTORNEY Appearance for Amicus County of Santa Clara by Caesar A. Tabet (Tabet, Caesar) (Entered: 08/31/2017) |
| 08/31/2017 | 53 | MEMORANDUM by Administrative Law, Constitutional Law, and Immigration Law Scholars in support of motion for preliminary injunction 21 *(Brief Amici Curiae)* (Sandick, Harry) (Entered: 08/31/2017) |
| 08/31/2017 | 54 | ATTORNEY Appearance for Amicus The California State Legislature by George P. Apostolides (Apostolides, George) (Entered: 08/31/2017) |
| 08/31/2017 | 55 | ATTORNEY Appearance for Amicus County of Santa Clara by John Matthew Fitzgerald (Fitzgerald, John) (Entered: 08/31/2017) |
| 08/31/2017 | 56 | MOTION by Amicus The California State Legislature for leave to file *Unopposed Motion of the California State Legislature for Leave to File a Brief as Amicus Curiae* (Attachments: # 1 Exhibit 1: Brief of the California State Legislature as Amicus Curiae In Support of Plaintiff's Motion for Preliminary Injunction, # 2 Exhibit 1-A: Letter from Hon. J. Sessions and Hon. J. Kelly to Hon. T. Cantil-Sakauye, # 3 Exhibit 1-B: Letter from E. Holder to Hon. J. Sessions)(Gekas, John) (Entered: 08/31/2017) |
| 08/31/2017 | 57 | NOTICE of Motion by John C. Gekas for presentment of motion for leave to file,, 56 before Honorable Harry D. Leinenweber on 9/7/2017 at 09:30 AM. (Gekas, John) (Entered: 08/31/2017) |
| 08/31/2017 | 58 | ATTORNEY Appearance for Amicus Administrative Law, Constitutional Law, and Immigration Law Scholars by Edward Francis Malone (Malone, Edward) (Entered: 08/31/2017) |
| 08/31/2017 | 59 | ATTORNEY Appearance for Amicus Erie Neighborhood House by Kelly Ann Petrocelli (Petrocelli, Kelly) (Entered: 08/31/2017) |
| 08/31/2017 | 60 | ATTORNEY Appearance for Amicus Erie Neighborhood House by David B. Sudzus (Sudzus, David) (Entered: 08/31/2017) |
| 08/31/2017 | 61 | MEMORANDUM by Erie Neighborhood House in support of motion for preliminary injunction 21 *[Brief of Amicus Curiae in support of motion for preliminary injunction]* (Attachments: # 1 Exhibit A)(Sudzus, David) (Entered: 08/31/2017) |
| 08/31/2017 | 62 | MEMORANDUM by National Immigrant Justice Center in support of motion for preliminary injunction 21 (Attachments: # 1 Exhibit A-G)(Fleming, Mark) (Entered: 08/31/2017) |
| 08/31/2017 | 63 | ATTORNEY Appearance for Amicus Cook County by David Henry Hoffman (Hoffman, David) (Entered: 08/31/2017) |

| 08/31/2017 | 64 | ATTORNEY Appearance for Amicus Cook County by Jillian Rebecca Dent (Dent, Jillian) (Entered: 08/31/2017) |
|---|---|---|
| 08/31/2017 | 65 | ATTORNEY Appearance for Amicus Cook County by Neil Gerard Nandi (Nandi, Neil) (Entered: 08/31/2017) |
| 08/31/2017 | 66 | MOTION by Amicus Cook CountyBRIEF OF AMICUS CURIAE COOK COUNTY AND OTHER AMICI IN SUPPORT OF PLAINTIFFS MOTION FOR PRELIMINARY INJUNCTION (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Hoffman, David) (Entered: 08/31/2017) |
| 08/31/2017 | 67 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13538026. (Benson, Justin) (Entered: 08/31/2017) |
| 08/31/2017 | 68 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752-13538028. (Walter, Lindsay) (Entered: 08/31/2017) |
| 08/31/2017 | 69 | REPLY by The City of Chicago to memorandum in opposition to motion 32 *in support of Plaintiff's Motion For Preliminary Injunction* (Attachments: # 1 Statutory Addendum)(Siskel, Edward) (Entered: 08/31/2017) |
| 08/31/2017 | 70 | Second Request for Judicial Notice by The City of Chicago *in Support of Motion for Preliminary Injunction* (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q)(Siskel, Edward) (Entered: 08/31/2017) |
| 08/31/2017 | 71 | DECLARATION of Bridget Fahey regarding reply to response to motion 69 , motion for preliminary injunction 21 (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Fahey, Bridget) (Entered: 08/31/2017) |
| 09/01/2017 | 72 | Brief as Amicus Curiae by The California State Legislature *in Support of Plaintiff's Motion for Preliminary Injunction* (Attachments: # 1 Exhibit A Letter from Hon. J.Sessions & Hon. J. Kelly to Hon. T. Cantil-Sakauye, # 2 Exhibit B-Letter from E. Holder to Hon.J. Sessions)(Gekas, John) (Entered: 09/01/2017) |
| 09/07/2017 | 73 | ATTORNEY Appearance for Amicus City of Calumet City by Burton S. Odelson (Odelson, Burton) (Entered: 09/07/2017) |
| 09/07/2017 | 74 | ATTORNEY Appearance for Amicus City of Calumet City by Robert R. Wilder (Wilder, Robert) (Entered: 09/07/2017) |
| 09/11/2017 | 75 | MINUTE entry before the Honorable Harry D. Leinenweber: Preliminary Injunction Hearing held on 9/11/2017.Mailed notice (wp, ) (Entered: 09/11/2017) |
| 09/12/2017 | 76 | TRANSCRIPT OF PROCEEDINGS held on 9/11/17 before the Honorable Harry D. Leinenweber. Court Reporter Contact Information: Kathleen_Fennell@ilnd.uscourts.gov.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or |

| | | | |
|---|---|---|---|
| | | | purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 10/3/2017. Redacted Transcript Deadline set for 10/13/2017. Release of Transcript Restriction set for 12/11/2017. (Fennell, Kathleen) (Entered: 09/12/2017) |
| 09/15/2017 | | 77 | MINUTE entry before the Honorable Harry D. Leinenweber:The Court grants the City a preliminary injunction against the Attorney Generals imposition of the notice and access conditions on the Byrne JAG grant. The Court denies the Citys Motion for a Preliminary Injunction with respect to the compliance condition, because the City has failed to establish a likelihood of success on the merits.Mailed notice (wp, ) (Entered: 09/15/2017) |
| 09/15/2017 | | 78 | MEMORANDUM OPINION AND ORDER Signed by the Honorable Harry D. Leinenweber on 9/15/2017:Mailed notice(wp, ) (Entered: 09/15/2017) |
| 09/26/2017 | | 79 | NOTICE of appeal by Jefferson Beauregard Sessions III regarding orders 78 (Garg, Arjun) (Entered: 09/26/2017) |
| 09/26/2017 | ⇥ | 80 | MOTION by Defendant Jefferson Beauregard Sessions III to stay *Nationwide Application of Preliminary Injunction* (Attachments: # 1 Text of Proposed Order) (Garg, Arjun) (Entered: 09/26/2017) |
| 09/26/2017 | | 81 | MEMORANDUM by Jefferson Beauregard Sessions III in support of motion to stay 80 (Garg, Arjun) (Entered: 09/26/2017) |
| 09/26/2017 | | 82 | DECLARATION of Alan R. Hanson regarding motion to stay 80 (Garg, Arjun) (Entered: 09/26/2017) |
| 09/26/2017 | | 83 | NOTICE of Motion by Arjun Garg for presentment of motion to stay 80 before Honorable Harry D. Leinenweber on 9/28/2017 at 09:30 AM. (Garg, Arjun) (Entered: 09/26/2017) |
| 09/26/2017 | | 84 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 79 (gcy, ) (Entered: 09/26/2017) |