**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **THE CITY OF CHICAGO,** | |
| **Plaintiff,** | **Case No. 17 C 5720** |
| **v.** | **Judge Harry D. Leinenweber** |
| **JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States,** | |
| **Defendant.** | |

## MEMORANDUM OPINION AND ORDER

The Attorney General moves to stay the nationwide application of this Court's preliminary injunction against imposition of certain conditions on the 2017 Byrne JAG grant pending resolution of the Attorney General's appeal to the Seventh Circuit Court of Appeals. For the reasons stated herein, Defendant's Motion to Stay Nationwide Application of Preliminary Injunction [ECF No. 80] is denied.

## I. BACKGROUND

The Court assumes familiarity with the underlying facts of this case as recited in its opinion granting in part the City of Chicago's motion for a preliminary injunction. *See, generally, City of Chicago v. Sessions,* No. 17 C 5720, 2017 U.S. Dist. LEXIS 149847 (N.D. Ill. Sep. 15, 2017). In support of the instant motion, the Attorney General has pointed to additional

facts that merit discussion here. The Attorney General's office has received nearly a thousand applications for Byrne JAG funding for FY 2017, and nearly all those applications await award notifications from the Department of Justice (the "Department"). (*See,* ECF No. 82, Second Decl. of Alan R. Hanson, ¶ 4.) In prior years, the majority of Byrne JAG awards were already issued by this time of the year. (*Id.* ¶ 9.) The Attorney General argues that this Court's nationwide preliminary injunction prevents the Department from issuing the Byrne JAG award notifications because, even if the appeal is successful, the Attorney General will be unable to add the notice and access conditions after the award notifications issue. The Attorney General urges that a significant delay in the grant-making process past September of this year raises the prospect of imposing heavy burdens on localities with relatively small budgets (*id.* ¶ 11), disrupting state grant-making processes under which states issue sub-awards of Byrne JAG funds (*id.* ¶ 12), and undermining recovery efforts in jurisdictions that have recently suffered natural disasters (*id.* ¶ 13). To avoid this delay and the attendant burdens, the Attorney General requests a stay of the preliminary injunction.

## II.  <u>LEGAL STANDARD</u>

The analysis for "granting a stay pending appeal mirrors
that for granting a preliminary injunction." *In re A & F
Enters., Inc. II,* 742 F.3d 763, 766 (7th Cir. 2014).   In
determining whether to grant a stay, the court should consider
"the moving party's likelihood of success on the merits, the
irreparable harm that will result to each side if the stay is
either granted or denied in error, and whether the public
interest favors one side or the other." *Ibid*.   Whether the
movant can demonstrate the first two factors is a threshold
issue.   *See, In re Forty-Eight Insulations,* 115 F.3d 1294, 1300
(7th Cir. 1997).   "If the movant can make these threshold
showings, the court then moves on to balance the relative harms
considering all four factors using a 'sliding scale' approach."
*Id*. at 1300-01.   A stay pending appeal is intended "to minimize
the costs of error" and "to mitigate the damage that can be done
during the interim period before a legal issue is finally
resolved on its merits." *In re A & F Enters.,* 742 F.3d at 766.
As the Supreme Court recently stated, "[c]rafting a preliminary
injunction is an exercise of discretion and judgment, often
dependent as much on the equities of a given case as the
substance of the legal issues it presents." *Trump v. Int'l*

- 3 -

*Refugee Assistance Project ("IRAP"),* 137 S.Ct. 2080, 2087 (2017) (citations omitted).

### III. <u>ANALYSIS</u>

The Attorney General argues that the City of Chicago (the "City") lacks Article III standing for any remedy that goes beyond its alleged injury-in-fact. (The Court notes that this argument may be mooted by the U.S. Conference of Mayors' pending Motion to Intervene, but in this Opinion does not consider the effect of such an intervention.) There is no dispute that the City has standing vis-à-vis the notice and access conditions. Nonetheless, the Attorney General contends that the City's standing is cut off at its jurisdictional boundaries, preventing the Court from fashioning a remedy any broader in scope than that required to redress the City's injury. The Court disagrees. Once a constitutional violation has been shown, "the nature of the remedy must be determined by the nature and the scope of the constitutional violation." *Koo v. McBride,* 124 F.3d 869, 873 (7th Cir. 1997); *see also, Missouri v. Jenkins,* 515 U.S. 70, 89 (1995) ("The nature of the . . . remedy is to be determined by the nature and scope of the constitutional violation.") (quotation omitted). The City has demonstrated a likely constitutional violation. It is the "nature and scope of the constitutional violation" that defines the remedy for this

violation, not the particular plaintiff. *Ibid*. Here, the constitutional transgression is national in scope because the notice and access conditions, shown to be likely unconstitutional, were imposed nationwide. Thus, a preliminary injunction may "bind" the "part[y]" before the Court, in this case the Attorney General, to prevent the constitutional violations at issue regardless of where they may occur. FED. R. CIV. P. 65(d). "[O]nce a constitutional violation is demonstrated, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Preston v. Thompson,* 589 F.2d 300, 303 (7th Cir. 1978) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.,* 402 U.S. 1, 15 (1971)). The Constitution vests a district court with "the judicial Power of the United States." U.S. Const. art. III, § 1. This power is not limited to the jurisdiction in which the district court sits: "[i]t is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction." *Texas v. U.S.,* 809 F.3d 134, 188 (5th Cir. 2015), *as revised* (Nov. 25, 2015), *aff'd by equally divided court,* 136 S.Ct. 2271 (2016).

The circumstances here are appropriate. Because the Attorney General's authority, or lack thereof, will not vary by jurisdiction, the cases cited in support of a stay are

inapposite. In *Lewis v. Casey,* 518 U.S. 343 (1996), the evidence failed to show systemic violations necessary to justify a state-wide injunction in Arizona's prison libraries, as the challenged conduct could have been present in some prisons but not others. *Id.* at 359-60. This case, on the other hand, implicates a facial challenge to a federal statute; the Attorney General's authority to impose Byrne JAG conditions on the City will not differ from his authority to do so elsewhere. No additional evidence is needed to justify the nationwide scope of the injunction because the Attorney General's authority does not vary state by state like the conditions of access to legal libraries may vary prison to prison. *See, id. Town of Chester, N.Y. v. Laroe Estates, Inc.,* 137 S.Ct. 1645, 1648-49 (2017), is also unavailing. There, the Court analyzed whether an intervenor as a matter of right has standing to claim a remedy *separate* from that sought by the plaintiff. This Court has found no case extending *Town of Chester*'s rationale to the proposition advanced by the Attorney General - that, regardless of the likely constitutional violation shown, a party with standing is barred from injunctive relief broader than that which directly impacts it.

Next, the Attorney General argues that equitable principles require that the injunction be no more burdensome than necessary

to resolve a plaintiff's injury. While true that an injunction should be "no more burdensome than necessary to provide complete relief," *Madsen v. Women's Health Ctr., Inc.,* 512 U.S. 753, 778 (1994), a nationwide injunction is necessary to provide complete relief from the likely constitutional violation at issue here. *See, McBride,* 124 F.3d at 873; *see also, Bailey v. Patterson,* 323 F.2d 201, 206 (5th Cir. 1963) ("The very nature of the rights appellants seek to vindicate requires that the decree run to the benefit not only of appellants but also for all persons similarly situated."). As the City's cited authority indicates, nationwide injunctions have been upheld numerous times where the remedy provided relief to non-parties as well as the plaintiff. *See, e.g., Decker v. O'Donnell,* 661 F.2d 598, 618 (7th Cir. 1980); *Texas v. U.S.,* 809 F.3d at 187-88 n. 211 (upholding nationwide scope of preliminary injunction and collecting cases).

Most significantly, a recent Supreme Court decision validates the nationwide application of the preliminary injunction here. In *International Refugee Assistance Project v. Trump,* 857 F.3d 554 (4th Cir. 2017), *vacated as moot,* 583 U.S. ___ (2017), the Fourth Circuit upheld the nationwide scope of a preliminary injunction enjoining, *inter alia,* portions of the President's executive order barring certain foreign nationals

from entering the United States. The government appealed and, while the appeal was pending, moved for a stay of the injunction. *See, Trump v. IRAP,* 137 S.Ct. 2080, 2083 (2017). The Supreme Court granted in part and denied in part the motion to stay the nationwide injunction. *Id.* at 2089. Although the Supreme Court narrowed the categories of persons to whom the injunction applied, the nationwide application of the injunction was upheld "with respect to parties similarly situated to [the plaintiffs]." *Id.* at 2088. Consistent with the Supreme Court's analysis, the scope of the nationwide preliminary injunction at issue here includes similarly situated states and local governments. In fact, the dissenting Justices made the exact argument the Attorney General advances here, specifically criticizing the majority for upholding the scope of the injunction for other similarly situated persons and ignoring that "a court's role is to provide relief only to claimants." *Id.* at 2090 (Thomas, J., dissenting) (quotations and alterations omitted) ("But the Court takes the additional step of keeping the injunctions in place with regard to an unidentified, unnamed group of foreign nationals abroad."). The Attorney General's argument to stay the injunction parallels that adopted by the dissent but clearly rejected by the majority of the Supreme

Court. *See, id.* at 2088. Thus, the Court is duty-bound to reject it here as well.

Similarly, the Seventh Circuit has upheld a nationwide injunction where the evidence before the court primarily involved one jurisdiction. In *Decker,* the appellant argued that the district court erred by entering a nationwide injunction where the fact-finding had focused on Milwaukee County. *See, Decker*, 661 F.2d at 617-18. The court affirmed the nationwide scope of the preliminary injunction, reasoning that the court's "analysis . . . relied primarily on the statute and regulation and ha[d] used the evidence on funding in Milwaukee County merely as illustration." *Id.* at 618.

The Attorney General's authority for cabining injunctive relief to only the plaintiff's injury is distinguishable. In *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139 (2010), the Supreme Court reviewed a permanent injunction based on a violation of the National Environmental Policy Act where a federal agency failed to complete an environmental impact statement prior to deregulating alfalfa. The Supreme Court overturned the injunction, emphasizing that the agency could lawfully approve a partial deregulation of alfalfa before completing the new environmental impact statement without harming the plaintiffs. *Id.* at 165-66. Because the district

- 9 -

court had enjoined the agency from approving not just a complete but also a partial deregulation, the injunction was overbroad. *Ibid.* *Monsanto* does not apply here. In *Monsanto,* the injunction prevented the agency from using its *lawful* authority to impose a partial deregulation that had not been shown to harm the plaintiffs. *See, ibid.* Here, the Attorney General likely has *no* lawful authority to impose the notice and access conditions. An injunction is not overbroad where it merely inhibits the Attorney General from acting beyond his likely statutory authority. *Madsen v. Women's Health Center,* 512 U.S. 753 (1994), is also inapplicable. Because the injunction there restricted the defendants' First Amendment rights, *Madsen* applied a different standard. *See, id.* at 765. There, the Court assessed "whether the challenged provisions of the injunction burden no more speech than necessary to serve a significant government interest." *Ibid.* No similar First Amendment concern is present here.

With respect to equitable considerations, the Attorney General argues that staying the nationwide sweep of the injunction would allow the Department to include the notice and access conditions in award notifications while a decision on the merits is reached, thus preventing burdens on localities that might attend a significant delay in Byrne JAG funding. The

difficulty with this proposition is that, in essence, the proposed "fix" would allow the Attorney General to impose what this Court has ruled are likely unconstitutional conditions across a number of jurisdictions prior to a decision on the merits. This is not an equitable result, particularly where the Court's preliminary injunction merely preserves the status quo to await a final decision. *See,* Wright & Miller, Federal Practice and Procedure § 65.20 (2017); *see also, Am. Med. Ass'n v. Weinberger,* 522 F.2d 921, 926 (7th Cir. 1975) (upholding preliminary injunction that preserved status quo for resolution on the merits).

Finally, the Attorney General argues that applicants who contest the conditions may file their own lawsuits while jurisdictions that do not contest the conditions may receive immediate funding by acceding to the notice and access conditions while the appeal is pending. Considering that thirty-seven cities and counties have signed on as *amicus curiae* in support of the City, judicial economy counsels against requiring all these jurisdictions (and potentially others) to file their own lawsuits to decide the same legal question before this Court. (*See, generally,* ECF No. 51, Brief of Amici Curiae County of Santa Clara, 36 Additional Cities, Counties and Municipal Agencies, the U.S. Conference of Mayors, the National

- 11 -

League of Cities, the National Association of Counties, the International Municipal Lawyers Association, and the International City/County Management Association ("Amicus Brief of Counties, Cities, and Others").) Furthermore, all jurisdictions remain free to adopt the substance of the notice and access conditions if they wish to do so. The injunction only prevents the Attorney General from imposing them as conditions on the Byrne JAG funds. If, however, the Attorney General wishes to reserve his right to tether the notice and access conditions to eligibility for these funds, he must await a decision that upholds his authority to do so.

Although not specifically raised by the Attorney General, there are reasons to be cautious when imposing a nationwide injunction. Recent legal scholarship has identified significant concerns related to the use of nationwide injunctions at the district court and circuit court levels. *See, generally,* Samuel L. Bray, *Multiple Chancellors: Reforming the National Injunction* (February 9, 2017) (forthcoming publication), available at SSRN: https://ssrn.com/abstract=2864175; Michael T. Morley, *De Facto Class Actions? Plaintiff- and Defendant-Oriented Injunctions in Voting Rights, Election Law, and Other Constitutional Cases*, 39 Harv. J.L. & Pub. Pol'y 487 (2016); Maureen Carroll, *Aggregation for Me, but Not for Thee: The Rise of Common Claims in Non-*

*Class Litigation*, 36 Cardozo L. Rev. 2017 (2015). Nationwide injunctions may increase forum shopping, lead to conflicting injunctions, and stymie the development of the law within the Circuits prior to Supreme Court review. These concerns are not insignificant but fail to overcome the benefits of a nationwide injunction in this specific instance. First and foremost, there has been no evidence of forum shopping here and neither party has argued as such. Second, as explained above, judicial economy favors avoiding "a flood of duplicative litigation" from other Byrne JAG applicants who want the same protections as the City of Chicago. *Nat'l Mining Ass'n v. United States Army Corps of Eng'rs,* 145 F.3d 1399, 1409 (D.C. Cir. 1998). Certainly, it would at least include the thirty-seven cities and counties that filed briefs in support of the City of Chicago as amici. *See,* ECF No. 51, Amicus Brief of Counties, Cities, and Others; *see also, A-1 Cigarette Vending, Inc. v. U.S.,* 49 Fed. Cl. 345, 358 (2001) ("It would be senseless to require the relitigation of the validity of a regulation in all federal district courts").

Nevertheless, issuing a nationwide injunction should not be a default approach. It is an extraordinary remedy that should be limited by the nature of the constitutional violation and subject to prudent use by the courts. *See, Califano v. Yamaski,* 442 U.S. 682, 702 (1979) (noting that injunctive relief is

limited to the "extent of the violation established").  In this case, the Court finds it an appropriate remedy based on the need for federal uniformity and the unfairness resulting from disparate applications.

The rule of law is undermined where a court holds that the Attorney General is likely engaging in legally unauthorized conduct, but nevertheless allows that conduct in other jurisdictions across the country.  The Courts have a "well-recognized interest in ensuring that federal courts interpret federal law in a uniform way." *Williams v. Taylor,* 529 U.S. 362, 389-90 (2000).  Further, the public interest and perception of the law supports "having congressional enactments properly interpreted and applied. . . . As it is principally the protection of the public interest with which [the court is] concerned, no artificial restrictions of the court's power to grant equitable relief in the furtherance of that interest can be acknowledged." *Wirtz v. Baldor Elec. Co.,* 337 F.2d 518, 534-35 (D.C. Cir. 1963) (internal quotations and citations omitted). All similarly-situated persons are entitled to similar outcomes under the law, and as a corollary, an injunction that results in unequal treatment of litigants appears arbitrary. *See, id.* at 534 ("[Where] a lower court . . . has spoken, that court would ordinarily give the same relief to any individual who comes to

it with an essentially similar cause of action. . . . The rule of law requires no less."); *see also, Sandford v. R. L. Coleman Realty Co.,* 573 F.2d 173, 178 (4th Cir. 1978) ("[T]he settled rule is that whether plaintiff proceeds as an individual or on a class suit basis, the requested injunctive relief generally will benefit not only the claimant but all other persons subject to the practice or the rule under attack.") (internal quotations and alterations omitted). An injunction more restricted in scope would leave the Attorney General free to continue enforcing the likely invalid conditions against all other Byrne JAG applicants. This state of affairs flies in the face of the rule of law and the role of the courts to ensure the rule of law is enforced.

This is especially true considering the judiciary has an important role to play in enforcing the separation of powers. *See, NLRB v. Canning,* 134 S.Ct. 2550, 2559-60 (2014) ("[T]he separation of powers . . . serve[s] to safeguard individual liberty, and . . . it is the duty of the judicial department — in a separation-of-powers case as in any other — to say what the law is.") (internal quotations and citations omitted). "When the court believes the underlying right to be highly significant, it may write injunctive relief as broad as the right itself." *Zamecnik v. Indian Prairie Sch. Dist. # 204,* 636

F.3d 874, 879 (7th Cir. 2011) (Posner, J.) (quotations omitted). District courts are given broad authority to determine the appropriate scope of an injunction. *See, United States v. Capitol Serv., Inc.,* 756 F.2d 502, 507 (7th Cir. 1985) ("Geographical limitations regarding the issues at trial do not alter the court's broad remedial powers."); *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194, 1201-02 (7th Cir. 1971) (affirming the "district court's power to consider extending relief beyond the named plaintiff" "where justice requires such action"). If this Court is incorrect, the appellate process is the vehicle to correct the error.

The Court is sympathetic to the Attorney General's quandary and agrees that, ideally, a final decision on the merits would be reached before practical constraints force a surrender of his policy position (at least for FY 2017). However, this concern is better dealt with through expedited proceedings than a stay that would likely result in imposition of unconstitutional conditions on Byrne JAG applicants. The Court notes that the Attorney General opposed the City's Motion for Expedited Briefing that would have resulted in an earlier decision on the City's Motion for a Preliminary Injunction. (*See*, ECF No. 28, Def.'s Opp. to Pl.'s Mot. to Expedite Briefing Schedule.)

Applicants for a stay have a threshold burden to demonstrate both a likelihood of success on the merits and that irreparable harm will result if the stay is denied. *Matter of Forty-Eight Insulations, Inc.*, 115 F.3d at 1300-01. Where the applicant "does not make the requisite showings on either of [the threshold] factors, the court's inquiry into the balance of harms is unnecessary, and the stay should be denied without further analysis." *Id.* at 1301. Because the Attorney General is not able to meet its threshold burden of showing some likelihood of success on its motion to stay nationwide application of the preliminary injunction, no further analysis is necessary. *See, ibid.*

## IV.  CONCLUSION

For the reasons stated herein, the Attorney General's Motion to Stay Nationwide Application of Preliminary Injunction [ECF No. 80] is denied.

**IT IS SO ORDERED.**

_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: October 13, 2017

- 17 -