IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES CONFERENCE OF MAYORS; CITY OF CHICAGO, | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 17-CV-5720 |
| v. | ) ) | Honorable Harry D. Leinenweber |
| JEFFERSON BEAUREGARD SESSIONS III, | ) ) ) ) | |
| Defendant. | ) | |

**THE UNITED STATES CONFERENCE OF MAYORS'**
**MOTION FOR A PRELIMINARY INJUNCTION**

The United States Conference of Mayors (the "Conference"), by its undersigned attorneys, as intervening co-plaintiff with the City of Chicago, and pursuant to Federal Rule of Civil Procedure 65, hereby moves for a nationwide preliminary injunction against the three unauthorized and unconstitutional conditions concerning federal civil immigration enforcement that Defendant Jefferson Beauregard Sessions III ("Defendant" or the "Attorney General") has attempted to place on the Byrne JAG program.

In support of this motion, the Conference submits the appended declaration of Tom Cochran, the Conference's Chief Executive Officer and Executive Director (Exhibit 1). In further support of this motion, the Conference states as follows:

**BACKGROUND**

1. On August 7, 2017, the City of Chicago ("Chicago"), one of the Conference's members, filed this action seeking declaratory and injunctive relief. (Docket ("Dkt.") 1.) Chicago sought to invalidate three unauthorized and unconstitutional conditions concerning federal immigration enforcement that Defendant placed on the receipt of federal law enforcement funds under the Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG").

2.  Specifically, Chicago challenged three of Defendant's conditions for the receipt of Byrne JAG funds, under which grant applicants must agree to (1) "provide at least 48 hours' advance notice to DHS regarding the scheduled release date and time of an alien in the jurisdiction's custody when DHS requests such notice in order to take custody of the alien pursuant to the Immigration and Nationality Act;" (2) "permit personnel of the [DHS] to access any correctional or detention facility in order to meet with an alien (or an individual believed to be an alien) and inquire as to his or her right to be or remain in the United States;" and (3) certify compliance with 8 U.S.C. § 1373, which prohibits localities from restricting officers from sharing information regarding "citizenship or immigration status" with federal authorities. (*See* Conference Complaint, ¶¶ 46-57, Ex. E at 30.)

3.  On August 10, 2017, Chicago moved for a preliminary injunction to enjoin these three conditions. (Dkt. 21, 22.)

4.  On August 31, 2017, the Conference joined an *amicus curiae* brief in support of Chicago's motion. (Dkt. 51.)

5.  On September 15, 2017, the Court granted Chicago's motion for a preliminary injunction as to two of the three challenged conditions (the "notice" and "access" conditions), finding that Defendant lacked statutory authority to impose them on grant applicants. (Dkt. 78.) The Court expressly ordered: "This injunction against imposition of the notice and access conditions is nationwide in scope, there being no reason to think that the legal issues present in this case are restricted to Chicago or that the statutory authority given to the Attorney General would differ in another jurisdiction." (*Id.* at 41.)

6.  However, the Court denied Chicago's motion as to the third condition on the basis that, while 8 U.S.C. § 1373 restricts the ability of localities to *prohibit* officials from assisting in

2

a federal program, "it does not *require* officials to assist in the enforcement of a federal program." (Dkt. 78 at 33 (Court's emphasis).) The Court acknowledged that as a practical matter, Section 1373 "may effectively thwart policymakers' ability to extricate their state or municipality from involvement in a federal program," but concluded that under current precedent, a literal reading of Section 1373 did not run afoul of the Constitution because "only affirmative demands on states [or municipalities] constitute a violation of the Tenth Amendment." (*Id.* at 34-35.)

7. On September 26, 2017, Defendant filed a motion to stay the nationwide application of the preliminary injunction. (Dkt. 80, 81.) Defendant argued, for the first time, that the Court lacked jurisdiction under Article III of the United States Constitution to provide relief from the unlawful conditions to any jurisdiction other than Chicago. (Dkt. 81 at 4-6.) Had Defendant made that argument in his opposition to Chicago's motion for preliminary injunction, the Conference could have come forward at that time, joined in Chicago's motion, and avoided the need for this separate motion.

8. Because of Defendant's new objection to Chicago's Constitutional standing and the Court's authority, the Conference appeared before this Court on September 28, 2017, to advise the Court of its intention to seek leave to intervene. On October 6, 2017, the Conference filed a motion to intervene as a co-plaintiff in this action, together with a complaint against Defendant.[1]

---

[1] The Court has not ruled on the Conference's motion to intervene. At the October 11, 2017 presentment of that motion, however, the Conference sought and obtained leave to file this motion prior to the Court granting intervention, so as not to further delay relief to the Conference's members. Defendant did not object to the filing of this motion prior to intervention.

9. On October 11, 2017, the Attorney General issued letters to Chicago, New York, New Orleans and Philadelphia, all of which are Conference members. (*See* Ex. 1, Cochran Declaration ("Decl.") at ¶¶ 16, 21, 40.) In the letters, the Attorney General makes clear that he *will require* cities and their officers to affirmatively assist in federal immigration enforcement as a condition of receiving Byrne JAG funds. (*Id.* at ¶ 40, Ex. F.) Specifically, the Attorney General makes clear that, notwithstanding this Court's injunction order, he interprets Section 1373 to require (1) that officers be permitted to share not just information regarding "citizenship and immigration status," as is required by Section 1373 itself, but also to give advance notice of an alien, or suspected alien's, release from custody, and (2) that cities affirmatively commit their time and resources to communicating DOJ's interpretation of Section 1373 to each of its officers, and certify to DOJ that it has done so. (*Id.*)

10. Because the Attorney General's October 11 letters make plain that, contrary to his own prior representations and this Court's ruling, he will require localities to affirmatively aid in federal civil immigration enforcement, on October 13, 2017, Chicago moved for partial reconsideration of the Court's prior ruling as it relates to Section 1373. (Dkt. 99, 101.)

11. On October 13, 2017, this Court denied Defendant's motion to stay the nationwide scope of the Court's preliminary injunction order. (Dkt. 97, 98.) Thereafter, Defendant filed a similar stay motion before the United States Court of Appeals for the Seventh Circuit. On October 20, 2017, the Court of Appeals suspended all proceedings on appeal, including any ruling on the Attorney General's stay motion, because Chicago's motion for partial reconsideration in this Court divested the appellate court of jurisdiction.

12. The Conference now files this motion for a preliminary injunction to obtain for its members the same injunctive relief that Chicago already has established is necessary and proper.

**ARGUMENT**

13.     The Conference's complaint asserts the same claims on behalf of the Conference and its members that this Court relied upon in granting Chicago's motion for a preliminary injunction.  The Conference now adopts the same arguments that Chicago made in its motion for preliminary injunction, and in its separate motion for partial reconsideration.

14.     Specifically, the Conference hereby joins in Chicago's motion for a preliminary injunction (Dkt. 21), adopts by reference here the arguments raised by Chicago in support of its injunction motion (Dkt. 22, 69), and asks that, at a minimum, this Court grant the Conference the same nationwide injunction granted to Chicago (Dkt. 78) and rule that the order will issue in favor of the Conference as intervening co-plaintiff in this action.  Additionally, the Conference joins in the City's motion for partial reconsideration (Dkt. 99), adopts by reference the arguments raised by Chicago in support thereof (Dkt. 101), and asks that this Court enjoin Defendant from imposing the condition that Fiscal Year 2017 Byrne JAG recipients must certify their compliance with 8 U.S.C. § 1373, pending resolution of this action on the merits.

15.     In short, for the reasons set forth in these supporting briefs and below, the Conference is entitled to the same injunctive relief granted to Chicago in this action.

16.     In ruling on the City's motion, this Court specifically found that Chicago was likely to succeed on its claims against the notice and access conditions (Dkt. 78 at 11-24), that it would suffer irreparable harm in the absence of injunctive relief (*id.* at 35-39), and that the balance of harms and public interest weighed in favor of an injunction (*id.* at 39-41).

17.     The same is true of the Conference's other members, whose likelihood of success, risk of irreparable harm, need for relief, and the related public interest likewise call for an injunction.  (*See* Ex. 1, Cochran Decl. at ¶¶ 18-42.)  Indeed, in seeking a stay of the injunction

this Court issued, Defendant did not challenge Chicago's right to this relief in any way, and thus the Conference does not exhaustively address each of these elements here.

18. Rather, in seeking a stay, Defendant has argued that nationwide injunctive relief should not have been entered in a case in which Chicago was the only interested plaintiff. Although, as the Court already ruled (*see* Dkt. 97, 98), Defendant is incorrect to argue that the Court lacked authority to grant Chicago nationwide injunctive relief, Defendant cannot make this claim with respect to the injunction the Conference now seeks. That is because the Conference represents the interests of over 1,400 cities across the United States. (Ex. 1, Cochran Decl. at ¶5.) Its currently active members, the majority of which are applicants for, and recipients of, Byrne JAG funds, are located across the country. (*Id.* at ¶¶ 5, 11-16, Ex. A.) Among the 82 cities whose mayors currently serve in a leadership role at the Conference, 71 member cities have been directly allocated over $21.5 million in funds for the Fiscal Year 2017 Byrne JAG program. (*Id.* at ¶ 11, Ex. A.) These cities alone are found in 31 states and the District of Columbia, and they rely upon the allocated funds for a variety of critical law enforcement programs. (*Id.* at ¶11, 15.) Given the Conference's participation in this action, there can be no question as to the need for nationwide injunctive relief.

19. Moreover, like Chicago, the Conference's other members rely upon Byrne JAG funds to fund the purchase and operation of critical, life-saving equipment, training and programming. (*Id.* at ¶ 15.) Yet the Conference and its members also recognize that the conditions imposed upon them this year by the Attorney General threaten to undermine the relationship between local law enforcement and immigrants in their communities that local law enforcement deems necessary to the successful prevention and prosecution of crime, and to the overall safety of their cities. (*Id.* at ¶¶ 19-43.) The Attorney General's unauthorized and

unlawful conditions thus leave the Conference and its members with the same "Hobson's choice" this Court held constituted irreparable harm for Chicago (*see* Dkt. 78 at 35-39): forego funding needed to save lives or risk losing the trust of their immigrant communities, which itself saves lives. (*Id.* at ¶¶ 42-43.) As the Conference's CEO and Executive Director testified, "No Conference member should have to make that choice." (*Id.* at ¶ 43.) Indeed, under well-established law, the pressure to accept the Attorney General's unauthorized conditions itself infringes on the sovereignty of the Conference's members and therefore constitutes irreparable injury, regardless of their individual policy choices. (*See* Dkt. 23 at 21-22 (citing cases).)

20. Under the circumstances, there is no just reason for the Court to deny this motion by the Conference for the same preliminary injunctive relief issued by the Court in favor of Chicago and against Defendant, *see* Dkt. 78, or to deny the Conference any further relief granted in response to Chicago's motion for partial reconsideration.

WHEREFORE, The United States Conference of Mayors prays that this Court grant it a preliminary injunction against Defendant in the form of the proposed order attached to this motion as <u>Exhibit 2</u>.

Dated: October 23, 2017                        Respectfully submitted,

Brian C. Haussmann (ARDC # 6283054)      THE UNITED STATES CONFERENCE
John M. Fitzgerald (ARDC # 6282859)       OF MAYORS
Katherine M. O'Brien (ARDC # 6300444)
TABET DIVITO & ROTHSTEIN LLC             By:  /s Brian C. Haussmann
209 South LaSalle Street, 7th Floor              One of Its Attorneys
Chicago, IL  60604
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
bhaussmann@tdrlawfirm.com
jfitzgerald@tdrlawfirm.com
kobrien@tdrlawfirm.com

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on October 23, 2017, I electronically filed the foregoing **The United States Conference of Mayors' Motion for Preliminary Injunction** with the Clerk of the Court for the United States District Court, Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

      /s/ Brian C. Haussmann