UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CITY OF CHICAGO,<br><br>                      *Plaintiff*,<br><br>  v.<br><br>JEFF SESSIONS, Attorney General of the United States,<br><br>                      *Defendant*. | Civil Action No. 1:17-cv-05720<br><br>Hon. Harry D. Leinenweber |

**OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION**

DATED: October 23, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOEL R. LEVIN
Acting United States Attorney

JOHN R. TYLER
Assistant Director

ARJUN GARG
W. SCOTT SIMPSON
Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*

**INTRODUCTION**

This Court rejected the City of Chicago's request to preliminarily enjoin a condition requiring recipients of grants under the Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG Program") to certify compliance with 8 U.S.C. § 1373, finding that the City "failed to establish a likelihood of success on the merits" of its challenge to that condition. (Dkt. No. 78 at 41.) Section 1373 prohibits state and local government and law enforcement entities or officials from restricting certain communications with federal immigration authorities.

The City now moves for reconsideration of the Court's decision on the Section 1373 compliance condition. The motion is premised on a purportedly "stark new interpretation" of Section 1373 offered by the Department of Justice in a "preliminary assessment" letter sent to the City on October 11, 2017. (Dkt. No. 101 at 1; 103-1.)

The City's motion does not even attempt to revisit the central premises of the Court's denial of a preliminary injunction: that the text "applicable Federal laws" in 34 U.S.C. § 10153(a)(5)(D) authorizes the Section 1373 compliance condition, and that the City has not contended that this grant condition violates the Spending Clause. (*See* Dkt. No. 78 at 25-26.) Those points alone suffice to sustain the Court's earlier ruling.

Skipping over this predicate barrier to relief, the City instead seeks to reargue a Tenth Amendment question whose resolution is not necessary for denying either the preliminary injunction or the motion for reconsideration. Moreover, the City bases its motion on a "preliminary assessment" that is not a final determination and introduces no significant change in the law or facts that would warrant reconsideration. Even on its own terms, the City's motion errs: the Department's letter creates no Tenth Amendment problem, does not newly interpret whether Section 1373 imposes affirmative obligations, and appropriately construes the scope of information covered by Section 1373.

1

The City has thus raised nothing that would justify reconsideration under Rule 59(e) of the Court's denial of a preliminary injunction with respect to the Section 1373 compliance condition. Instead, the City seeks to do "little more than rehash old arguments." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). That is of course not the proper purpose of a motion for reconsideration, and the City has moreover leveraged this unfounded motion to delay the Seventh Circuit's consideration of Defendant's request in that forum to stay the nationwide application of this Court's preliminary injunction of two other Byrne JAG conditions not at issue in this motion. (*See* Dkt. No. 27, *City of Chicago v. Sessions*, No. 17-2991 (7th Cir. Oct. 20, 2017).)

For all of these reasons, and as further explained below, the Court should deny the motion for partial reconsideration, and do so promptly.

## BACKGROUND

### A. The Court's Preliminary Injunction Ruling

The City sought a preliminary injunction concerning what the Court describes as "the notice condition, the access condition, and the compliance condition" that the Department sought to apply to 2017 Byrne JAG awards. (Dkt. No. 78 at 5.) The Court preliminarily enjoined the notice and access conditions, but granted no relief to the City regarding the compliance condition "because the City has failed to establish a likelihood of success on the merits" as to that condition. (*Id.* at 41.)

The Court credited the Department's assertion that 34 U.S.C. § 10153(a)(5)(D) "furnishes the authority to require a Byrne JAG applicant's compliance with federal law, including Section 1373." (*Id.* at 20.) The Court further noted that "the City has not argued that the compliance condition violates the Spending Clause." (*Id.* at 25-26.) Construing Section 1373, the Court observed that "Section 1373 restricts the ability of localities to prohibit state or local officials from assisting a federal program, but it does not *require* officials to assist in the enforcement of a federal

2

program." (*Id*. at 33.) The Court further opined that "Congress acts constitutionally when it determines that localities may not prevent local officers from *voluntarily* cooperating with a federal program or discipline them for doing so." (*Id*.)

### B. The Department's "Preliminary Assessment" Letter

Prior to this lawsuit, the Department had sought a legal analysis from each of ten jurisdictions, including the City of Chicago, regarding how the jurisdiction is in compliance with Section 1373. (*See* Dkt. No. 26-8.) The City provided an analysis contending that the City complies with the statute. (*See* Dkt. No. 26-7.)

On October 11, 2017, the Department sent to the City a letter offering a "preliminary assessment" of the City's compliance with Section 1373. (Dkt. No. 103-1 at 2.) The letter states that its analysis is "based on a preliminary review" of the City's "submission, all attached documentation, and [the City's] laws, policies, and practices relating to compliance with section 1373, to the extent they were provided or are readily available." (*Id*. at 1.) The letter requests the City's response by October 27, 2017 before the Department makes its final determination. (*Id*. at 2.) Preliminary assessment letters were sent concurrently to six other jurisdictions apart from the City of Chicago, as well.[1]

The letter preliminarily identifies a section of the City's Municipal Code that "restricts the sharing of information regarding immigration status in violation of 8 U.S.C. § 1373(a)." (*Id*. at 1 (citing Municipal Code of Chicago § 2-173-042).) Also, the letter preliminarily identifies other sections of the Municipal Code that in three respects "may violate 8 U.S.C. § 1373, depending on how [the City] interprets and applies them." (*Id*. at 1-2 (citing Municipal Code of Chicago §§ 2-173-020 and 2-173-030).) The letter notes that each of these potentially offending provisions is

---

[1] *See* DOJ Press Release No. 17-1140 (Oct. 12, 2017), *available at* https://www.justice.gov/opa/pr/justice-department-provides-last-chance-cities-show-1373-compliance.

3

accompanied by a savings clause that might avert the violation if the City certifies that the City "interprets and applies this section to not restrict Chicago officers and employees from sharing information regarding citizenship and immigration status with federal immigration officials" and the City certifies that the City "has communicated this interpretation to its officers and employees." (*Id*. at 2.)

### C. Litigation Developments

After the Department sent the preliminary assessment letter, the City filed its motion for partial reconsideration in this Court. Upon the City's presentment of that motion on October 17, the City sought and received a schedule, over the Department's proposal of a shorter schedule, under which briefing would be complete by October 30, 2017.

On the basis of its motion for reconsideration in the district court, the City also sought in the Seventh Circuit on October 16 to suspend briefing on Defendant's motion in that forum to stay the nationwide application of this Court's preliminary injunction of two other Byrne JAG grant conditions. (*See* Dkt. No. 10, *City of Chicago v. Sessions*, No. 17-2991 (7th Cir. Oct. 16, 2017).) Defendant had filed that Seventh Circuit stay motion on October 13 (*see id*. Dkt. No. 8), and the Seventh Circuit had ordered the City to respond by October 18 (*see id*. Dkt. No. 9). The Seventh Circuit on October 20 accepted the City's request to suspend briefing on the stay motion "until the district court resolves the City's motion for reconsideration." (*See id*. Dkt. No. 27.)

## LEGAL STANDARD

"Rule 59 is not a vehicle for rearguing previously rejected motions." *Oto*, 224 F.3d at 606. The City "bears a heavy burden in seeking to reverse the Court's prior ruling." *Mednick v. Precor, Inc.*, 2017 WL 2619139, at *3 (N.D. Ill. June 16, 2017) (Leinenweber, J.). "In attempting to carry its burden," the City "cannot advance arguments or theories that the Court has previously rejected or those that 'could and should have been made before the district court rendered a judgment.'"

4

*Id.* at *3 (quoting *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007)). "Belated factual or legal attacks are viewed with great suspicion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

A "limited circumstance in which reconsideration may be appropriate is if there has been a *significant* change in the law or facts." *Am. Soc. of Media Photographers, Inc. v. Google, Inc.*, 2013 WL 4953796, at *1 (N.D. Ill. Sept. 12, 2013) (Leinenweber, J.) (emphasis added); *accord Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Where a reconsideration motion cites a new event but "does not identify a significant change in facts," and "then restates the same arguments made" earlier, the motion "fall[s] short of the extraordinary grounds needed for reconsideration." *Watts v. 84 Lumber Co.*, 2016 WL 379545, at *1 (S.D. Ill. Feb. 1, 2016).

## ARGUMENT

### I. The City's Challenge of a Grant Condition Does Not Present a Tenth Amendment Commandeering Issue.

The City does not request reconsideration of the Court's determination that 34 U.S.C. § 10153(a)(5)(D) "furnishes the authority to require a Byrne JAG applicant's compliance with federal law, including Section 1373." (Dkt. No. 78 at 20.) With that central finding of statutory authorization undisturbed, the City is left to reargue constitutional issues.

In moving for reconsideration, as before in seeking a preliminary injunction, "the City has not argued that the compliance condition violates the Spending Clause." (Dkt. No. 78 at 25-26.) And for good reason. In the Spending Clause context, it is settled that the federal government "may offer funds to the States, and may condition those offers on compliance with specified conditions. These offers may well induce the States to adopt policies that the Federal Government itself could not impose." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 537 (2012).

5

The City argues instead that the Section 1373 compliance condition constitutes commandeering in violation of the Tenth Amendment. That argument fails at the outset because conditions on federal funding do not amount to commandeering. (*See* Dkt. No. 32 at 13-14.) As the Supreme Court has explained, a "perceived Tenth Amendment limitation on congressional regulation of state affairs d[oes] not concomitantly limit the range of conditions legitimately placed on federal grants." *S. Dakota v. Dole*, 483 U.S. 203, 210 (1987). The grant condition causes "no violation of the State's sovereignty because the State could . . . adopt the simple expedient of not yielding to what [the State] urges is federal coercion." *Id.* (quotation omitted). Because the dispute here turns on a grant condition that the City is free to accept or reject, the City has no valid Tenth Amendment claim and the commandeering analysis that the City wishes the Court to undertake is not called for. The City's reconsideration motion should be denied on that basis alone.

## II.     The Department's "Preliminary Assessment" Letter Does Not Establish Grounds for Reconsideration.

The City does not establish how the Department's "preliminary assessment" letter constitutes "a significant change in the law or facts" sufficient to trigger reconsideration. *Media Photographers*, 2013 WL 4953796, at *1. That letter on its face disclaims final agency action and instead invites the City to respond before a determination is made. (*See* Dkt. No. 103-1 at 2-3.) The City does not explain its assertion that the letter, despite being a preliminary step in an ongoing administrative process, somehow "announces a final, definitive . . . interpretation of Section 1373." (Dkt. No. 101 at 3.) Nor does the City explain how the Department could offer "a final, definitive . . . interpretation of Section 1373." (*Id.*) To the contrary, the City's own motion purports to reserve the City's right to challenge the Department's interpretation. (*See id.* at 7 n.2.)

The City's motion thus asks this Court to undertake a new constitutional analysis of Section 1373 on the theory that the law or facts have been significantly changed by a letter communicating

6

a preliminary assessment that lacks legal force and that the City apparently intends to contest. Even if the City were correct that the Department had adopted an interpretation of Section 1373 that raised constitutional concerns, the proper remedy would be to reject the Department's interpretation of Section 1373, not to declare the statute unconstitutional (much less to declare the grant condition invalid, *see* Part I, *supra*).

All of this highlights that the City attempts to litigate the proper interpretation of Section 1373 prematurely. The Department has not made its final determination about the City's compliance with Section 1373. Underscoring the prematurity of the City's attempt to cast doubt on the correct interpretation of Section 1373, the City overlooks an incongruity between this issue and the relief it presently seeks. Even if the City were at some point to prevail on its interpretation of Section 1373, such a ruling would not justify enjoining the grant condition, but rather would go to whether the City complies with the condition. That question of the City's compliance was not put before the Court on the City's motion for a preliminary injunction. (*See* Dkt. No. 21-1.)

**III.    The City Misconstrues the Department's "Preliminary Assessment" Letter.**

In addition to providing no basis for reconsidering the denial of a preliminary injunction as to the Section 1373 compliance condition for the reasons discussed above, the City's argument fails even on its own terms. The City identifies two aspects of the Department's "preliminary assessment" letter that the City believes warrant reconsideration on the basis of "new evidence," but in both instances the City's argument is fundamentally misconceived. (Dkt. No. 101 at 1.)

**A.    Affirmative Obligations Under Section 1373**

The City takes issue with the letter's statement that, in order to address sections of the City's Municipal Code that in three respects "may violate 8 U.S.C. § 1373, depending on how [the City] interprets and applies them" in light of accompanying savings clauses, the City would need to clarify that the City "interprets and applies this section to not restrict Chicago officers and

7

employees from sharing information regarding citizenship and immigration status with federal immigration officials" and that the City "has communicated this interpretation to its officers and employees." (Dkt. No. 103-1 at 1-2.) According to the City, this is a "stark new interpretation" of Section 1373, in which the Department "contradicts" its "prior representation to the Court that 8 U.S.C. § 1373 imposes no affirmative obligations on Chicago." (*Id.*)

The City's accusation is wrong. The Department explained to the Court at oral argument that "what 1373 does in its heartland . . . is to prohibit the City, if they have the information, which they may not have collected, but if they have the information, they just can't prohibit a City employee from sharing it." (Dkt. No. 76 at 53:13-17.) The letter, which preliminarily observes that the City's laws appear to limit City personnel from sharing information, is consistent with what the Department told the Court, and does not present any "stark new interpretation" regarding whether Section 1373 imposes an affirmative obligation.

The City apparently objects to the letter's statements that, if the City construes its own law in a way that does not violate Section 1373, it must communicate that interpretation to its employees. (*See* Dkt. No. 101-3 at 1-2.) In the first instance, to do more than present this Court with a hypothetical dispute over an abstract possibility of communicating a certain interpretation to City personnel, the City needs to assert—which its motion for reconsideration does not do— that the City indeed does read the savings clauses in its Municipal Code sections to negate the restrictive effect on information-sharing that these sections would otherwise impose. Only a conforming interpretation would trigger a need to communicate the interpretation to City personnel. Even if the City gives the Court that assurance, the City cannot plausibly suggest that it can comply with Section 1373 only by assuring that it has adopted a certain interpretation of ambiguous City law, without also informing City personnel that they are not, in fact, prohibited

8

from sharing information regarding immigration status with the federal government. None of this transforms Section 1373 into an "affirmative obligation" in any relevant sense. Had the City not enacted laws that otherwise appear to restrict information-sharing in violation of Section 1373, there would be no need for the City to act to clarify the ambiguity the City has itself introduced.

The Department's approach on this point is not novel at all; rather, it comports with Q&A guidance that the Department earlier issued publicly and that the City attached to its own motion for a preliminary injunction. That guidance states, in part:

> [T]he statute prohibits government entities and officials from taking action to prohibit or in any way restrict the maintenance or intergovernmental exchange of such information, including through written or unwritten policies or practices.
>
> *Your personnel must be informed* that notwithstanding any state or local policies to the contrary, federal law does not allow any government entity or official to prohibit the sending or receiving of information about an individual's citizenship or immigration status with any federal, state or local government entity and officials.

(Dkt. No. 26-15 ¶ 1 (emphasis added).)

The obligation to inform personnel in the face of apparently contrary state or local law is thus not new, and whatever argument the City wished to present on this point could and should have been offered before the Court ruled on the City's motion for a preliminary injunction. "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale*, 90 F.3d at 1270.

Finally, the City's argument now simply assumes, without supporting citation, that unconstitutional commandeering occurs when, because of a state's or locality's own ambiguous policies, it becomes necessary for the jurisdiction merely to advise its personnel about what federal law allows—which is a far cry from conscripting states and localities into immigration

9

enforcement efforts by affirmatively requiring collection or sharing of information. *See Reno v. Condon*, 528 U.S. 141, 150 (2000) (rejecting commandeering challenge even though state argued that federal statute "requires the State's employees to learn and apply the Act's substantive restrictions" and Supreme Court agreed that federal statute's "provisions will require time and effort on the part of state employees"). "Any federal regulation demands compliance. That a State wishing to engage in certain activity must take administrative and sometimes legislative action to comply with federal standards regulating that activity is a commonplace that presents no constitutional defect." *Id*. at 150-51 (quotation omitted). The City's commandeering argument thus fails.

### B. Custody Release Information

The City asserts that the letter demonstrates an interpretation of Section 1373 under which the statute "authorizes the Department's 'notice' condition." (Dkt. No. 101 at 1.) It is unclear why that assertion, even if credited, would cast doubt on this Court's prior holdings or provide a basis for reconsideration, but in any event the assertion is wrong. The "notice" condition, which the Department has sought to impose on FY 2017 Byrne JAG grants, would affirmatively require a policy designed to ensure the grantee's cooperation with requests from certain federal officials to receive advance notice of the scheduled release date of certain individuals held in state or local correctional facilities. (*See* Dkt. No. 32-1, Ex. A ¶ 56.) The letter, by contrast, does not assert that Section 1373 imposes an affirmative requirement to cooperate in sharing such information; instead, it preliminarily suggests that a City law violates Section 1373 by "restrict[ing] the sharing of information regarding immigration status." (Dkt. No. 103-1 at 1.) Again, the City has identified no new law or fact that warrants reconsideration.

The City further criticizes that the Department's letter too broadly construes the scope of "information regarding . . . .immigration status" under 8 U.S.C. § 1373(a). (*See* Dkt. No. 101 at 6.) In the letter, the Department preliminarily determined that a section of the City's Municipal Code violates Section 1373 by restricting information-sharing with U.S. Immigration and Customs Enforcement regarding a person's custody status or release date. (*See* Dkt. No. 103-1 at 1.) This argument is not relevant to the Court's prior ruling because that decision did not turn on the scope of information at issue under Section 1373. The City in any event reads the statute too narrowly.

The INA states that the "immigration status of any individual" specifically "includ[es] . . . that a particular alien *is not lawfully present* in the United States." 8 U.S.C. § 1357(g)(10)(a) (emphasis added). "Present" means "being in a certain place and not elsewhere," *Webster's New International Dictionary* (2d ed. 1958), so the fact that an alien is in custody for a specific duration (in a certain place and not elsewhere) fits within the INA's contemplation of immigration status.

Moreover, "information regarding . . . immigration status" is a broader category than "immigration status" itself. Comparison of different subsections within Section 1373 demonstrates that Congress used the broader "information regarding" formulation deliberately. *Compare* 8 U.S.C. § 1373(a) (concerning "information regarding . . . immigration status") *with* 8 U.S.C. § 1373(c) (discussing "immigration status" but omitting the broader "information regarding" formulation). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Dean v. United States*, 556 U.S. 568, 573 (2009) (citation omitted). Indeed, the House Report accompanying the legislation stated that Section 1373 was intended "to give State and local officials the authority to communicate with the INS [Immigration and Naturalization Service] regarding the *presence,*

11

*whereabouts, and activities* of illegal aliens." H.R. Rep. No. 104-469, pt. 1, at 277 (1996) (emphasis added).

Custody release information falls within the sweep of "information regarding . . . immigration status" that Congress intended under Section 1373(a). Indeed, it is relevant to the federal government's statutory duties, enacted at the same time as Section 1373, to "take into custody any alien who" has committed certain offenses, 8 U.S.C. § 1226(c)(1)(A), and to "take into custody any alien who . . . is inadmissible . . . when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation," 8 U.S.C. § 1226(c)(1)(D). It is sensible to read section 1373(a) to include information that assists the federal government in carrying out its statutory responsibilities under the same Act. *See United Savings Ass'n v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law.").

\*   \*   \*

Regarding both affirmative obligations and custody release information, the City's motion identifies nothing that alters this Court's framing and analysis of the issue "whether state and local governments can restrict their officials from voluntarily cooperating with a federal scheme." (Dkt. No. 78 at 32-33.) The City already had its opportunity to present argument on that issue when contesting the motion for a preliminary injunction. (*See* Dkt. No. 23 at 20 (City arguing that "Section 1373 constitutes facially unconstitutional commandeering"); Dkt. No. 69 at 9 (City arguing that "Section 1373 is itself unconstitutional"); Dkt. No. 76 at 27:8-12 (City discussing "unconstitutional commandeering" and arguing "that's exactly what Section 1373 does").) The City's motion for reconsideration, under the facade of new evidence, at bottom does no more than "advance arguments or theories that the Court has previously rejected or those that 'could and

12

should have been made before the district court rendered a judgment.'" *Mednick*, 2017 WL 2619139, at *3 (quoting *Sigsworth*, 487 F.3d at 512). "A motion that merely republishes the reasons that had failed to convince the tribunal in the first place gives the tribunal no reason to change its mind." *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004).

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court deny the City's motion for partial reconsideration.

DATED: October 23, 2017

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOEL R. LEVIN
Acting United States Attorney

JOHN R. TYLER
Assistant Director

 */s/ Arjun Garg*
ARJUN GARG
W. SCOTT SIMPSON
Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*