UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CITY OF CHICAGO,<br><br>      *Plaintiff*,<br><br> v.<br><br>JEFF SESSIONS, Attorney General of the United States,<br><br>      *Defendant*. | Civil Action No. 1:17-cv-05720<br><br>Hon. Harry D. Leinenweber |

**DEFENDANT'S OPPOSITION TO**
**THE UNITED STATES CONFERENCE OF MAYORS' MOTION TO INTERVENE**

DATED: October 27, 2017

                Respectfully submitted,

                CHAD A. READLER
                Acting Assistant Attorney General

                JOEL R. LEVIN
                Acting United States Attorney

                JOHN R. TYLER
                Assistant Director

                ARJUN GARG
                W. SCOTT SIMPSON
                Attorneys, U.S. Department of Justice
                Civil Division, Federal Programs Branch
                20 Massachusetts Ave, NW
                Washington, DC 20530
                Phone: (202) 305-8613
                Fax: (202) 616-8470
                E-Mail: arjun.garg@usdoj.gov

                *Counsel for Defendant*

**INTRODUCTION**

The U.S. Conference of Mayors seeks to intervene in this lawsuit for the purpose of attempting to sustain a nationwide preliminary injunction that this Court granted to plaintiff the City of Chicago—a result that the Conference had urged in an amicus brief it submitted in support of the City's motion for a preliminary injunction.

Taking the Conference's motion on its own terms, the Conference has not timely sought to intervene, whether as of right or permissively. Rather, the Conference is attempting strategically to escalate its participation as this lawsuit unfolds. Before the Court's preliminary injunction ruling, the Conference opted to participate in the suit as an amicus curiae to advocate certain relief without being bound by a potential adverse ruling. After the Court preliminarily enjoined two grant conditions nationwide, the Conference now believes intervention would better achieve its goals. The timeliness requirement of Rule 24 does not allow the Conference to escape the earlier litigation choice that it made and prejudice the Department by eschewing the litigation risk of intervention *ex ante* while attempting to intervene to reap the rewards of the Court's ruling *ex post*.

Beyond this defect, the motion to intervene fails for additional, independent reasons. The Conference has no cognizable interest that could be compromised by a ruling in this case. A ruling in the Department's favor would not affect any right the Conference might have to bring other litigation to challenge the grant conditions at issue here. The Conference's motion rests essentially on a contention that it would prefer to see the City succeed in this litigation—a preference that it has supported by filing an amicus brief, but a preference that does not form a proper basis for intervention. Moreover, the Conference does not have standing to bring claims in litigation on behalf of the approximately 1,400 cities of over 30,000 people that it claims fall within its mandate.

For these reasons, the Court should deny the motion to intervene and avoid the undue expansion of this case that the Conference seeks to impose.

1

## BACKGROUND

### A. The City's Motion for a Preliminary Injunction

In its Complaint filed on August 7, 2017, the City asked the Court to "[e]njoin the Department of Justice from enforcing the notice, access, or Section 1373 conditions for the FY 2017 Byrne JAG" cycle. (Dkt. No. 1 at 45.) In moving for a preliminary injunction on August 10, the City sought to enjoin the Department "from imposing [those] conditions on FY 2017 Byrne JAG funds, pending resolution of this litigation on the merits." (Dkt. No. 21-1 at 1.)

In opposing the City's motion for a preliminary injunction, the Department asserted as to the scope of any injunction that, if the Court were to "determine that injunctive relief is appropriate here, any such relief should be limited to the City." (Dkt. No. 32 at 25.) The Department argued, in part, that "'[t]he remedy' sought 'must be limited to the inadequacy that produced the injury in fact that the plaintiff has established.'" (*Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996).)

On reply on August 31, the City asserted that its requested preliminary injunction should be nationwide. (*See* Dkt. No. 69 at 15.) The Conference that same day joined in submitting an amicus brief arguing that "[a] nationwide preliminary injunction is required." (Dkt. No. 51 at 2.)

After hearing oral argument on September 11, the Court on September 15 preliminarily enjoined the notice and access conditions, but granted no relief to the City regarding the compliance condition "because the City has failed to establish a likelihood of success on the merits" as to that condition. (Dkt. No. 78 at 41.) With respect to the two conditions that the Court determined to enjoin, the Court stated that its "injunction against imposition of the notice and access conditions is nationwide in scope." (*Id.* at 41.)

### B. The Department's Motion to Stay and the Conference's Motion to Intervene

The Department on September 26 appealed the Court's preliminary injunction and concurrently moved in this Court to stay the nationwide application of the preliminary injunction

2

pending resolution of the appeal. (*See* Dkt. Nos. 79, 80.) The Department argued, in part, that "[a]ny injunction here should have been limited to the City's Byrne JAG application, because both constitutional and equitable principles require that injunctive relief be limited to redressing a plaintiff's own cognizable injuries." (Dkt. No. 81 at 4.)

The Conference on October 6 moved to intervene as a plaintiff in this case, citing a purpose to "seek entry of a nationwide injunction of the 'notice' and 'access' conditions for the reasons already advanced by Chicago and ordered by this Court." (Dkt. No. 91 at 4.) The Conference claims that it "represents over 1,400 cities across the United States with populations of 30,000 or more" and submits a Conference resolution "opposing punitive sanctuary jurisdiction policies." (Dkt. No. 91-1 ¶ 18 & Ex. B.)

The City on October 6 opposed the Department's stay motion, observing that "[i]t was well known that Chicago was seeking a nationwide injunction" and asserting that other Byrne JAG applicants had "appeared or made their voices heard in this case." (Dkt. No. 94 at 14.) The City's brief noted "the proposed intervention of current amicus U.S. Conference of Mayors." (*Id*. at 2.)

The Court on October 13 denied a stay. (*See* Dkt. No. 98.) The Department moved that day in the Seventh Circuit to stay the nationwide application of the preliminary injunction pending appeal. (*See* Dkt. No. 8, *City of Chicago v. Sessions*, No. 17-2991 (7th Cir. Oct. 16, 2017).) That appellate motion remains pending, because the Seventh Circuit, at the City's behest, suspended its proceedings pending resolution of the City's motion for reconsideration of this Court's denial of a preliminary injunction as to the Section 1373 compliance condition. (*See id*. Dkt. Nos. 10, 27.)

## **LEGAL STANDARD**

Intervention as of right is authorized "[o]n timely motion" where the proposed intervenor "claims an interest relating to the property or transaction that is the subject of the action, and is so

3

situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). "Intervention of right will not be allowed unless all requirements of the Rule are met." *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946 (7th Cir. 2000).

Permissive intervention "may" be granted, "[o]n timely motion," where the proposed intervenor "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "Permissive intervention under Rule 24(b) is wholly discretionary . . . ." *Sokaogon*, 214 F.3d at 949. "In exercising its discretion" regarding permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

## ARGUMENT

### I. The Conference's Attempt to Intervene Is Not Timely.

The Conference seeks leave to intervene as of right and, in the alternative, permissively. "Both forms of intervention require that a motion to intervene be *timely*." *United States v. City of Chicago*, 908 F.2d 197, 199 (7th Cir. 1990); *accord CE Design Ltd. v. King Supply Co.*, 791 F.3d 722, 726 (7th Cir. 2015).

"In determining whether a motion to intervene is timely," the Seventh Circuit directs attention to "four factors: (1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; and (4) any other unusual circumstances." *Heartwood, Inc. v. U.S. Forest Serv., Inc.*, 316 F.3d 694, 701 (7th Cir. 2003) (quotation omitted). The Seventh Circuit enforces the requirement that "[a] prospective intervenor must move to intervene as soon as it 'knows or has reason to know that [its] interests might be adversely affected by the outcome of the litigation.'" *CE Design*, 791 F.3d at 726 (quoting *Sokaogon*, 214 F.3d at 949).

4

Taking the Conference's motion on its own terms, from the time this lawsuit was filed on August 7, 2017, the Conference knew or should have known that its putative interests were at stake in this litigation. The Conference's stated interest in the subject matter of this lawsuit pre-dates the suit's filing. As stated in the Conference's papers, in June 2017 the Conference adopted a resolution that "[o]pposes punitive 'sanctuary jurisdiction' policies that limit local control and discretion" and "[c]alls for an end to unconstitutional federal funding threats to states and local[ities]." (Dkt. No. 91-1 ¶ 6.) Per the Conference's papers, the City of Chicago's mayor participates in the Conference. (*See* Dkt. No. 91 ¶ 3.)

The City's lawsuit, in parallel, challenges what the City views as "the Department's new unconstitutional grant conditions" that the City characterizes as part of the "federal government's aggressive and escalating efforts to force Chicago and other cities, counties, and States to adhere to federal priorities," in a way that "would override local judgments about how best to enforce the law and protect the community." (Dkt. No. 1 ¶¶ 3, 9-10.)

Because the City seeks relief consistent with the Conference's stated position, this lawsuit—irrespective of whether relief would run nationwide or only to the City—has from the start involved the prospect that the Conference's putative "interests might be adversely affected by the outcome of the litigation." *CE Design*, 791 F.3d at 726 (quotation omitted). A win or loss for the City would be a win or loss for the Conference's policy agenda.

The Conference's papers do not disclose when it first learned of this litigation, but the Conference had reason to know of the suit when the City filed it. The City publicized its lawsuit[1]

---

[1] *Mayor Emanuel, City of Chicago File Federal Lawsuit to Prevent President Trump's Justice Department from Making Federal Crime Prevention Grants Conditional on Unrelated Immigration Enforcement Actions* (Aug. 6, 2017), *available at* https://www.cityofchicago.org/city/en/depts/mayor/press_room/press_releases/2017/august/MayorEmanuelCityofChicagoFileFederalLawsuit.html.

5

and there was widespread national media coverage of its filing.[2] The Conference thus at least should have known of this litigation since on or around August 7, but in any event the Conference clearly did in fact know of the litigation by late August, when it participated in preliminary injunction proceedings by joining an amicus brief in support of the City and advocating for a nationwide injunction. (*See* Dkt. No. 51.)

The Conference does not show that its intervention would be timely now, after the Conference chose during preliminary injunction proceedings in this case to pursue its policy agenda by participating as an amicus rather than seeking at that time to intervene. Under those circumstances, the Conference did not satisfy the requirement to "move to intervene as soon as it 'knows or has reason to know that [its] interests might be adversely affected by the outcome of the litigation.'" *CE Design*, 791 F.3d at 726.

Intervention has been allowed as timely in this district, by contrast, where the motion to intervene came "promptly" in the midst of adjudicating a pending motion for a preliminary injunction where "[t]he Court has not yet issued any substantive decisions." *Michigan v. U.S. Army Corps of Eng'rs*, 2010 WL 3324698, at *3 (N.D. Ill. Aug. 20, 2010) (noting that complaint

---

[2] Reuters, *Chicago sues Trump administration over sanctuary city plan* (Aug. 7, 2017), *available at* http://www.reuters.com/article/us-usa-immigration-sanctuary/chicago-sues-trump-administration-over-sanctuary-city-plan-idUSKBN1AN200; CNN, *Chicago mayor defends lawsuit against DOJ over sanctuary city status* (Aug. 7, 2017), *available at* http://www.cnn.com/2017/08/07/politics/rahm-emanuel-doj-sanctuary-city-cnntv/; Bloomberg, *Chicago Sues Sessions Over Funding Cut for Sanctuary Cities* (Aug. 7, 2017), *available at* https://www.bloomberg.com/news/articles/2017-08-07/chicago-sues-sessions-over-funding-cut-for-sanctuary-cities; Chicago Tribune, *As Emanuel sues Trump Justice Department, immigrant sanctuary debate comes to fore* (Aug. 7, 2017), *available at* http://www.chicagotribune.com/news/local/politics/ct-rahm-emanuel-donald-trump-lawsuit-met-0808-2-20170807-story.html; Wall Street Journal, *'Sanctuary City' Chicago to File Suit Against Trump Administration* (Aug. 7, 2017), *available at* https://www.wsj.com/articles/sanctuary-city-chicago-to-file-suit-against-trump-administration-1502063504; Washington Post, *Chicago sues Justice Department over new police grant rules targeting sanctuary cities* (Aug. 7, 2017), *available at* https://www.washingtonpost.com/news/post-nation/wp/2017/08/07/chicago-to-sue-justice-department-over-new-police-grant-rules-targeting-sanctuary-cities/.

was filed on July 19, motion for entry of briefing schedule on motion for preliminary injunction was filed on July 21, and motions to intervene were filed on July 27, August 4, and August 5). Intervention at such a juncture is what the Conference knew or should have known to attempt here. Instead, the Conference waited to seek intervention until two months after the suit was filed, over eight weeks after the City moved for a preliminary injunction, over five weeks after the Conference submitted an amicus brief, and three weeks after the Court's preliminary injunction ruling.

Attempting to defend its delay in intervening, the Conference argues that it "did not recognize, and could not reasonably have recognized, a need to intervene until September 26," when the Department's stay motion contended that "Chicago lacked standing to pursue nationwide relief." (Dkt. No. 91 ¶ 19.) That argument fundamentally misses the point, and is in any event wrong on its own terms. *Wholly apart from whether any injunction would be limited to the City or extend nationwide*, the Conference's putative interests have been at stake since this lawsuit was filed, because the Conference's own papers show that the City seeks relief consistent with the Conference's agenda. And wholly apart from any argument that appeared in the Department's September 26 stay motion, the Conference had already in August determined that its own putative interest would be served by advocating—as an amicus curiae—for a nationwide injunction in this case. (*See* Dkt. No. 51 at 15.) The timeliness of intervention thus has nothing to do with the Conference's reaction to arguments that appeared in the Department's later stay motion.

The Conference asserts that its motion nevertheless is timely because the City's "standing" to obtain a nationwide injunction was challenged "for the first time" on September 26. (Dkt. No. 91 ¶ 19.) But it is unclear why the Conference's perceived need to intervene would depend on whether the Department's objection was premised on Article III or on some other ground. The Department's August 24 brief opposing the City's motion for a preliminary injunction indisputably did object to relief extending beyond the City, (*see* Dkt. No. 32 at 25), yet the Conference

7

indisputably did not move to intervene until over six weeks later, after the Conference submitted an amicus brief and the preliminary injunction was then adjudicated. That sequence of events is fatal to the Conference's intervention.

Moreover, the Department's argument on August 24 was, in any event, framed in Article III terms: the Department argued that "'[t]he remedy' sought 'must be limited to the inadequacy that produced the injury in fact that the plaintiff has established.'" (Dkt. No. 32 at 25 (quoting *Lewis*, 518 U.S. at 357).) If that express reference to "injury in fact" were not enough, a cursory look at the cited passage in *Lewis* shows that this is a standing argument. And this argument connecting standing to the proper scope of an injunction was hardly novel to the Conference, because the Conference last year joined a brief making such an argument to the Supreme Court. *See* Brief for Amici Curiae, *United States v. Texas*, 136 S. Ct. 2271 (2016) (No. 15-674), 2016 WL 891345, at *5, *19 (Mar. 7, 2016) (counseling scrutiny of whether a "proven standing injury justified an expansive nationwide injunction," because courts should not adopt "a standing rule for nationwide injunctions that effectively gives objecting parties the right to veto federal policies in every locality in the country . . . through sweeping injunctions that bear little relation to the narrow harms asserted").

Allowing intervention now would prejudice the Department by indulging the Conference's shifting litigation strategy. The Conference advocated its view on the preliminary injunction before the Court ruled, electing to participate as an amicus curiae not bound by a potential adverse ruling. *See Kerr-McGee Chem. Corp. v. Hartigan*, 816 F.2d 1177, 1181 (7th Cir. 1987) (observing that "the filing of an amicus brief has never been enough to bind a non-party to the results of a proceeding" (quotation omitted)). After the Court ruled, preliminarily enjoining two of the three challenged conditions on a nationwide basis, the Conference now asks to participate in the

8

litigation as a plaintiff to attempt to sustain the ruling that resulted. The Conference thus seeks asymmetrically to partake *ex post* in a litigation reward without *ex ante* having borne litigation risk. The Court should "refuse[] to allow belated intervention by a sophisticated litigant with a large stake who had no good excuse for failing to seek intervention" earlier and "who appears to have acted for strategic reasons." *Larson v. JPMorgan Chase & Co.*, 530 F.3d 578, 583-84 (7th Cir. 2008).[3]

In contrast to the inequity to the Department of allowing the Conference to determine whether to intervene after seeing that the Court issued a substantive ruling that the Conference supports, denying intervention poses no prejudice to the Conference. The Conference suggests that the Conference and/or its members might need to file additional lawsuits challenging the proposed Byrne JAG conditions if the nationwide scope of the preliminary injunction is not sustained. (*See* Dkt. No. 91 ¶ 16.) But that does not mean that *this* litigation would prejudice them; rather, it simply means that this litigation might not, in itself, provide all the relief they seek. There is no reason the Conference needs to intervene in this case to pursue its putative interests, as opposed to filing its own action (assuming it is entitled to do so, *see* Part III, *infra*). The reason the Conference wants to intervene in this case is to take advantage of this Court's prior ruling without having borne the risks of an adverse ruling.

For all of these reasons, the Conference's request to intervene fails. The Conference chose to participate as an amicus, rather than intervene, when it first knew that its putative interests might

---

[3] As further prejudice to the Department from allowing intervention, the Conference's filed motion for a preliminary injunction, submitted before intervention has been granted, reveals that the Conference seeks to support the requested relief by introducing new evidence—in the form of a fourteen-page declaration with numerous exhibits. (*See* Dkt. Nos. 109-1, 109-2.) But the Seventh Circuit, in a case that the Conference's motion cites (*see* Dkt. No. 91 ¶ 16), noted that the proposed intervenor there did "not want to present evidence," but "if it did," then intervention "would be untimely." *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009).

9

be adversely affected by the outcome of this litigation. The balance of prejudice weighs against intervention in order to prevent the Conference from effectuating an asymmetric litigation strategy after seeing how the Court ruled on the City's motion for a preliminary injunction. Taking the Conference's motion on its own terms, intervention should be denied as untimely.

## II. The Disposition of This Action Will Not Impair or Impede the Conference's Ability to Protect Its Interest.

To intervene as of right, the Conference must show, among other elements, that it "is so situated that disposing of the action may as a practical matter impair or impede the [Conference's] ability to protect its interest." Fed. R. Civ. P. 24(a)(2). "The existence of an interest in the litigation, without more, does not satisfy the requirements of Rule 24(a)(2)." *Zurich Capital Markets Inc. v. Coglianese*, 236 F.R.D. 379, 386 (N.D. Ill. 2006). Rather, to have a cognizable interest, the Conference must show that "a ruling on a legal question would as a practical matter foreclose [its] rights in a subsequent proceeding." *Revelis v. Napolitano*, 844 F. Supp. 2d 915, 925 (N.D. Ill. 2012).

The Conference does not have a cognizable interest under Rule 24(a)(2). Regardless of the outcome of the City's suit, the Conference would not lose any ability it otherwise has to pursue litigation or promote its policy goals. The Conference's own rights will not be compromised by a judgment in the Department's favor. Rather, the Conference speculates that in order to promote its policy goal, it or its members would, absent intervention in this case, "potentially have to file over a thousand additional lawsuits to vindicate the same rights at issue here." (Dkt. No. 91 ¶ 16).[4] The potential need to commence other litigation, however, does not by itself satisfy the "impair or impede" requirement of Rule 24(a)(2).

---

[4] Under the Conference's own theory, of course, it should be able to achieve its goal through just one additional lawsuit of its own, as the Conference has no greater right to seek nationwide relief in this litigation than it would if it were to file a separate action.

10

Allowing intervention as of right based on the potential for the proposed intervenor's own litigation would essentially nullify this element of Rule 24(a)(2), since a proposed intervenor can always argue that it intends to bring its own action if intervention is denied. Indeed, courts have denied intervention where the proposed intervenor expressed a desire to avoid the need to file its own action. For example, a denial of intervention was affirmed where denial "would not 'as a practical matter impair or impede [the proposed intervenor's] ability to protect his interest'" because the movant "would not be bound as a party to any result reached" in relation to the existing plaintiff and would later be "free to file his own action asserting his own taking claim as a basis for his own relief." *Fairholme Funds, Inc. v. United States*, 681 F. App'x 945, 948 (Fed. Cir. 2017) (per curiam); *see also United States v. LULAC*, 793 F.2d 636, 644 (5th Cir. 1986) (district "court erred in granting intervention as of right" where proposed intervenors had not shown that "disposition of the request for an injunction would 'as a practical matter, impair or impede' their ability to bring a separate action to protect any of their rights"); *Hilsinger Co. v. Eyeego, LLC*, 2016 WL 7826657, at *3 (D. Mass. Feb. 26, 2016) (denying motion where proposed intervenor "would be free to bring its own action" and after disposition of the existing case it "would be in the exact same position as before it moved for intervention").

Like the proposed intervenors in those cases, the Conference cannot show that the outcome of this matter would "impair or impede" its ability to defend its interests, if the Conference even has cognizable interests of its own (*see* Part III, *infra*). Limiting or denying the preliminary injunction in this action to the existing plaintiff would leave the Conference—and all other Byrne JAG applicants—in the same position they would occupy if the City had never brought this action. This case thus differs fundamentally from the *Flying J* case on which the Conference relies, (*see* Dkt. No. 91 ¶ 16), where the proposed intervenor wanted to step in after a state attorney general

11

declined to appeal a decision invalidating a statute that directly protected the proposed intervenor's members. *See Flying J*, 578 F.3d at 572.

In addition to foreclosing intervention as of right, all of these points further counsel exercising discretion to deny permissive intervention, as there is no need for intervention to protect any interests the Conference might have, and intervention is sought for the strategic purpose discussed above.

### III. The Conference Does Not Establish Its Standing to Seek Nationwide Relief.

The premise of the Conference's intervention motion is that the Conference would be entitled to nationwide relief, even if Chicago is not. But the Conference lacks standing to seek any relief in this case.

The Conference is not itself a state or local jurisdiction eligible to receive Byrne JAG funds that could have standing in its own right. The Conference instead appears to contend that it is authorized to represent the interests of such jurisdictions, but the Conference has not proven up its remarkable premise that the Conference has standing here as essentially a supra-government to bring claims on behalf of a multitude of cities in litigation, especially in light of independent litigation that some of these cities have already filed.

At the outset, it is clear that a suit by the Conference of Mayors is *not* a suit by all the cities whose mayors participate in the Conference. The Conference does not suggest that any of these cities (apart from Chicago itself) will be bound by a judgment in this case, and it is evident that various cities do not believe that their claims are being resolved in this litigation. The Conference's motion does not address that multiple localities—San Francisco and Philadelphia, in addition to Chicago—have already brought their own suits challenging FY 2017 Byrne JAG conditions. *See City and Cty. of San Francisco v. Sessions*, No. 17-cv-4642-WHO (N.D. Cal.) (filed August 11,

12

2017);[5] *City of Philadelphia v. Sessions*, No. 17-cv-3894-MMB (E.D. Pa.) (filed August 30, 2017).[6]

Plainly, Philadelphia and San Francisco could not be litigating the same claim against the same defendant in two courts simultaneously. And, of course, they are not. If Philadelphia and San Francisco do not regard this litigation as precluding their own litigation efforts, there is no reason to believe any other city would do so. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock*, 477 U.S. 274, 290 (1986) (expressing concern about allowing association to pursue litigation on behalf of others when "a judgment won against [the association] might not preclude subsequent claims by the association's members").

While private individuals or corporations who join organizations to promote common interests might, in some circumstances, be presumed to authorize those organization to litigate cases in support of their common interests, *see id.*, it cannot lightly be presumed that a governmental entity would cede its litigation authority in this fashion. Indeed, the Conference does not identify any case in which a court has found that the Conference has standing to bring claims on behalf of the cities whose mayors participate in the Conference.

---

[5] In the San Francisco case, the district court rejected an attempt by Los Angeles to intervene, reasoning in part that there is benefit to enforcing "established venue and forum rules" that "result in different lower courts deciding similar legal issues, sometimes with divergent results" that "are appropriately reconciled by higher courts." *See* Order Denying Motion to Intervene (Dkt. No. 39), *City and Cty. of San Francisco v. Sessions*, No. 17-cv-4642-WHO, at 2 (N.D. Cal. September 11, 2017) (attached as Exhibit A). The Conference overlooks this benefit of having multiple lawsuits, which is a further reason to deny permissive intervention.

[6] In the Philadelphia suit, as here, the Conference joined an amicus brief supporting the plaintiff's motion for a preliminary injunction. *See* Dkt. No. 45, *City of Philadelphia v. Sessions*, No. 17-cv-3894-MMB (E.D. Pa. Oct. 19, 2017) (attached as Exhibit B). In that case, Philadelphia has not sought a nationwide injunction. Underscoring the point in Part I, *supra*, that the Conference has made plain that its putative interest is implicated upon a locality's suit against the FY 2017 Byrne JAG conditions, regardless of whether nationwide relief is sought in the suit, the Conference's amicus brief asserts that because "the federal government continues to dispute the nationwide scope of [the Chicago] injunction, . . . a preliminary injunction is required [in the Philadelphia case] to protect Philadelphia." *Id.* at 2.

Although the Conference contends that it is seeking to represent the interests of its "member cities," Mot. 4, its membership and its mandate are significantly more circumscribed. As its name suggests, the U.S. Conference of Mayors is a group of mayors, not a group of cities. *Cf. Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 344-45 (1977) (considering as "indicia of membership in an organization" whether an entity can "elect the members" or "serve" in the organization). The Conference's proposed complaint in intervention asserts that the Conference's committees are staffed by mayors, and that certain mayors serve in leadership roles. (*See* Dkt. No. 91-1 ¶ 20.) And the Conference's stated function is to "adopt policy positions that collectively represent the views of the nation's mayors." (*See* Dkt. No. 91 ¶ 2.)

Even where a city has authorized its mayor to engage in these policy discussions, it does not follow that the Conference is entitled to bring litigation claims to vindicate the interests of the city as a whole. Policy decisions at the municipal level are not made unilaterally by mayors, and the Conference does not even purport to adopt policy positions on behalf of cities. (*See* Dkt. No. 91-1 ¶ 22 ("The policy positions adopted at the annual meeting collectively represent the views of the nation's mayors . . . .").) Looking at the policy resolution the Conference submitted as evidence of the Conference's position on issues in this case, that resolution nowhere states that mayors authorized the Conference to litigate as a party on their cities' behalf, and the Conference asserts only that "policy positions" such as this one "are distributed to the President of the United States and Congress." (*See id*. ¶ 22 & Ex. B.)

Because the Conference thus lacks standing to bring its claim for relief in this case, intervention should be denied.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny the Conference's motion to intervene.

DATED: October 27, 2017                  Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOEL R. LEVIN
Acting United States Attorney

JOHN R. TYLER
Assistant Director

*/s/ Arjun Garg*
ARJUN GARG
W. SCOTT SIMPSON
Attorneys, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave, NW
Washington, DC 20530
Phone: (202) 305-8613
Fax: (202) 616-8470
E-Mail: arjun.garg@usdoj.gov

*Counsel for Defendant*