IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CITY OF CHICAGO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-CV-5720 |
| v. | ) | |
| | ) | Honorable Harry D. Leinenweber |
| JEFFERSON BEAUREGARD SESSIONS III, | ) | |
| | ) | |
| Defendant. | ) | |

**THE UNITED STATES CONFERENCE OF MAYORS'**
**REPLY IN FURTHER SUPPORT OF ITS MOTION TO INTERVENE**

Pursuant to Federal Rule of Civil Procedure 24, The United States Conference of Mayors (the "Conference"), by its undersigned attorneys, respectfully submits this reply brief in further support of its motion to intervene (Docket ("Dkt.") 91).

**INTRODUCTION**

In its opening motion, the Conference established that it is entitled to intervene in this action to protect its members' interests in the face of Defendant's recent argument, both before this Court and on appeal, that the City of Chicago ("Chicago") lacks standing to seek nationwide injunctive relief in this case. The Conference emphasized that intervention was necessary because, if this Court or the Court of Appeals were to accept Defendant's argument, the Conference or its member cities would have to file new lawsuits to address the same unauthorized conditions at issue in this case. This would severely prejudice the Conference's member cities by, at a minimum, delaying their receipt of tens of millions of dollars in critical federal law enforcement funding.

In response, Defendant raises three arguments, none of which have merit.

First, Defendant argues that the Conference's motion is not timely because the Conference previously knew of this action and initially chose to participate as an *amicus* rather

than as a co-plaintiff. Defendant overlooks that under well-established law, an intervenor whose rights appear to be adequately represented by a party at the outset of litigation has no obligation to intervene until there is reason to think that may not be the case. Here, until Defendant sought to stay the Court's nationwide injunction on the basis that Chicago purportedly lacked standing to sustain it, the Conference had no reason to think its interests were not adequately represented by Chicago.

Moreover, Defendant ignores that courts evaluate timeliness not by any calendar, but according to the prejudice each side stands to suffer. Defendant identifies no prejudice he will suffer if intervention is granted at this early stage of the case. By contrast, requiring the Conference and its members to file new lawsuits will cause them severe prejudice by further delaying the receipt of critical grant funds for some cities, and by requiring other cities to either forego the funds entirely or to consent, under the imminent threat of losing funding, to the unauthorized conditions. Indeed, Defendant has expressly stated in seeking a stay that he wants to constrain the scope of this Court's injunction precisely so that he can leverage the illegal and unauthorized conditions to force other jurisdictions to make this untenable choice. It is that request that requires the participation of the Conference as a party to this action, and the Conference's motion is thus timely and appropriate.

Second, Defendant argues that the Conference may not intervene as of right because it could protect its members' rights by filing a separate lawsuit. According to Defendant, this means that the Conference cannot establish that "disposing of the action may as a practical matter impair or impede the [Conference's] ability to protect its interest," as Rule 24(a)(2) requires. Defendant misunderstands the Rule. Courts regularly find that a party is entitled to intervene where, as a practical matter, requiring a separate lawsuit would impede that party's ability to obtain relief. Such is the case here.

Third, Defendant argues that the Conference lacks standing to represent its members in this action. Not so. The Supreme Court has long recognized that organizations are often ideally suited to represent their members' interests in litigation, and has held that they may do so in all cases where: the members themselves could otherwise sue; the issues raised in the suit are germane to the organization's purpose; and the participation of the individual members is not required to adjudicate those issues. This is just such a case.

The Court should grant the Conference leave to intervene in this action.

## ARGUMENT

**I.     The Court should grant the Conference leave to intervene as of right under Rule 24(a)(2).**

A party may intervene as of right where: (1) it makes a timely application; (2) it has an interest relating to the subject matter of the action; (3) there is a "potential impairment, as a practical matter, of that interest by disposition of the action;" and (4) there is a lack of adequate representation of the interest by the existing parties to the action. *Reich v. ABC/York-Estes Corp.*, 54 F.3d 316, 320 (7th Cir. 1995). In this case, Defendant does not contest that the second and fourth requirements are met. He concedes that the Conference has an interest in the subject matter of the action and that Chicago may not adequately represent that interest. Defendant argues only that the motion is not timely and that the Conference's interest will not be impaired by disposition of this action. Defendant also argues that the Conference lacks standing to assert the interests of its member cities. Each of these arguments fails.

**A.     The Conference's motion is timely.**

Defendant's main argument is that the motion is untimely because the Conference knew of the lawsuit at the time it was filed but initially chose to participate as an *amicus* rather than as a co-plaintiff. (*See* Dkt. 113 at 5-6.) This argument fails to establish that the motion is untimely for at least two reasons.

3

First, Defendant ignores that courts "do not expect a party to petition for intervention in instances in which the potential intervenor has no reason to believe its interests are not being properly represented." *Reich*, 64 F.3d at 322. In such cases, an intervenor's motion is timely if brought within a reasonable amount of time after learning that its interests may not be adequately advanced by a party to the litigation. *Id.* In fact, a potential intervenor has no right to intervene until it reasonably believes that its interest may not be adequately represented. *See id*; Fed. R. Civ. P. 24(a)(2). For that reason, courts regularly permit third-parties to intervene mid-case where a litigant may no longer be able to represent the third-party's interests or the potential intervenor wishes to advance an argument or ground for relief unavailable to the original party. *See Reich*, 64 F.3d at 322; *South v. Rowe*, 759 F.2d 610, 612-13 (7th Cir. 1985). *See also City of Chicago v. Fed. Emergency Mgmt. Agency*, 660 F.3d 980, 985-86 (7th Cir. 2011) (citing cases).

Here, the Conference was not alerted to the need to intervene until Defendant sought to stay the Court's nationwide injunction on the basis that Chicago purportedly lacked standing to seek nationwide relief. This took place on September 26, 2017. (Dkt. 81).[1] The Conference appeared in Court only two days later to announce its intention to intervene and moved to intervene shortly thereafter. (Dkt. 91.) The Conference seeks to intervene because it can advance an argument against Defendant's stay motion that Chicago cannot. Whatever the merit of Defendant's argument that Chicago's standing to seek relief in this case does not extend beyond its borders, that argument cannot apply to the Conference, whose members are located

---

[1] Defendant argues that he raised the standing argument in his earlier opposition to Chicago's motion for a preliminary injunction when he made an oblique reference to Chicago's "injury in fact." (Dkt. 113 at 7-8.) But that argument assumes too much. Defendant argued there that the Court would "abuse its discretion" by granting an overbroad injunction. (Dkt. 32 at 25.) Defendant never mentioned standing and never argued that the Court was prohibited from granting nationwide relief. Nothing requires a proposed intervenor to anticipate arguments a party does not make in express terms. Moreover, even if the Conference had done so, Defendant does not articulate any prejudice resulting from the Conference's decision not to intervene at that time. *See infra* at 5-7.

4

throughout the country. Under these circumstances, the Conference's motion is sufficiently prompt.

Second, Defendant will not suffer prejudice as the result of any delay, and in fact he does not even claim any prejudice. This alone is fatal to Defendant's argument. Even where a potential intervenor delays filing its motion, the motion should be granted unless the delay (as opposed to the mere fact of the intervenor's participation in the suit) causes the existing parties prejudice and that prejudice outweighs any prejudice the intervenor may suffer if its motion is denied. *Reich*, 64 F.3d at 321; *Aurora Loan Servs., Inc. v. Craddieth*, 442 F.3d 1018, 1027 (7th Cir. 2006); *Zurich Capital Markets, Inc. v. Coglianese*, 236 F.R.D. 379, 384 (N.D. Ill. 2006). In *Craddieth*, for example, the Seventh Circuit explained:

> [Intervenor] would have been prudent to have moved earlier to intervene. But in the absence of any indication of prejudice to [the opposing party], the motion cannot be adjudged untimely as a matter of law. We don't want a rule that would require a potential intervenor to intervene at the drop of a hat; that would just clog the district courts with motions to intervene.

442 F.3d at 1027.

In this case, Defendant will suffer no prejudice from the Conference's intervention at this early, pre-answer stage of the case. Defendant does not even say how he will be prejudiced. He argues only that the Court should not "indulg[e] the Conference's shifting litigation strategy" by allowing the Conference to take advantage of the preliminary injunction the Court granted to Chicago. (*See* Dkt. 113 at 8-9, citing *Larson v. JP Morgan Chase & Co.*, 530 F.3d 578, 583-84 (7th Cir. 2008).) But courts routinely permit a non-litigant to intervene in an action to take advantage of a ruling in favor of a litigant. This is particularly true in cases like this one, where the intervenor is in effect a third-party beneficiary of the order. *See, e.g.*, *Rowe*, 759 F.2d at 612-13 (allowing third-party beneficiary of consent decree to intervene two years after its entry to argue for an extension of the decree). And, of course, the mere fact that the Conference's

participation will defeat Defendant's favored argument against the nationwide scope of the Court's injunction does not constitute "prejudice" under Rule 24. *See Zurich Capital Markets, Inc.*, 236 F.R.D. at 384 (intervention was appropriate where "any prejudice to ZCM that would result from the Liquidator's intervention would result simply by virtue of the Liquidator's involvement in the case, not from the Liquidator's delay in moving to intervene").

The cases cited by Defendant only underscore that he will suffer no cognizable prejudice. In *Larson*, the court denied a motion to intervene that came three-and-a-half years after a partial summary judgment ruling disposed of the intervenor's would-be claims, which were no longer within the statute of limitations, and after the remaining claims were settled by the parties and final judgment was entered thereon. 530 F.3d at 581-84. In finding the motion untimely, the court emphasized that intervention threatened to derail or delay a $28-million settlement the parties had worked years to achieve. *Id.* at 584. Allowing intervention in Defendant's remaining cases would have required similar reversals of fortune or reversions to much earlier stages of the case. *See United States v. City of Chicago*, 908 F.2d 197, 197-200 (7th Cir. 1990) (denying motion to intervene 15 years after suit was filed to object to $9 million consent decree and seek individual damages); *Sokaogon Chippewa Community v. Babbitt*, 214 F.3d 941, 945, 948-50 (7th Cir. 2000) (noting that "[t]he purpose of the timeliness requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal;" denying intervention to object to settlement 4 years after suit was filed) (internal citation and quotation omitted); *CE Design Ltd. v. King Supply Co.*, 791 F.3d 722, 726 (7th Cir. 2015) (denying intervention to object to settlement 3 years after suit was filed because "[a]t that late stage the only object of the intervention could be to block the settlement and put the class action suit back to where it had been [3 years earlier] in 2009").

These decisions are wholly inapposite. This case is still at the pleading stage. Defendant has not yet answered Chicago's complaint, and has recently asked for additional time to do so. Moreover, the Court's preliminary injunction order is still before it on reconsideration. And the Conference's request for the same relief granted to Chicago will not expand the case or require the parties or the Court to start the case anew. For this reason, Chicago raises no objection to intervention, which it would certainly do if (like in the cases cited by Defendant) there were any chance that intervention would disrupt the relief it has obtained or stall the progress the Court has made in the case.[2]

By contrast to Defendant, the Conference and its members will be severely prejudiced if intervention is denied. As the Conference made clear in its complaint and motion for a preliminary injunction, which it filed provisionally in anticipation of intervention, the Conference's member cities await the award of tens of millions of dollars in federal law enforcement grants that Defendant is apparently withholding pending his appeal of this Court's order. (Dkt. 91-1, Complaint ("Compl.") ¶¶ 39-41, Ex. A; Dkt. 109-1, Declaration ("Decl.") of Tom Cochran ¶¶ 9-14, Ex. A.) These funds are needed for critical, life-saving law enforcement measures. (Compl. ¶¶ 42-44; Cochran Decl. ¶¶ 15-17.) If intervention is denied and the Court of Appeals were to accept that Chicago could not obtain nationwide relief, the Conference and its members would have to file at least one, and potentially many, new lawsuits to relitigate the

---

[2] Defendant points out in a footnote that the Conference submitted a single declaration in support of its motion for a preliminary injunction and argues that having done so renders intervention "untimely," citing *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 573 (7th Cir. 2009). (Dkt. 113 at 9 n. 3.) The comparison is not apt. *Flying J* involved an intervention granted after a trial and final judgment. 578 F.3d at 573. Here, the case is still before the Court at the preliminary injunction stage, and the Conference submits the declaration of its Executive Director and CEO only to establish its interest in the litigation, not to expand upon the claims or issues already litigated. Like in *Flying J*, the Conference joins in this litigation only to further support the relief sought by the original plaintiff, Chicago. No evidentiary hearing was required to rule on Chicago's motion for preliminary injunction, and none will be required if intervention is granted. Nor does Defendant argue that the declaration will expand the case in any other way that would not obtain in any case in which a new party intervenes. Intervention is thus timely. *See Zurich Capital Markets, Inc.*, 236 F.R.D. at 384.

same issues and seek the same relief, which at a minimum would further delay the receipt of important grant money that already has been allocated to them. Beyond delay, many cities could not afford to file suit because doing so would not be cost-effective. (*See, e.g.*, Cochran Decl. ¶11, Ex. A.) Still others would be forced to capitulate to the unlawful conditions in the face of imminent law enforcement needs. Defendant has stated unequivocally that cities that receive grant award notifications will have only 45 days within which to agree to his conditions. (*See* Exhibit A, "Postaward Instructions," at 4; Exhibit B, 8-15-2017 Hr'g Tr. at 6:15-21.) While Defendant has delayed sending notifications because of this case, he has made clear that he will do so immediately if the nationwide scope of this Court's injunction is lifted. (*See* Dkt. 81 at 7-9.) This would leave the Conference and its members with insufficient time to obtain meaningful relief in a new suit.

This, of course, is precisely what Defendant wants—a stay of the nationwide injunction so that the unauthorized conditions can be forced upon jurisdictions that have not yet filed suit, and whose interests Defendant self-servingly claims Chicago cannot represent. Defendant thus repeatedly invites the Conference to file a new lawsuit (*see* Dkt. 113 at 8-9, 10), because Defendant knows that if he can only convince the Court of Appeals of Chicago's lack of standing, any new lawsuit will now come too late for other jurisdictions to effectively oppose Defendant's unauthorized and illegal conditions. But there is no reason for any defect in Chicago's ability to seek nationwide relief to require additional lawsuits, because the Conference can remove any such defect by intervening here and now.

Under these circumstances, the mere fact that the Conference or its members could file additional, separate lawsuits is not sufficient to eliminate the prejudice caused by the delay in resolving those lawsuits. In *Rowe*, the Court of Appeals affirmed the grant of intervention in a similar case, finding that although the plaintiff in that case, who wished to take advantage of a

8

consent decree entered two years earlier, could have filed a new lawsuit, doing so would cause him "significant" prejudice and would be needlessly inefficient. *Rowe*, 759 F.2d at 612. The *Rowe* court described the prejudice as such: "Radick's alternative was to file a new suit in his own name. Yet such a suit would be costly, would result in further delays that could possibly moot the underlying controversy, and would not be assured of success." *Id.* at 612 n. 2. As such, the court held, the district judge was correct to allow intervention. *Id.* at 612-13. *See also Jeffries v. Swank*, 317 F.R.D. 543, 552 (N.D. Ill. 2016) (allowing intervention in a 46-year-old case to avoid prejudice from delay and "a multiplicity of suits based on differing interpretations" of the court's prior orders).

> **B. Disposition of this case will impair or impede the Conference's ability, as a practical matter, to protect its interests.**

Defendant also argues that the Conference's ability to file another lawsuit or to otherwise "promote its policy goals" means that it cannot demonstrate that disposition of this case would impair or impede its ability to protect its interests. (Dkt. 113 at 10-12.) Defendant misunderstands the nature of this requirement. Rule 24(a)(2) requires only impairment "as a practical matter." It does not require an intervening party to demonstrate that its claims would be legally precluded absent intervention. *See City of Chicago*, 660 F.3d at 985 ("But the possibility that the would-be intervenor if refused intervention might have an opportunity in the future to litigate his claim has been held not to be an automatic bar to intervention.") Rather, among other grounds, "[c]ases allow intervention as a matter of right when an original party does not advance a ground that if upheld by the court would confer a tangible benefit on an intervenor who wants to litigate that ground." *Id.* at 985-86 (citing cases). *See also Jeffries*, 317 F.R.D. at 553 (rejecting argument that there was no impairment because intervenor "could bring his claims under another lawsuit").

9

This is such a case. The Conference plainly has an interest in sustaining this Court's nationwide injunction, and Defendant does not argue otherwise. By asserting that Chicago cannot alone pursue such relief, however, Defendant gives the Conference, whose members are nationwide, a new ground for sustaining the Court's order that the Conference wishes to advance. As in *City of Chicago* and *Jeffries*, that ground is properly advanced in this litigation precisely because it is this Court's order that is at issue. *See id.*

Moreover, while a separate suit is possible, for the reasons set forth above, it is not "practical." Disposition of this matter without the Conference's participation would, as a *practical* matter, foreclose the Conference's ability to effectively protect its interests. *See supra* § I.B. For these reasons, intervention as of right is warranted here.

C. **The Conference has standing to assert the interests of its member cities.**

Without citation to any legal authority, and ignoring the allegations of the Conference's complaint, which must be accepted as true at this stage, *see Lake Investors Development Group v. Egidi Development Group*, 715 F.2d 1256, 1258 (7th Cir. 1983), Defendant argues that the Conference lacks standing to bring its claims. (Dkt. 113 at 12-14.) This argument fails.

Defendant first points out that the Conference is not itself a Byrne JAG recipient, and thus intervenes only to protect the interests of its member cities. (*Id.* at 12.) While that is correct, contrary to Defendant's argument, there is nothing "remarkable" about such a claim. It is well established that an association may sue to vindicate the rights of its members so long as: (1) its members, or some of them, would otherwise have standing to sue; (2) the interests the association seeks to protect are germane to its organizational purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual association members in the lawsuit. *Ezell v. City of Chicago*, 651 F.3d 684, 697 (7th Cir. 2011) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 517 U.S. 544, 553 (1977).)

Defendant does not take aim at any of these requirements, but each is nonetheless amply met here. First, as the Conference's complaint makes clear, its members consist of cities across the United States with populations of 30,000 or more. (Compl. ¶¶ 12, 17-22, Ex. A.) Many of these cities are recipients of Byrne JAG funds and have been allocated funds for 2017. (*Id.* at Ex. A; *see also* Cochran Decl. ¶¶ 10-14, Ex. A.) Among just those cities whose mayors serve in Conference leadership are 71 cities that together have been allocated over $21.5 million in Byrne JAG funds for fiscal year 2017. (Cochran Decl. ¶ 10, Ex. A.) Each of these cities could sue on its own, and thus the first requirement is met.

Second, the Conference's interests in this case are indisputably germane to its organizational purpose. The Conference was founded for the very purpose of coordinating cities' interaction with the federal government on policy matters, and particularly those impacting the distribution of federal funds to cities; one of its primary organizational purposes is to ensure that federal policy meets urban needs; and it has undertaken an extensive review of, and adopted policies opposing, the very conduct of Defendant at issue in this litigation. (Compl. ¶¶ 17-26, 58-70, Exs. B-D; Cochran Decl. ¶¶ 3-8, 18-37, Exs. D-E.)

Third, no individualized proof will be required in this case. The Conference seeks only injunctive relief against the same conditions imposed across all jurisdictions, and in fact seeks only the same injunctive relief already requested, and in part obtained, by Chicago. This is precisely the type of relief an association may seek. *See Hunt*, 432 U.S. at 344 (requests for declaratory and injunctive relief are "properly resolved in a group context").

Rather than address the standing elements, Defendant raises a host of irrelevant or incorrect points in an attempt to call the Conference's standing into question. Defendant argues, for example, that because "the U.S. Conference of Mayors is a group of mayors, not a group of cities," it cannot represent the interests of cities that are Byrne JAG recipients. (Dkt. 113 at 14.)

11

Defendant's premise is incorrect. The Conference is a group of *cities* that are simply represented in the Conference by their mayors. This is made clear in the Conference's complaint (¶¶ 12, 17-22, Ex. A), motion for preliminary injunction (*see* Cochran Decl. ¶¶ 5-8, Ex. A), and its constitution, a copy of which is attached as Exhibit C to this reply brief. (*See* Art. II, § 1 ("Municipal corporations of 30,000 or over in population are eligible for membership, and representation of member municipal corporations in the work of the Conference shall be through the Mayor.").)

Defendant also argues that because some member cities may not be bound, or may not consider themselves bound, by the Court's judgment, the Court should find that the Conference lacks standing to represent the interests of any member city. (Dkt. 113 at 12-13.) But associational standing is not an "all or nothing" proposition. To the contrary, courts recognize that even where members' interests conflict, an organization may still be permitted to bring suit to assert rights held by some of its members. *See Builders Ass'n of Greater Chicago v. City of Chicago*, 170 F.R.D. 435, 438-39 (N.D. Ill. 1996) (citing *United Automobile Workers v. Brock*, 477 U.S. 274, 290 (1986)). In such cases, the remedy is not to deny associational standing but to pursue "less drastic ways to protect the rights of dissenting members," such as "through liberal approval of their intervention in the lawsuit or through refusal to preclude subsequent claims by dissenting members." *Id.* at 439 (quotation and citation omitted). Thus, associations are permitted to assert claims on behalf of their members notwithstanding that a ruling on those claims may not bind each member. *Id.* That is because associations are uniquely positioned to represent the interests of their membership as a whole. Indeed, "the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." *Brock*, 477 U.S. at 290.

In this case, there is no conflict among the Conference's members because each of them shares the same interest in avoiding the imposition of unauthorized, unconstitutional conditions upon their receipt of Byrne JAG funds. As such, there is every reason to permit the Conference to advance those interests, and the fact that some cities have sued, or may sue, separately does not detract from the Conference's standing.

Moreover, Defendant does not explain how his concern regarding whether Conference members will be bound by a judgment applies to this case but not to the additional lawsuit, or lawsuits, Defendant invites the Conference and its members to file. In truth, and as the Court of Appeals has held in rejecting precisely this argument, any legitimate concern about whether an association's members are bound by a judgment against the association is sufficiently obviated by principles of *stare decisis* and does not demonstrate any lack of associational standing. *Chicago-Midwest Meat Ass'n v. City of Evanston*, 589 F.2d 278, 281 n.3 (7th Cir. 1978).

For these reasons, the Court should grant the Conference's motion to intervene as of right.

## II. Alternatively, the Court should permit the Conference to intervene under Rule 24(b).

Even where a party is not entitled to intervene as of right, Rule 24(b) gives this Court wide discretion to permit intervention where there is any common question of law or fact and intervention would not "unduly delay or prejudice the adjudication of the original parties' rights." In deciding whether permissive intervention is appropriate, the Court should consider whether allowing intervention will be more efficient because it "might head off a second suit." *City of Chicago*, 660 F.3d at 986 (holding that the district court abused its discretion in denying permissive intervention where there was "no basis for thinking that it would be as efficient to litigate [the dispute] in two lawsuits rather than one").

In this case, there is no question that the Conference shares legal claims and factual questions with Chicago, and Defendant does not argue otherwise. And for the reasons set forth extensively above, litigating before this Court will be far less prejudicial and burdensome on *all* parties. Notwithstanding his insistence on separate lawsuits in opposing this motion, Defendant has repeatedly admitted as much. Before this Court, for example, Defendant has argued that he is without resources to quickly respond to this motion and simultaneously litigate Philadelphia's separate lawsuit (*see* Exhibit D, 10-11-17 Hr'g Tr. at 4:4-9) and complained that delay will irreparably harm both Defendant and the nearly 1,000 Byrne JAG recipients awaiting allocated grant funds. (Dkt. 81 at 7-9.) Defendant has sought an extension of time in the San Francisco litigation on similar grounds, and in Philadelphia Defendant has even relied upon this Court's nationwide injunction in arguing that Philadelphia will not be irreparably harmed absent separate relief. (*City and County of San Francisco v. Sessions*, Case No. 17-cv-04642 (N.D. Cal.), Dkt. 40 ¶¶ 4-5; *City of Philadelphia v. Sessions*, Case No. 17-cv-03894 (E.D. Pa.), Dkt. 28 at 45-46.)

It is plain, then, that even Defendant will best be served by the expeditious resolution of the issues raised before this Court, rather than any additional litigation the Conference or its members might otherwise file. This is particularly true when one considers that as an association organized under the laws of Illinois (*see* Compl. ¶ 12; Cochran Decl. ¶ 3), the Conference would likely sue in this district. Its suit would also likely be assigned to this Court as a related case under Local Rule 40.1.[3] Under the circumstances, there is no legitimate reason to require such a needless waste of time and resources by all parties. For these reasons and those set forth in

---

[3] For this reason, the order entered by the United States District Court for the Northern District of California is irrelevant. (*See* Dkt. 113 Ex. A.) The court in that case exercised its discretion to deny a request for permissive intervention where it found that doing so would "upend[] established venue and forum rules." (*Id.* at 2.) No such concern is present here, because venue would be proper in this district in any separate lawsuit brought by the Conference.

14

Section I, above, the Court should, at a minimum, grant the Conference leave to intervene as a matter of its discretion under Rule 24(b).

WHEREFORE, the United States Conference of Mayors respectfully requests that the Court grant it leave to intervene in this matter and to file *instanter* the complaint attached as Exhibit 1 to the Conference's motion and the motion for a preliminary injunction filed provisionally under Docket No. 109, and that the Court grant such further relief as the Court deems necessary and just under the circumstances.

Dated: November 3, 2017  Respectfully submitted,

Brian C. Haussmann (ARDC # 6283054)  THE UNITED STATES CONFERENCE OF
John M. Fitzgerald (ARDC # 6282859)  MAYORS
Katherine M. O'Brien (ARDC # 6300444)
TABET DIVITO & ROTHSTEIN LLC
209 South LaSalle Street, 7th Floor  By: /s Brian C. Haussmann
Chicago, IL  60604  One of Its Attorneys
Telephone: (312) 762-9450
Facsimile: (312) 762-9451
bhaussmann@tdrlawfirm.com
jfitzgerald@tdrlawfirm.com
kobrien@tdrlawfirm.com

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on November 3, 2017, I electronically filed the foregoing **The United States Conference of Mayors' Reply in Further Support of Its Motion to Intervene** with the Clerk of the Court for the United States District Court, Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                        /s/ Brian C. Haussmann