IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE CITY OF CHICAGO,

                Plaintiff,

     v.

JEFFERSON BEAUREGARD
SESSIONS III, Attorney
General of the United States,

                Defendant.

Case No. 17 C 5720

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Two Motions are before the Court. The first is the City of Chicago's ("Chicago") Motion for Partial Reconsideration of this Court's September 15, 2017 Opinion granting in part and denying in part Chicago's Motion for a Preliminary Injunction against certain conditions on the 2017 Byrne JAG grant. The second is the United States Conference of Mayors' Motion to Intervene as of right and, alternatively, permissively. For the reasons stated herein, Chicago's Motion for Partial Reconsideration [ECF No. 99] and the Conference's Motion to Intervene [ECF No. 91] are denied.

## I. BACKGROUND

The Edward Byrne Memorial Justice Assistance Grant Program ("Byrne JAG grant") is an annual federal grant that provides financial assistance for state and local law enforcement

efforts. *See,* 34 U.S.C. § 10152. The Attorney General has attached three conditions to the 2017 Byrne JAG grant that are contested in this lawsuit, referred to as the notice, access, and compliance conditions, respectively. *See, City of Chi. v. Sessions,* No. 17 C 5720, 2017 U.S. Dist. LEXIS 149847, at *4-9 (N.D. Ill. Sep. 15, 2017). The Court assumes familiarity with the underlying facts of this case as recited in its previous opinion granting in part and denying in part Chicago's motion for a preliminary injunction, *see, generally, id.,* and will engage in only a procedural summary here.

On August 10, 2017, Chicago moved for a nationwide preliminary injunction, arguing that all three conditions imposed on the 2017 Byrne JAG grant were unlawful and unconstitutional. *Sessions,* 2017 U.S. Dist. LEXIS 149847 at *4. On September 15, 2017, the Court granted a preliminary injunction as to the notice and access conditions, but denied the preliminary injunction as to the compliance condition. *Id.* at *44. On September 26, 2017, the Attorney General filed a notice of appeal and moved to stay the nationwide scope of the injunction pending appeal. (*See,* Notice of Appeal, Sept. 26, 2017, ECF No. 79; Motion to Stay Nationwide Application of Preliminary Injunction, Sept. 26, 2017, ECF No. 80.) The Attorney General argued to this Court that Chicago, as the only

- 2 -

plaintiff, lacked standing to pursue an injunction nationwide in scope. The United States Conference of Mayors (the "Conference") then moved to intervene on October 6, 2017. (*See,* Conference's Mot. to Intervene, Oct. 6, 2017, ECF No. 91.)

On October 13, 2017, this Court denied the Attorney General's Motion to Stay the nationwide scope of the injunction. *City of Chi. v. Sessions,* No. 17 C 5720, 2017 U.S. Dist. LEXIS 169518, at *19 (N.D. Ill. Oct. 13, 2017). On that same day, the Attorney General petitioned the Seventh Circuit to stay the nationwide injunction, and Chicago moved for partial reconsideration of the denial of the preliminary injunction as to the third condition, the compliance condition. (*See,* Defendant-Appellant's Mot. for Partial Stay of Prelim. Inj. Pending Appeal, No. 17-2991, Oct. 13, 2017, Dkt. 8; Chicago's Mot. for Partial Recons., Oct. 13, 2017, ECF No. 99.) On October 16, 2017, Chicago moved to suspend briefing and consideration of the partial stay in the Seventh Circuit due to the motion for partial reconsideration pending before this Court. (*See,* Mot. to Suspend Consideration of Mot. for Partial Stay, No. 17-2991, Oct. 16, 2017, Dkt. 10.) On October 20, 2017, the Seventh Circuit granted Chicago's Motion to suspend proceedings on appeal pending this Court's resolution of Chicago's motion for partial reconsideration. (*See,* Order, *City*

*of Chi. v. Sessions,* Case No. 17-2991, Dkt. 27 (7th Cir. Oct. 20, 2017).)

This Court now takes the two pending motions in turn.

## II. <u>ANALYSIS</u>

### A. The City of Chicago's Motion for Partial Reconsideration

Chicago asks the Court to reconsider its denial of the preliminary injunction as to the compliance condition on the Byrne JAG grant. As explored thoroughly in the Court's September 15, 2017 Opinion, the compliance condition requires a grant applicant to certify its compliance with 8 U.S.C. § 1373, a federal law that prohibits certain restrictions on communication between federal immigration agents and state and local government officials regarding an individual's immigration status. *See,* 8 U.S.C. § 1373. Chicago bases its Motion on a letter to Eddie T. Johnson, Chicago Superintendent of Police, from Alan Hanson, Acting Assistant Attorney General, dated October 11, 2017. (*See,* Oct. 11, 2017 Letter, Ex. A to Decl. of Ari Holtzblatt, ECF No. 103 ("DOJ Letter").) The letter states that the Department of Justice (the "DOJ") has determined that Chicago is in violation of Section 1373 based on its preliminary review of Chicago's laws and policies, and is therefore ineligible for Byrne JAG funding. (*Ibid.*) According to the

- 4 -

letter, the DOJ found that at least one section of Chicago's Welcoming City Ordinance violates Section 1373 (and potentially several other sections as well, depending on Chicago's interpretation of the ordinance). (*Ibid.*) The letter concludes by inviting a response and/or additional documentation from Chicago based on the DOJ's preliminary assessment, noting that the letter does not constitute final agency action. (*Ibid.*)

The Federal Rules of Civil Procedure do not expressly provide for motions for reconsideration. However, these motions are common and understood to fall under either Rule 59(e) (to amend or alter a judgment) or Rule 60(b) (for relief from a judgment or order). *See,* FED. R. CIV. P. 59, 60. Although Chicago does not explicitly state the Federal Rule it is moving under, the Seventh Circuit construed Chicago's motion for reconsideration under Rule 59(e) in its decision to suspend proceedings on appeal, and the parties reference Rule 59 in their briefs. (*See,* Order, *City of Chi. v. Sessions,* Case No. 17-2991, Dkt. 27 (7th Cir. Oct. 20, 2017); Chicago's Mot. for Partial Recons., ¶ 5; Opp'n to Pl.'s Mot. for Partial Recons., at 2, Oct. 23, 2017, ECF No. 110.) As such, the Court construes the motion for reconsideration under Rule 59(e).

Rule 59(e) allows a court to alter or amend a judgment if the movant clearly establishes: (1) that the court committed a

manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment. *Cincinnati Life Ins. Co. v. Beyrer,* 722 F.3d 939, 954 (7th Cir. 2013). "It does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *Ibid.* (quoting *Bordelon v. Chi. Sch. Reform Bd. of Trs.,* 233 F.3d 524, 529 (7th Cir. 2000)). Chicago moves this Court to reconsider based on the second option: newly discovered evidence. To succeed on a motion under Rule 59 by invoking newly discovered evidence, a party must show that: "(1) it has evidence that was discovered post-trial [or judgment]; (2) it had exercised due diligence to discover the new evidence; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that [it] would probably produce a new result." *Id.* at 955 (quoting *Envtl. Barrier Co., LLC v. Slurry Sys., Inc.,* 540 F.3d 598, 608 (7th Cir. 2008)) (citation omitted). Motions for reconsideration "should only be granted in rare circumstances," and district courts enjoy wide discretion in determining whether to grant them. *Anderson v. Holy See,* 934 F.Supp.2d 954, 958 (N.D. Ill. 2013), *aff'd sub nom. Anderson v. Catholic Bishop of*

*Chicago,* 759 F.3d 645 (7th Cir. 2014); *see also, Harrington v. City of Chi.,* 433 F.3d 542, 546 (7th Cir. 2006) (noting that motions to reconsider are discretionary).

In support of its motion to reconsider, Chicago points to this Court's holding that "only affirmative demands on states constitute a violation of the Tenth Amendment" and "Section 1373 imposes no affirmative obligation on local governments." *City of Chi. v. Sessions,* No. 17 C 5720, 2017 U.S. Dist. LEXIS 149847, at *37-38 (N.D. Ill. Sep. 15, 2017). It argues that the DOJ Letter interprets Section 1373 to impose affirmative obligations in contravention of this Court's ruling, making reconsideration proper. *See, ibid.*

The Court disagrees. Nothing in the DOJ Letter contravenes the Court's prior ruling, which did not rest on either the DOJ or Chicago's interpretation of Section 1373's requirements but, instead, rests solely on the text of Section 1373. *See, Sessions,* 2017 U.S. Dist. LEXIS 149487 at *35-38. The Court ruled on the constitutionality of Section 1373 as a facial challenge. *See, ibid.* Both parties not only agreed with that construction during the preliminary injunction hearing, but framed the central legal issue in facial terms and argued for such an approach. In response to the Court's question about what Section 1373 allows, Mr. Readler on behalf of the Attorney

- 7 -

General stated: "Let me say we're also here on a facial
challenge, so [Chicago] [has] not – [Chicago is] not asking for
a preliminary injunction today to declare that [Chicago's] law
is in compliance with 1373. That issue would probably require
some discovery in terms of how it's executed." (Prelim. Inj.
Hr'g at 53:3-8.) Similarly, in response to the Court's question
about whether Chicago was requesting an injunction limited to
Chicago, Mr. Safer on behalf of Chicago answered, "No, your
Honor. We're asking for a nationwide injunction because this is
a facial challenge to a . . . provision that is applied across
the country." (*Id.* at 62:9-14.) The Court asked a follow-up
question about whether Chicago's Welcoming City Ordinance
distinguished it from other jurisdictions, to which Mr. Safer
responded that he "agree[d] with the Attorney General . . . that
this is a facial challenge, and . . . [that] it is a matter of
saying that these conditions are unconstitutional, ultra vires,
without authority, and that applies throughout the country."
(*Id.* at 62:7-63:5.) The DOJ Letter advancing a different
interpretation of Section 1373 would not change the Court's
*facial* analysis of the Tenth Amendment challenge. Accordingly,
the DOJ Letter does not meet two of the requirements for
reconsideration based on newly discovered evidence: it is not

"material" to the Court's facial analysis, and its consideration would not "produce a new result." *Beyrer,* 722 F.3d at 955.

Furthermore, Chicago's Motion for Partial Reconsideration brings up issues that were never previously before the Court. Chicago did not request a declaration of compliance with Section 1373 in its Motion for a Preliminary Injunction, making its Motion for Reconsideration an improper vehicle for injecting this issue into the case. *See, Beyrer,* 722 F.3d at 954 (quoting *Bordelon,* 233 F.3d at 529) ("[Reconsideration] certainly does not allow a party to . . . advance arguments that could . . . have been presented to the district court prior to the judgment."). In addition, a denial of Chicago's Motion for Reconsideration will not prevent it from seeking this relief. Included in Chicago's seven-count Complaint is Count V, which seeks a declaratory judgment that Chicago complies with Section 1373. The argument that Chicago makes in support of its Motion for Reconsideration is a distinct issue and more appropriately ruled upon separately, rather than inserting an as-applied challenge into what was previously unanimously formulated and subsequently ruled on as a facial challenge.

Moreover, addressing an as-applied challenge to Section 1373 based on the DOJ Letter is premature. The DOJ Letter specifically disclaims final agency action and invites

Chicago to respond before a final determination is made. If the DOJ makes a final determination that Chicago is eligible for 2017 Byrne JAG funds, then no harm accrues to Chicago. Although Chicago argues that the DOJ letter "staked out a final view" on Section 1373, this does not change the fact that the DOJ has yet to make a determination about Chicago's eligibility for funds. (*See,* Reply in Supp. of Pl.'s Mot. for Partial Recons., ECF No. 114, Oct. 30, 2017, at 3.) Litigating a policy position based on a preliminary assessment is premature, and this Court will not do so.

Accordingly, the Court denies Chicago's Motion for Reconsideration because the DOJ letter is not "material" to the Court's facial analysis and its consideration would not "produce a new result." *Beyrer,* 722 F.3d at 955. Further, reconsideration is improper because the question whether Chicago complies with Section 1373 was not before the Court in its prior ruling. *See, id.* at 954.

## B. The U.S. Conference of Mayors' Motion to Intervene

The Conference moves to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure and, alternatively, permissively under Rule 24(b). *See,* FED. R. CIV. P. 24. The Seventh Circuit has cautioned district courts to keep the two inquiries — the inquiry under Rule 24(a) and the

inquiry under Rule 24(b) — distinct. *City of Chi. v. FEMA,* 660 F.3d 980, 987 (7th Cir. 2011).

The Conference is the official non-partisan organization of U.S. cities with populations of 30,000 or more. (*See,* Mot. to Intervene, ¶ 2.) The Conference's role includes "ensur[ing] that federal policy meets urban needs" and promoting "coordinat[ion] on shared policy goals." (*See,* Intervenor's Compl., Ex. 1 to Mot. to Intervene, ECF No. 91, Oct. 6, 2017, ¶¶ 17-19.) The Conference alleges that its members adopt policy positions that collectively represent the views of the nation's mayors. (*See,* Mot. to Intervene, ¶ 2.) In this specific instance, the Conference has adopted a policy opposing punitive sanctuary city practices, including the three conditions challenged in this litigation. (*Ibid.*)

### 1. *Standing*

Before we proceed to determine if the Conference meets the requirements of intervention under either Rule, we must first analyze whether it has standing. The U.S. Supreme Court recently held that "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *Town of Chester, N.Y. v. Laroe Estates, Inc.,* 137 S.Ct. 1645, 1651 (2017). The parties dispute whether the Conference is seeking relief

"different" from that Chicago seeks. Regardless, in this Circuit an intervenor as of right must demonstrate Article III standing. *See, Flying J, Inc. v. Van Hollen,* 578 F.3d 569, 571 (7th Cir. 2009) ("No one can maintain an action in a federal court … unless he has standing to sue, in the sense required by Article III of the Constitution . . . ."); *see also, FEMA,* 660 F.3d at 985 (noting that "more than Article III standing must be required" for intervention).

Article III of the Constitution limits the exercise of the judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "'The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches.'" *Town of Chester,* 137 S.Ct. at 1650 (quoting *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 408 (2013)). "Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; the injury is caused by the defendant's acts; and a judicial decision in the plaintiff's favor would redress the injury." *Bauer v. Shepard,* 620 F.3d 704, 708 (7th Cir. 2010) (citations omitted).

"It has long been settled that even in the absence of injury to itself, an association may have standing solely as the representative of its members." *Int'l Union v. Brock,* 477 U.S.

- 12 -

274, 281 (1986) (internal quotations and citations omitted). An association has standing to bring a suit on behalf of its members where: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343 (1977). Because its constituents have standing to bring the same challenge that Chicago has brought and the Conference has adopted a policy at odds with the Attorney General's Byrne JAG conditions, the Conference asserts that it has associational standing.

The Attorney General disputes standing. First, the Attorney General argues that the Conference cannot represent the cities (who have individual standing) because it is composed of mayors rather than the cities themselves. The Conference responds that it is comprised of cities but represented by their respective mayors. In evaluating a potential intervenor's motion to intervene, the Court must accept all factual allegations as true. *Reich v. ABC/York-Estes Corp.,* 64 F.3d 316, 321 (7th Cir. 1995). Accordingly, we accept the factual assertions of the Conference at this stage. Second, the

- 13 -

Attorney General argues that the Conference is not authorized to litigate on behalf of the cities, but offers no authority for the proposition that litigation must be specifically authorized by members. Indeed, the Court can find no authority for this proposition outside the context of inter-member conflicts of interest. *See, Retired Chi. Police Ass'n v. City of Chi.,* 76 F.3d 856, 865 (7th Cir. 1996).

Finally, the Attorney General contends that the Conference does not have standing to bring claims on behalf of the approximately 1,400 cities that it represents because the Conference itself is ineligible for Byrne JAG funds and it cannot represent the members because the member cities would not be bound by the judgment. The Seventh Circuit has rejected this argument:

> The defendants argue that the association should not
> be accorded standing because a judgment against it
> might not be binding upon its members. We see little
> likelihood that the defendants will suffer the burden
> of relitigating the claims raised in this case. The
> Stare decisis effect of our decision provides the
> defendants with substantial protection against further
> litigation.

*Chicago-Midwest Meat Ass'n v. City of Evanston,* 589 F.2d 278, 281 n. 3 (7th Cir. 1978). Additionally, although members may not individually be bound in cases based on associational

standing, the U.S. Supreme Court has nonetheless recognized associational standing. *See, Hunt,* 432 U.S. at 343.

Turning to the requirements for associational standing, first, the member cities have the ability to sue on their own behalf, just as Chicago does. Second, the Conference's interest in protecting local policy decisions in immigration enforcement is germane to the organizational purpose as it involves the power of city government. (*See,* Intervenor's Compl., Ex. 1 to Mot. to Intervene, ¶¶ 17-22.) Additionally, the Conference adopted three official resolutions regarding federal sanctuary policies. (*Id.* ¶¶ 58-70.) Each resolution passed by a wide majority of its voting members. (*Id.* at ¶ 70.) Third, the relief sought is of a sort – declaratory and injunctive – that is amenable to associational standing. For example, the Supreme Court has upheld a union's associational standing where neither the "claims nor the relief sought required the District Court to consider the individual circumstances of any aggrieved [union] member" and "[t]he suit raise[d] a pure question of law." *Brock,* 477 U.S. at 288; *see also, Crawford v. Marion Cnty. Election Bd.,* 472 F.3d 949, 951 (7th Cir. 2007), *aff'd,* 553 U.S. 181 (2008) (holding that the Democratic Party had standing to assert the rights of members prevented from voting by imposition of a new photo ID law). Here, the Conference seeks to intervene

to support the nationwide scope of relief and intends to raise only raises legal questions that are not contingent on evidence from a specific city. (*See,* Intervenor's Compl., Ex. 1 to Mot. to Intervene, ¶¶ 91-154.) Furthermore, the Conference reassures the Court that its intervention will not require individualized proof or other additional evidence. (*See,* Reply in Supp. of Pl.'s Mot. for Partial Recons., at 11.) As its complaint reflects questions of law, the Conference has established associational standing and therefore can represent the interests of its members who may suffer an impending injury caused by the defendant's acts, which injury may be remedied by a favorable judicial decision. *See, Hunt,* 432 U.S. at 343; *Bauer,* 620 F.3d at 708. This is sufficient to demonstrate standing. *See, ibid.*

### 2. *Intervention as of Right*

#### a. *Legal Standard*

In order to intervene as of right, the U.S. Conference of Mayors must satisfy four requirements: (1) timely application; (2) an interest relating to the subject matter of the action; (3) potential impairment, as a practical matter, of that interest by the disposition of the action; and (4) lack of adequate representation of the interest by the existing parties to the action. *Reich,* 64 F.3d at 321 (quotation omitted). "The burden is on the party seeking to intervene of right to show

that all four criteria are met." *Reid L. v. Illinois State Bd. of Educ.,* 289 F.3d 1009, 1017 (7th Cir. 2002) (citing *Keith v. Daley,* 764 F.2d 1265, 1268 (7th Cir. 1985)). Failure to satisfy any one factor mandates denial of the petition. *United States v. City of Chicago,* 908 F.2d 197, 199 (7th Cir.1990), *cert. denied,* 498 U.S. 1067 (1991). The Court analyzes the four factors, although it does so out of sequence for reasons that will become apparent.

### b. Timeliness

Turning to the first requirement, "[t]imeliness is to be determined from all the circumstances." *Nat'l Ass'n for Advancement of Colored People v. New York,* 413 U.S. 345, 366 (1973). Such a determination is committed to the sound discretion of the district judge. *Ibid.* The Seventh Circuit has characterized the test as "essentially one of reasonableness," stating that "potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly." *Reich,* 64 F.3d at 321 (quotation omitted). Although the assessment of timeliness is made under the totality of the circumstances, the Court should consider four factors: "(1) the length of time the intervenor knew or should have known of his or her interest in this case; (2) the prejudice to the original

party caused by the delay; (3) the resulting prejudice to the intervenor if the motion is denied, and (4) any unusual circumstances." *Ragsdale,* 941 F.2d 501, 504 (7th Cir. 1991) (citing *South v. Rowe,* 759 F.2d 610, 612 (7th Cir. 1985)). "In making this determination, we must also consider the prejudice to the original parties if intervention is permitted and the prejudice to the intervenor if his motion is denied." *Reich,* 64 F.3d at 321 (citation omitted).

The Conference argues that its Motion to Intervene is timely because it did not recognize a need to intervene, nor could it reasonably have been expected to, until September 26, 2017, when the Attorney General filed a motion to stay arguing that Chicago did not have standing to sustain the nationwide injunction. The Conference appeared before the Court two days later and, after securing leave, filed its motion to intervene eight days later. (*See,* Mot. to Intervene, ¶ 19.) The Attorney General argues that the Conference knew or should have known that its putative interests were at stake in this litigation from the filing date of this lawsuit, August 7, 2017, and thus was required to intervene from the beginning (or at least much earlier).

The Court finds the Conference's Motion timely. Timeliness is not determined from "the moment the suit is filed or even at

the time they learn of its existence," but from "the time the potential intervenors learn that their interest might be impaired." *Reich,* 64 F.3d at 321 (citing *United States v. City of Chicago,* 870 F.2d 1256, 1263 (7th Cir. 1989); *Rowe,* 759 F.2d at 612); *but see, United States v. City of Chicago,* 908 F.2d 197, 199 n.1 (7th Cir. 1990) (noting that courts should still consider the length of time the intervenor knew or should have known of his interest in the case). Here, the Conference persuasively argues that the Attorney General's motion to stay was its first indication of potential impairment to its members' interests. Indeed, an earlier intervention attempt would likely have been dead on arrival, as it would have been difficult to argue that Chicago was an inadequate representative of the Conference's members' interests. *See, Flying J,* 578 F.3d at 572 (holding that intervention was timely even after judgment where state attorney general decided not to pursue appeal because "[h]ad the association sought to intervene earlier, its motion would doubtless (and properly) have been denied on the ground that the state's attorney general was defending the statute . . . ."); *Wisconsin Educ. Ass'n Council v. Walker,* 705 F.3d 640, 659 (7th Cir. 2013) (when "the prospective intervenor and the named party have the same goal, a presumption exists that representation is adequate") (alterations and quotation

omitted). In the same vein, the Seventh Circuit in *Reich* found intervention timely where the intervenors moved to intervene as soon as they discovered the other party was inadequate, reasoning that "we do not expect a party to petition for intervention in instances in which the potential intervenor has no reason to believe its interests are not being properly represented; we went so far as to suggest that the potential intervenor would be laughed out of court." *Reich,* 64 F.3d at 322. Nevertheless, even using the time from filing to intervention as the lodestar, the approximately three-month interim is reasonably timely under the circumstances, especially in view of the untimely intervention cases cited by the Attorney General involving intervention attempts many years after the action was filed. *See, CE Design Ltd. v. King Supply Co.,* 791 F.3d 722, 726 (7th Cir. 2015); *Larson v. JP Morgan Chase & Co.,* 530 F.3d 578, 583-84 (7th Cir. 2008); *Sokaogon Chippewa Community. v. Babbitt,* 214 F.3d 941, 945 (7th Cir. 2000); *United States v. City of Chicago,* 908 F.2d 197, 197-200 (7th Cir. 1990).

The Attorney General also contends that the motion to intervene is untimely because the Conference chose to participate as an *amicus* at the beginning of the litigation and cannot now alter that decision after a favorable ruling. The

Attorney General implies that the Conference held back on intervention due to gamesmanship – that the Conference waited to see how the Court would rule on Chicago's motion for a preliminary injunction before moving to intervene because it did not want to be bound by any unfavorable judgment. However, it is doubtful that this was the motivation for the Conference's later intervention, as the individual member cities may not be bound by an unfavorable decision regardless. (*See,* Section II.B.1, *supra.*) Secondly, the Conference's asserted reason for waiting – its belief that Chicago was adequately representing its members' interests – are colorable. Indeed, other cases have found intervention later in the litigation appropriate where a specific event revealed the need to intervene. For example, in *United Airlines, Inc. v. McDonald,* the Supreme Court held that intervention was timely on the rationale that "[a]s soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests." *United Airlines,* 432 U.S. 385, 394 (1977).

In determining timeliness, "the Court must assess the possible prejudice to the parties." *Zurich Capital Mkts., Inc. v. Coglianese,* 236 F.R.D. 379, 384 (N.D. Ill. 2006) (citing

*Reich,* 64 F.3d at 322). Intervention at this time in the proceeding does not significantly prejudice the Attorney General. Although the Court has made substantive rulings, the litigation is not at an advanced stage, and the Attorney General has yet to answer the Complaint. *See, ibid* (granting intervention, noting that "any prejudice to ZCM that would result from the Liquidator's intervention would result simply by virtue of the Liquidator's involvement in the case, not from the Liquidator's delay in moving to intervene"). Any prejudice caused by delay is further diminished by the Conference's assertion that it will not seek to add any new legal issues into the case nor adduce substantial evidence from individual members. (*See,* Reply in Supp. of Pl.'s Mot. for Partial Recons., at 11.) "[I]n the absence of any indication of prejudice . . . , the motion cannot be adjudged untimely as a matter of law. We don't want a rule that would require a potential intervenor to intervene at the drop of a hat; that would just clog the district courts with motions to intervene." *Aurora Loan Servs., Inc. v. Craddieth,* 442 F.3d 1018, 1027 (7th Cir. 2006). On the other hand, there is little prejudice to the Conference if intervention is denied as it could bring its own litigation. The Court does not find any significant unusual

- 22 -

circumstances present to either support or deny intervention. Thus, on balance, the Court finds timeliness satisfied.

### c. Lack of Adequate Representation

Next, an intervenor must demonstrate a lack of adequate representation. This requirement is met "if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n. 10 (1972) (citation omitted). "However, when the representative party is a governmental body charged by law with protecting the interests of the proposed intervenors, the representative is presumed to adequately represent their interests unless there is a showing of gross negligence or bad faith." *Ligas ex rel. Foster v. Maram,* 478 F.3d 771, 774 (7th Cir. 2007) (citations omitted).

The Conference argues that the Attorney General's motion for a stay of the nationwide injunction specifically challenges Chicago's ability to represent the Conference and its members' interests. The law requires a high threshold showing of inadequacy where a governmental body, like Chicago, is a party to the litigation. However, that high threshold only applies where the "governmental body or officer [is] charged by law with representing the interests of the proposed intervenor." *Keith,*

- 23 -

764 F.2d at 1270 (citations omitted). Here, the high threshold is inapplicable because Chicago as a governmental entity is not charged by law with representing the interests of other Conference member cities. Since the high threshold is inapplicable, the burden is "minimal" and has been met here. The Attorney General's challenge to Chicago's ability to pursue a nationwide injunction for member cities of the Conference is sufficient to meet this minimal burden. *See, Trbovich,* 404 U.S. at 538 n. 10.

   *d.   Interest Relating to the Subject Matter of the Action*

   The Court next analyzes whether the Conference has a sufficient interest in the subject matter of the action. Although "[t]he 'interest' required by Rule 24(a)(2) has never been defined with particular precision," it must be "a direct, significant legally protectable interest." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.,* 69 F.3d 1377, 1380 (7th Cir. 1995); *Am. Nat. Bank & Tr. Co. of Chi. v. City of Chi.,* 865 F.2d 144, 146 (7th Cir. 1989) (quotation omitted). The necessary interest is "something more than a mere 'betting' interest, but less than a property right." *Schipporeit,* 69 F.3d at 1380–81 (internal citations omitted). The central inquiry considers "the issues to be resolved by the litigation and whether the potential intervenor has an interest in those issues." *Reich,*

64 F.3d at 322 (citations omitted). "Whether an applicant has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination, making comparison to other cases of limited value." *Schipporeit,* 69 F.3d at 1381 (citations omitted).

The Conference contends that it and its members have an interest in protecting their local law enforcement decisions and priorities from being compromised by the three conditions the Attorney General seeks to impose on the 2017 Byrne JAG grant. (*See,* Mot. to Intervene, ¶ 15.) The Conference attached to their complaint a list of their "2017 elected and appointed leadership," including information on whether a particular member is slated to receive a Byrne JAG grant allocation. (*See,* Ex. A to Intervenor's Compl.) Of the 81 cities listed, 70 cities anticipate receiving a 2017 Byrne JAG grant allocation. (*Ibid.*) The Attorney General does not argue the interest factor for intervention. Based on each individual city member's ability to bring its own lawsuit asserting the same interest as Chicago and the Conference's adoption of the sanctuary city resolutions, the Court finds the interest requirement met.

> e. *Potential Impairment of the Conference's Interest*

Finally, the Court must analyze whether the Conference would face "potential impairment, as a practical matter, of that

interest by the disposition of the action." *Reich,* 64 F.3d at 321 (quotation omitted). "The existence of 'impairment' depends on whether the decision of a legal question involved in the action would as a practical matter foreclose rights of the proposed intervenors in a subsequent proceeding." *Meridian Homes Corp. v. Nicholas W. Prassas & Co.,* 683 F.2d 201, 204 (7th Cir. 1982) (citation omitted).

The Conference argues that it and its members' ability to protect their interests would be impaired without intervention because they would potentially have to file over a thousand additional lawsuits to vindicate the same rights at issue here. (*See,* Mot. to Intervene, ¶ 16.) However, the Attorney General correctly points out that under the Conference's theory, it should only need to file one additional lawsuit – its own – in order to support a nationwide injunction to protect these interests.

The Attorney General contends that the Conference cannot demonstrate impairment because its rights will not be prejudiced by a judgment in the DOJ's favor. As the Conference will not be bound by the judgment of this Court, it will be free — if Chicago loses on appeal – to bring litigation challenging the notice and access conditions and seeking a nationwide injunction. However, the fact that the Conference may bring its

own lawsuit is not determinative. "[T]he possibility that the would-be intervenor if refused intervention might have an opportunity in the future to litigate his claim has been held not to be an automatic bar to intervention." *FEMA,* 660 F.3d at 985 (citation omitted).

"Impairment under the meaning of Rule 24(a)(2) depends on whether a ruling on a legal question would as a practical matter foreclose the intervenor's rights in a subsequent proceeding. Such foreclosure is measured by the general standards of stare decisis." *Revelis v. Napolitano,* 844 F.Supp.2d 915, 925 (N.D. Ill. 2012) (internal citation omitted). A decision of a district court is not sufficient to establish impairment based on stare decisis. *See, Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 532 (7th Cir. 1988) ("[T]he opinion of a single district judge rarely yields an effect broader than the force its reasoning carries. Such an influence is not reason enough to complicate litigation by adding [] parties. . . ."). What is more, intervention based on stare decisis should be granted infrequently:

> When should the prospect of an appellate decision cutting off further litigation in the circuit (or the nation as a whole, if the Supreme Court decides the case) be enough to support intervention? "Infrequently" is one response, an essential one if cases are to remain manageable. Trade associations, labor unions, consumers, and many others may be

> affected by (and hence colloquially "interested" in) the rules of law established by appellate courts. To allow them to intervene as of right would turn the court into a forum for competing interest groups, submerging the ability of the original parties to settle their own dispute (or have the court resolve it expeditiously). Participation as *amicus curiae* will alert the court to the legal contentions of concerned bystanders, and because it leaves the parties free to run their own case is the strongly preferred option.

*Id.* at 532–33. Accordingly, the Conference's involvement as *amicus curiae* is "strongly preferred," especially considering that any delay here is uniquely harmful given the timeline of the Byrne JAG awards. *See, ibid.* The nationwide injunction currently in force is sufficient to protect the interests of the Conference's members and, regardless, a Seventh Circuit decision overturning the nationwide injunction would not suffice to show the potential impairment necessary for intervention as of right. An appellate judgment in the DOJ's favor that Chicago lacks standing for a nationwide injunction will not preclude or impair the Conference's ability to bring a subsequent action for a nationwide injunction enjoining the three conditions at issue. *See, ibid.* The standing issue present for Chicago is not present for the Conference and, thus, this is not a case where the "parties are free to relitigate but are unlikely to get anywhere." *Ibid.* (citing *Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1122–24 (7th Cir.1987)). As to the Seventh Circuit's

ruling on appeal of the notice and access conditions, the Conference's participation as *amicus curiae* is adequate to make its legal arguments. The Court finds that the Conference cannot show that a Seventh Circuit ruling will impair or impede its ability to bring an action for a nationwide injunction on behalf of its members. Accordingly, the Court finds the Conference unable to demonstrate potential impairment to its (or its members') interests at this time.

*   *   *

Because the Conference is unable to demonstrate impairment to its interests, we deny the Conference's Motion to Intervene as of right. *See, United States v. City of Chi.,* 908 F.2d 197, 199 (7th Cir.1990), *cert. denied,* 498 U.S. 1067 (1991).

### 3. *Permissive Intervention*

The Conference moves in the alternative for this Court to allow it to intervene permissively. The court may permit anyone to intervene who, "[o]n timely motion," "has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Permissive intervention is a practical inquiry. In Justice Posner's estimation, assuming its

prerequisites have been met, "Rule 24(b) [is] just about economy in litigation." *FEMA,* 660 F.3d at 987.

The timeliness of the Conference's Motion to Intervene has been established. (*See,* Section II.B.2.b, *supra.*) Further, the Court concludes that there exists a common question of law upon which to base intervention, because the Conference's claims involve the same legal questions as Chicago's claims. *See,* FED. R. CIV. P. 24(b)(1). Accordingly, the prerequisites for permissive intervention are met.

The Conference argues that permissive intervention is proper here because it intends to advance the exact same claims that Chicago has already advanced, such that intervention will cause no delay or prejudice. It further argues that permissive intervention supports judicial economy by obviating the need for other member cities to bring lawsuits to adjudicate the exact same issues before the Court. Additionally, the Conference urges that intervention would resolve the legal question of standing, obviating the need for the parties and the Seventh Circuit to expend resources addressing it.

Permissive intervention is discretionary and the Court finds it inappropriate in this case. Intervention here is premature: The interests of the Conference's member cities are currently protected via the nationwide injunction, and its

- 30 -

members' interests have so far been given a voice via the *amicus curiae* device. Unless and until the status of the nationwide injunction changes, there is no reason to permit an intervention that will further complicate this litigation. The addition into the case of the Conference and its member cities, while it will not significantly augment the legal or evidentiary issues so as to prejudice the Attorney General, does pose the prospect of needlessly complicating a case that has already engendered significant motions practice.

Accordingly, the Court denies the Conference's Motion for Permissive Intervention.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, Chicago's Motion for Partial Reconsideration [ECF No. 99] is denied. The Conference's Motion to Intervene [ECF No. 91] is denied.

**IT IS SO ORDERED.**


_____
        Harry D. Leinenweber, Judge
        United States District Court

Dated: November 16, 2017

- 31 -