**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| THE CITY Of CHICAGO, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | Civil Action No.1:17-cv-5720 |
| | ) | |
| JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States, | ) | Hon. Harry D. Leinenweber |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

---

**MOTION OF THE NATIONAL IMMIGRANT JUSTICE CENTER, AMERICAN CIVIL LIBERTIES UNION, ET. AL. FOR LEAVE TO FILE AN AMICUS BRIEF IN SUPPORT OF PLAINTIFF**

---

Mark Fleming
Katherine E. Melloy Goettel
National Immigrant Justice Center
208 S. LaSalle Street, Suite 1300
Chicago, Illinois 60604
Tel: (312) 660-1628

Omar C. Jadwat
Lee Gelernt
American Civil Liberties Union
Foundation
Immigrants' Rights Project
125 Broad Street
New York, NY 10004
Tel: (212) 549-2616

Spencer E. W. Amdur
Cody H. Wofsy
American Civil Liberties Union
Foundation
Immigrants' Rights Project
39 Drumm St., 4th Floor
San Francisco, CA 94111
Tel: (415) 343-1198

*Counsel for Amici*

## MOTION FOR LEAVE TO FILE AN AMICUS BRIEF

Proposed amici are non-profit civil rights organizations that serve immigrant communities in Chicago and across the country. Proposed amici respectfully move for leave to file the attached brief in support of the Plaintiff's cross-motion for partial summary judgment (ECF No. 150). Plaintiff and Defendant consent to the filing of the motion. For the reasons set forth below, the motion should be granted.

### I.        Interests of Amici Curiae

Proposed amici have a broad range of experience with the issues presented in this case. They represent immigrant clients and communities who are the ultimate targets of the federal policies that Chicago is challenging. They have spent years working with State and local governments to develop policies similar to the one Chicago is defending. And they have spent decades litigating legal questions involving State and local involvement in immigration enforcement. This case implicates proposed amici's core missions and core expertise.

The **American Civil Liberties Union (ACLU)** is a nationwide, nonprofit, nonpartisan organization dedicated to the principles of liberty and equality embodied in the Constitution and this nation's civil rights laws. The ACLU, through its Immigrants' Rights Project and state affiliates, engages in a nationwide program of litigation, advocacy, and public education to enforce and protect the constitutional and civil rights of noncitizens. In particular, the ACLU has a longstanding interest in enforcing the constitutional and statutory constraints on the federal government's use of state and local police to enforce civil immigration laws. The ACLU has been counsel and amicus in a variety of cases involving these issues, including *Morales v. Chadbourne*, 793 F.3d 208 (1st Cir. 2015); *Galarza v. Szalczyk*, 745 F.3d 634 (3d Cir. 2014);

*Gonzalez v. ICE*, No. 13-cv-4416 (C.D. Cal. filed June 19, 2013); *City of Philadelphia v. Sessions*, No. 17-cv-3894 (E.D. Pa.); *California v. Sessions*, No. 17-cv-4701 (N.D. Cal.).

The **American Civil Liberties Union of Illinois (ACLU of Illinois)** is a statewide, non-profit, non-partisan organization of more than 65,000 members and is an affiliate of the American Civil Liberties Union. The ACLU of Illinois is dedicated to the defense and promotion of the principles embodied in the U.S. Constitution, the Illinois Constitution, and state and federal civil rights laws. In particular, the ACLU of Illinois has been a strong proponent of laws and policies on the state and local level that safeguard the rights of immigrants in Illinois by limiting local participation in immigration enforcement.

The **National Immigrant Justice Center (NIJC)** is a program of Heartland Alliance, which provides resettlement services to refugees and mental health services for immigrants and refugees. NIJC, through its staff of attorneys, paralegals and a network of over 1,500 pro bono attorneys, provides free or low-cost legal services to immigrants, including detained non-citizens. NIJC's direct representation, as well as its immigration advisals to criminal defense attorneys, has informed its strategic policy and litigation work around the myriad legal and policy problems of entangling local law enforcement in civil immigration enforcement. NIJC is counsel on a host of immigration enforcement cases including *Jimenez Moreno v. Napolitano*, 11-5452 (N.D. Ill.) (class action); *Gonzalez v. ICE*, Case No. 13-4416 (C.D. Cal.) (class action); *Roy v. Los Angeles County Sheriff's Dep't*, Case No. 12-9012 (C.D. Cal.) (class action); *Lunn v. Commonwealth*, Docket No. SJC-12276 (Mass.); *Gonzalez Goodman v. Maricopa County*, Case No. 16-4388 (D. Ariz.); *Makowski v. United States*, Case No. 12-5265 (N.D. Ill.); *Mayorov v. United States*, Case No. 13-5249 (N.D. Ill.); *Ocampo v. Harrington, et al.*, Case No. 13-3134 (C.D. Ill.). NIJC has also submitted amicus briefs in *Galarza v. Szalczyk*, Case No. 12-3991 (3d Cir.); *City of*

*Philadelphia v. Sessions*, No. 17-cv-3894 (E.D. Pa.); *California v. Sessions*, No. 17-cv-4701 (N.D. Cal.); *City of El Cenizo, et al. v. State of Texas, et al.*, Case No. 17-50762 (5th Cir.); and *Sanchez Ochoa v. Campbell*, Case No. 17-35679 (9th Cir.). NIJC also advocated for the amendments to the Chicago Welcoming City Ordinance (Ch 2-173) in 2012, the Cook County detainer ordinance (11-O-73) in 2011, and the recently enacted Illinois TRUST Act (S.B. 31).

The **National Immigration Law Center (NILC)** is the primary national organization in the United States exclusively dedicated to defending and advancing the rights and opportunities of low-income immigrants and their families. Over the past 35 years, NILC has won landmark legal decisions protecting fundamental rights, and advanced policies that reinforce the values of equality, opportunity, and justice. NILC has earned a national leadership reputation for its expertise in the rights of immigrants, including litigating key due process cases to protect the rights of noncitizens.

The **Northwest Immigrant Rights Project (NWIRP)** is a non-profit legal organization dedicated to the defense and advancement of the rights of noncitizens in the United States. NWIRP provides direct representation to low-income immigrants who are applying for immigration and naturalization benefits and to persons who are placed in removal proceedings. In addition, NWIRP engages in community education to immigrant communities who interact both with federal immigration enforcement and local law enforcement agencies. Thus, NWIRP has a direct interest in the issues presented in this case.

## II. Proposed Amici's Brief Is Useful to the Court

The attached brief provides the Court with additional reasons to enjoin the Department's new policy requiring JAG grantees to certify compliance with 8 U.S.C. § 1373. It explains that the statute on which the Department has relied—which requires JAG applicants to certify that

they comply with "applicable" laws—only conditions JAG funds on compliance with laws that "appl[y]" *to federal funds*, not the vast universe of statutes and regulations that apply to state and local governments, but that do not, by their terms, condition federal funds. 8 U.S.C. § 10153(a)(5)(D). This analysis is useful to the Court for three primary reasons.

First, the Court may wish to first determine whether the Department has statutory authority to impose the challenged condition, before addressing the weighty Spending Clause and Tenth Amendment issues that the condition raises. *See, e.g.*, *Dep't of Comm. v. U.S. House of Reps.*, 525 U.S. 316, 343-44 (1999) (preferring statutory resolution that made it "unnecessary to reach the constitutional question presented").

Second, the attached brief provides additional reasons why the JAG statute does not authorize the compliance condition, beyond the considerations the Court addressed in its preliminary injunction opinion. In particular, the brief explains the statutory text, context, and history that bears on the Department's authority and its interpretation of the JAG statute.

Third, the attached brief reflects proposed amici's on-the-ground experiences working with States and localities against whom the Department wishes to enforce the compliance condition. That experience is relevant to the Court's analysis of the compliance condition's intrusion into traditional areas of State and local governance.

## CONCLUSION

For the foregoing reasons, proposed amici respectfully request that the Court grant them leave to file the attached brief in support of Chicago's Cross-Motion for Partial Summary Judgment.

Dated: February 6, 2017

Respectfully submitted,

/s/   Mark Fleming
Mark Fleming
Kate Melloy Goettel
National Immigrant Justice Center
208 South LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 660-1370
Facsimile: (312) 660-1505
mfleming@heartlandalliance.org
kgoettel@heartlandalliance.org

Spencer E. W. Amdur
Cody H. Wofsy
American Civil Liberties Union
Foundation—Immigrant Rights Project
39 Drumm Street, 4th Floor
San Francisco, CA 94111
Tel: (415) 343-1198
samdur@aclu.org
cwofsy@aclu.org

Omar C. Jadwat
Lee Gelernt
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street
New York, NY 10004
Tel: (212) 549-2616

*Counsel for Amici*

## CERTIFICATE OF SERVICE

I, Mark Fleming, hereby certify that on February 6, 2018, I caused a true and correct copy of the foregoing Motion of the National Immigrant Justice Center, American Civil Liberties Union, et al. for Leave to File an Amicus Brief in Support of Plaintiff to be filed and served on all participants in this case via the court's CM/ECF system.

Dated:  February 6, 2018                                  Respectfully submitted,

                                                         /s/   Mark Fleming_____

                                                         Mark Fleming
                                                         National Immigrant Justice Center
                                                         208 South LaSalle Street, Suite 1300
                                                         Chicago, Illinois 60604
                                                         Telephone: (312) 660-1370
                                                         Facsimile: (312) 660-1505
                                                         mfleming@heartlandalliance.org

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| THE CITY Of CHICAGO, | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| vs. | ) ) | Civil Action No.1:17-cv-5720 |
| JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States, | ) ) ) ) | Hon. Harry D. Leinenweber |
| *Defendant.* | ) ) ) ) | |

_____

**BRIEF OF *AMICI CURIAE* NATIONAL IMMIGRANT JUSTICE CENTER,
AMERICAN CIVIL LIBERTIES UNION, ET AL.
IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR
PARTIAL SUMMARY JUDGMENT**
_____

Mark Fleming
Katherine E. Melloy Goettel
National Immigrant Justice Center
208 S. LaSalle Street, Suite 1300
Chicago, Illinois 60604
Tel: (312) 660-1628

Omar C. Jadwat
Lee Gelernt
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street
New York, NY 10004
Tel: (212) 549-2616

Spencer E. W. Amdur
Cody H. Wofsy
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm St., 4th Floor
San Francisco, CA 94111
Tel: (415) 343-1198

*Counsel for Amici*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................3

   I.    The Compliance Condition Is Not Authorized by Statute. ...............................3

       A.     The Department's Position Requires an Unambiguous Statutory
             Statement..............................................................................................3

       B.     The JAG Statute Does Not Authorize the Compliance Condition. ...................4

           1.     The Text of § 10153 Forecloses the Department's Position....................4

           2.     The Compliance Condition Contradicts Longstanding Practice.............8

           3.     The Department May Not Add New Conditions to JAG Funds...........10

       C.     The Department's Interpretation Would Have Troubling Federalism
             Consequences......................................................................................11

       D.     The Department's Cases Have No Bearing on the JAG Statute......................14

CONCLUSION..................................................................................................................14

## INTRODUCTION

Amici are non-profit civil rights organizations that serve immigrant communities in Chicago and across the country. Amici submit this brief to provide additional reasons that the Court should rule for the City in its claim that the Department of Justice lacks statutory authority to make 8 U.S.C. § 1373 a condition of receiving funds under the Byrne Justice Assistance Grant ("JAG") Program (the "compliance condition"). Resolving this claim on statutory grounds would allow the Court to avoid ruling on a number of weighty constitutional issues, including whether the compliance condition accords with the Spending Clause, and whether 8 U.S.C. § 1373 accords with the Tenth Amendment. *See, e.g.*, *Dep't of Commerce v. U.S. House of Reps.*, 525 U.S. 316, 343-44 (1999) (preferring statutory resolution that made it "unnecessary to reach the constitutional question presented").

This Court declined to preliminarily enjoin the compliance condition. *See City of Chicago v. Sessions*, 264 F. Supp. 3d 933, 946 (N.D. Ill. 2017). But the Court is not bound by its earlier decision. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 528 n.4 (7th Cir. 2000). Amici respectfully urge the Court to take a second look. Viewed in the full context of 34 U.S.C. § 10153, and against the backdrop of the relevant federalism principles, § 10153(a)(5)(D) cannot be read to impose the compliance condition, or to authorize the Department to impose it anew.

The JAG statute requires grantees to comply with "applicable" laws. But it does not expressly specify the object of "applicable." There are two sets of laws that this phrase could refer to: (1) laws that apply to the *grant* (which include JAG requirements and other federal spending conditions), or (2) laws that apply to the *applicant* (which includes a much broader universe of laws unconnected to federal funds).

1

The first option is correct for a number of reasons. Numerous aspects of the statutory text all support that conclusion—including the surrounding conditions, the adjacent certifications, and the rule against superfluity. The Department's longstanding practice reflects that interpretation, and its own certification documents similarly use "applicable" to mean "applicable to the award," not the applicant. Congress, too, has repeatedly considered and rejected making § 1373 a condition of JAG funds. And nothing in § 10153 gives the Department any authority to create *new* substantive conditions that Congress itself has not imposed.

Moreover, the second option would be an extreme outlier in the U.S. Code. Amici are aware of no grant programs that are conditioned on a grantee's compliance with every one of the hundreds (if not thousands) of germane statutes and regulations that apply to states, localities, and their employees.

If there were any doubt, background federalism imperatives require clear statements to impose spending conditions, and they ensure that statutory intrusions into state sovereignty are construed narrowly. Because § 10153 does not clearly impose the compliance condition or empower the Department to, these canons would doom the Department's position even if the statute's text, context, and history did not.

The intrusion heralded by the Department's new interpretation is significant: It would allow the Department to use JAG funds as a lever to force police across the country to comply with its increasingly dubious interpretations of § 1373, or any other law. When an agency claims to discover such a consequential power lying dormant "in a long-extant statute," courts "typically greet its announcement with a measure of skepticism." *Util. Air Reg. Group v. EPA ("UARG")*, 134 S. Ct. 2427, 2444 (2014). The Court should enjoin the compliance condition.

**ARGUMENT**

I.     **The Compliance Condition Is Not Authorized by Statute.**

    A.     **The Department's Position Requires an Unambiguous Statutory Statement.**

Two canons of construction bear directly on the Department's statutory authority in this case.  Both require a clear statement of congressional intent to impose a particular spending condition.  The Court must therefore construe the Department's statutory authority narrowly.

First, "if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously."  *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981).  "Respecting this limitation is critical to ensuring that Spending Clause legislation does not undermine the status of the States as independent sovereigns in our federal system."  *Nat'l Fed. of Indep. Business v. Sebelius*, 567 U.S. 519, 577 (2012) (op. of Roberts, C.J.).  Thus, unless the language of the statute makes a particular spending condition "explicitly obvious," the condition does not exist.  *Charles v. Verhagen*, 348 F.3d 601, 607 (7th Cir. 2003) (quotation marks omitted).

Second, to ensure that federalism boundaries are not lightly crossed, courts will not interpret a statute to allow federal intrusion into core areas of state sovereignty unless that intention is "unmistakably clear in the language of the statute."  *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).  This principle binds agencies as well: The Supreme Court has instructed courts to "assum[e] that Congress does not casually authorize administrative agencies to interpret a statute" in a way that "alters the federal-state framework by permitting federal encroachment upon a traditional state power."  *Solid Waste of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172-73 (2001).  The *Gregory* principle has particular force when dealing with federal laws like § 1373 that impact the ordinary duties of state police.  *See Bond v. United States*, 134

S. Ct. 2077, 2089 (2014) (limiting ostensibly broad federal statute because "the clearest example of traditional state authority is the punishment of local criminal activity").

Together, these background principles mean that JAG funds are only conditioned on compliance with § 1373 if the statute makes that intention clear. If there is any "ambiguity" in the statutory scheme, the Court should not "attribute to Congress an intent to intrude on state governmental functions," *Gregory*, 501 U.S. at 470, by permitting the Department to use JAG funds as "a weapon" to force state police to comply with its view of § 1373. *County of Santa Clara v. Trump*, 2017 WL 5569835, at *2 (N.D. Cal. Nov. 20, 2017); *see infra* Part I.C (discussing federalism impact).

### B. The JAG Statute Does Not Authorize the Compliance Condition.

The Department cannot meet its heavy burden under *Pennhurst* and *Gregory*. The text, context, structure, and history of § 10153 foreclose the Department's position, and at the very least, fail to unambiguously support it.

### 1. The Text of § 10153 Forecloses the Department's Position.

The provision on which the Department bases its claim of authority appears in the JAG statute's application requirements. 34 U.S.C. § 10153(a). It provides that JAG applicants must certify compliance with both "all provisions of this part"[1] and with "all other applicable Federal laws." *Id.* § 10153(a)(5)(D). The phrase "applicable Federal laws" could mean two different things: It could mean laws applicable to the *grant*—i.e. conditions that are already attached to JAG funds specifically or federal funds generally.[2] Or it could mean the much wider set of laws

---

[1] "This part" refers to the JAG program, which is contained in Part A of Title 34, Ch. 101, Subch. V.

[2] Some requirements apply specifically to JAG funds. *See, e.g.*, 34 U.S.C. § 20927(a). Others apply to DOJ funds, 34 U.S.C. § 30307(e), or to federal funds more generally. *See, e.g.*, 42 U.S.C. § 2000d (no discrimination in "any program or activity receiving Federal financial assistance"); 29 U.S.C. § 794(a) (same); 42 U.S.C. § 4604(c) (similar).

that apply to *applicants*—i.e. every statute and regulation that applies to states, localities, and their employees, including all sorts of laws that have no connection to federal funds. The text "applicable Federal laws" does not, by itself, specify whether "applicable" attaches to grants or to applicants.

The Department is therefore wrong, at the outset, when it maintains that reading "applicable" to mean "applicable to the grant" would require an "artificially" cabined interpretation. Mot. to Dismiss at 8. In fact, the Department's own certification form uses "applicable" to mean "applicable to the award." *Infra* Part I.B.2. That interpretation does not require any atextual limiting construction. In isolation, the text simply does not answer this question.

The surrounding context, however, provides a clear answer. *See Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("[C]ourts are to interpret the words of a statute in context."). Numerous aspects of § 10153 point to the same conclusion: "applicable" means applicable to the grant, not the applicant.

First, the applicable-laws provision must be read consistently with all the surrounding conditions listed in § 10153(a). *See Yates v. United States*, 135 S. Ct. 1074, 1085 (2015) ("[A] word is known by the company it keeps."). Without exception, all the other conditions in § 10153(a) apply narrowly to the grant itself.[3] None of them impose conditions beyond the context of grant administration. If "applicable" meant what the Department believes, § 10153(a)(5)(D) would be a major outlier—it would be the only provision in § 10153 to import requirements that do not by their terms apply to federal funds. And it would do so in sweeping fashion, adding

---

[3] *See, e.g.*, 34 U.S.C. § 10153(a)(1) (JAG funds cannot be used to supplant state or local funds); *id.* § 10153(a)(2), (3) (JAG project must be submitted for appropriate review); *id.* § 10153(a)(4) (requirement to report on administration of JAG grant); *id.* § 10153(a)(6) (plan for how JAG funds will be used).

5

thousands of new statutory and regulatory conditions. Courts typically do not interpret serial provisions like these to include such a glaring difference in kind. *See Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 575 (1995) (applying this canon to avoid giving "unintended breadth" to a statutory term).

Second, the applicable-laws provision is a "residual clause" which is limited by "the enumerated categories . . . which are recited just before it." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 115 (2001). Section 10153(a)(5)(D) first asks applicants to certify that they comply with "all provisions of" the JAG statute. Those requirements are *already* tied to JAG funds, with or without § 10153(a)(5)(D). Accordingly, the statute's residual clause—"all *other* applicable Federal laws"—necessarily is limited to other "Federal laws" that likewise are already tied to federal funds. This residual clause, like others, must be limited by what proceeds it, because "there would have been no need for Congress to" enumerate compliance with the JAG statute if it was "subsumed within" an unlimited residual clause. *Id.* at 114-15 (calling this canon an "insurmountable textual obstacle" to a broad reading of a residual clause). The applicable-laws provision thus does not attach any new conditions to JAG funds; it simply requires JAG applicants to certify compliance with laws that independently condition the grant.[4] Indeed, the rest of subsection (a)(5) functions the same way, requiring applicants to certify that, for instance, the funded programs "meet all the requirements of this part." 34 U.S.C. § 10153(a)(5)(A); *see also id.* § 10152 (imposing some of those requirements).

---

[4] The Department claims that the term "all other" entails a "capacious" spending condition, Mot. to Dismiss at 5, but the exact opposite is true: As the Supreme Court has explained, "all other" simply signals a residual clause, *Republic of Iraq v. Beaty*, 556 U.S. 848, 857-58 (2009), which must be "understood by reference to the provisions that precede it," *Alabama Dep't of Rev. v. CSX Trans., Inc.*, 135 S. Ct. 1136, 1144-45 (2015).

The statutory context thus renders the Department's position untenable. Congress does not "alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). All of § 10153(a)'s other conditions are closely tied to recipients' administration of federal funds, and subsection (a)(5) is even narrower. It would be a dramatic departure for the second term in the fourth element of the fifth paragraph in that list to suddenly impose a limitless swath of conditions, which, unlike everything else in § 10153, are unconnected to JAG funds specifically or federal funds generally. Congress does not "hide elephants in mouseholes." *Id.*

Third, even viewing the applicable-laws provision in isolation, the rule against superfluity would compel the same result. *See Clark v. Rameker*, 134 S. Ct. 2242, 2248 (2014). Section 10153(a)(5)(D) only asks applicants to certify compliance with "*applicable* federal laws" (emphasis added). The word "applicable" would have no effect if "all applicable Federal laws" meant "all Federal laws"—in other words, if "applicable" referred to the applicant, as opposed to the grant. The word "applicable" must therefore have a limiting effect, which the Department's position would preclude. *See United States v. Hayes*, 555 U.S. 415, 425-26 (2009) (rejecting an interpretation that rendered a single word inoperative); *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 811 (7th Cir. 2016) ("[I]f it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (quotation marks omitted).

The Department posits that Congress might have used the word "applicable" to specify that grantees need only certify compliance with laws that "do apply" to them, as opposed to laws that, "by their terms," only "apply to private individuals." Mot. to Dismiss at 8. But Congress did not need the word "applicable" to avoid that bizarre interpretation. A mandate to comply with "all federal laws" would only reach ones that "do apply" to the recipient, not laws that, by

their terms, are incapable of applying to States and localities. *See, e.g.*, 26 U.S.C. § 1 (individual income tax). The Department's strained effort to avoid superfluity thus underscores that, of § 10153(a)(5)(D)'s two possible meanings, only one gives independent meaning to each word.

Fourth, if any doubt remained, background federalism principles would resolve it. *See supra* Part I.A. Section 10153(a) contains no "unambiguously clear" or "explicitly obvious" statement that JAG funds come with an expansive set of conditions hailing from far outside the grant context. *Gregory*, 501 U.S. at 460; *Charles*, 348 F.3d at 607. On the contrary, as explained above, the best reading of the provision is the narrow one; but at a bare minimum the provision is ambiguous. Where two interpretations are "plausible," the less intrusive one must govern. *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013). If Congress wanted to add financial penalties to laws that regulate the States and their police, or if it wanted to empower the Department to wield JAG funds as a coercive tool, it would have said so clearly, as *Pennhurst* and *Gregory* require. The Court should therefore construe § 10153(a)(5)(D)—in line with its text and context, and with the longtime understanding of the Department and Congress, *see infra* Part I.B.2—to only incorporate laws that already "appl[y]" to federal funds, which § 1373 does not.

### 2. The Compliance Condition Contradicts Longstanding Practice.

The Department's own practice reflects the same interpretation of § 10153(a)(5)(D). Its current certification form, *see* Dep't of Justice, Certified Standard Assurances, OMB No. 1121-0140,[5] asks grant applicants to certify compliance with "all applicable federal statutes and regulations," but makes clear that this refers to federal laws that are "applicable *to the award*,"

---

[5] *Available at* https://www.bja.gov/Jag/pdfs/OJP-Certified-Standard-Assurances.pdf.

not the applicant, *compare id.* § 3(b), *with id.* § 3(a) (emphasis added).[6]  The Department has

long adhered to that interpretation:  Its "previous conditions have all been tethered to statutes that

by their terms" impose conditions on federal funds.  *Chicago*, 264 F. Supp. 3d at 945.  The JAG

program and its predecessors have existed since 1988, and § 1373 was enacted in 1996.  *See* Pub.

L. No. 100-690, § 503, Nov. 18, 1988; Pub. L. 104-208, Div. C, § 642, Sept. 30, 1996.  And yet,

before the compliance condition, the Department has never asserted that it could tie JAG funds to

§ 1373 or any other law that is not already a grant condition.  The agency's claim to discover this

broad new authority lying dormant for decades in the JAG statute warrants "a measure of

skepticism."  *UARG*, 134 S. Ct. at 2444.

Congress has also understood § 10153(a)(5)(D) not to impose conditions like § 1373.  In

the two decades since it enacted § 1373, "Congress has repeatedly, and frequently," considered

making § 1373 a condition of receiving JAG funds, but has "declined" each time.  *Cty. of Santa

Clara v. Trump*, 250 F. Supp. 3d 497, 531 (N.D. Cal. 2017) (collecting bills).  Such amendments

would have been wholly unnecessary if § 10153(a)(5)(D) *already* required compliance with §

1373 as a condition of JAG funds.  By declining these proposals, Congress has rejected exactly

what the Department has now unilaterally done.  *See Heckler v. Day*, 467 U.S. 104, 119 n.33

(1984) (doubting the legality of imposing "limitations that Congress repeatedly has declined to

enact"); *Flood v. Kuhn*, 407 U.S. 258, 283 (1972) (relying on rejected legislative proposals);

*MITE Corp. v. Dixon*, 633 F.2d 486, 497 & n.23 (7th Cir. 1980) (same); *Gadson v. Newman*, 807

F. Supp. 1412, 1418-19 (C.D. Ill. 1992) (same).

---

[6] "(3) I assure that, through the period of performance for the award (if any) made by OJP based on the application—(a) the Applicant will comply with all award requirements and all federal statutes and regulations applicable to the award; (b) the Applicant will require all subrecipients to comply with all applicable award requirements and all applicable federal statutes and regulations." *Id.*

### 3. The Department May Not Add New Conditions to JAG Funds.

Finally, just as the JAG statute itself does not impose the compliance condition, it also forecloses any suggestion that the Department has authority to invent *new* substantive grant conditions. Section 10153 confers no such authority. It simply lists assurances that recipients must give in their grant applications, *see* 34 U.S.C. § 10153(a)(1)-(6), without any indication that the Department may add to them. The one authority it gives the Department is to specify the "form" of grant applications and certifications—i.e. the documents that applicants must fill out. *Id.* § 10153(a), (a)(5). But that narrow authority to specify form is exactly the opposite of authority to dictate substance. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013) (distinguishing "form" from "substance"); *Stinnett v. Iron Works Gym*, 301 F.3d 610, 613 (7th Cir. 2002) (distinguishing "form" from "content"); Black's Law Dictionary (10th ed. 2014) (defining "form" as being "distinguished" from "substance or matter," and as referring to a "document" to be filled in).

When Congress confers authority to impose new substantive conditions, it does so explicitly. It has given the Department this authority in other grant programs. *See* 34 U.S.C. § 10446(e)(3) (authorizing Attorney General to "impose reasonable conditions on grant awards"); 34 U.S.C. § 40701(c)(1) (authorizing Attorney General to "establish appropriate grant conditions"). And it speaks explicitly when it gives this authority to all other agencies as well. *See, e.g.*, 15 U.S.C. § 2684(g); 16 U.S.C. § 1225; 20 U.S.C. § 1682; 25 U.S.C. § 1644(b); 25 U.S.C. § 1652(b); 29 U.S.C. § 794(a); 42 U.S.C. § 280e(e); 42 U.S.C. § 2000d-1; 47 U.S.C. § 1204(b)(2). Section 10153(a)(5)(D), in contrast, contains no comparable language delegating authority to impose new grant conditions.

Thus, the most the Department can do is interpret the statutory conditions listed in §
10153, not establish new ones. And because its interpretation here was not adopted through
formal procedures, it "lack[s] the force of law" and does not warrant any particular deference.
*Am. Fed. of Gov't Employees v. Rumsfeld*, 262 F.3d 649, 656 (7th Cir. 2001) (quoting
*Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000)). In any event, as explained above, the
Department's interpretation of § 10153(a)(5)(D) is untenable, as it conflicts with the statute's
text and structure, the Department's and Congress's consistent understanding, and the *Pennhurst*
and *Gregory* canons.

### C.  The Department's Interpretation Would Have Troubling Federalism Consequences.

The Department's position would allow a major expansion of its own authority over state
and local governments. Under its interpretation of § 10153(a)(5)(D), it can now attach financial
penalties to any federal law it chooses, as long as the law is sufficiently "germane[]" to meet
constitutional standards. *South Dakota v. Dole*, 483 U.S. 203, 207-08 (1987); *Charles*, 348 F.3d
at 608-09 (applying germaneness test). That would be a remarkable new power—amici are not
aware of any provision in the U.S. Code granting such sweeping authority, and the Department
has cited none in this or any other litigation concerning the compliance condition. This would
alter the federal-state balance in at least three troubling ways.

First, the claimed authority would allow the Department to subject States to a more
intrusive enforcement scheme than Congress has chosen. In § 1373, Congress provided for
injunctive enforcement only, repeatedly declining to attach financial penalties. *See supra* Part
I.B.2. But in the Department's view, it can now enforce § 1373 by cutting off important criminal
justice funds, thereby ending state and local programs that support drug rehabilitation, mental

health, and community policing. Agencies may not escalate the sanctions inflicted on sovereign States and their subdivisions without clear permission from Congress.

Second, and more importantly, the Department's interpretation would allow it to go beyond attaching new penalties to old laws: It could also coerce compliance with new *interpretations* of existing laws, however tenuous, because many grant recipients will not have the resources, time, or expertise to resist.

That is exactly what the government has done with § 1373. In recent months, it has advanced at least two dubious new interpretations: that § 1373 prohibits policies that limit detainer compliance, *see Santa Clara*, 2017 WL 5569835, at *14, and that it requires States to let their officers notify ICE about inmates' release dates, custody status, and home addresses, *see, e.g.*, Mot. to Dismiss at 19-20; *but see Steinle v. City & Cty. of San Francisco*, 230 F. Supp. 3d 994, 1015 (N.D. Cal. 2017) ("[N]o plausible reading of [§ 1373] encompasses the release date of an undocumented inmate."). But despite the fact that many jurisdictions across the country have both kinds of policies, the Department has not filed any lawsuits to enjoin them, in which its interpretation could be definitively considered and rejected. *Cf.* Mot. to Dismiss at 2-4, 17-19 (arguing that this Court should not review the Department's new atextual § 1373 interpretations). Instead, it has put the onus on grantees, by threatening to withhold critical funding—which it can do without any judicial involvement—if grantees do not acquiesce. No matter how far-fetched the interpretation, grantees cannot avoid complying unless they are willing to either forego funds or bring litigation—an expensive and high-stakes choice, especially for smaller jurisdictions that depend on federal funds.

This is a major departure from Congress's scheme, which requires the Department to bring enforcement actions one at a time, and to establish the validity of its § 1373 interpretation

in each case.  In the Department's view, it can now coerce compliance en masse, simply by announcing a new interpretation of § 1373, no matter how implausible.  Even if some recipients sue, others may acquiesce for fear of losing crucial funds.

Third, the Department's interpretation would extend the procedures for enforcing spending conditions to a host of laws that are not spending conditions.  By turning § 1373 into a JAG condition, for instance, the Department gives itself authority to make serial and potentially onerous demands for documentation, legal analysis, and other information from recipients.  *See* 34 U.S.C. § 10230(a)-(c) (imposing "[r]ecordkeeping requirement[s]," "audit and examination" procedures, and agency "access" to grantee "records"); 2 C.F.R. § 200.336(a) (same).  Indeed, the Department has already used the compliance condition to demand four rounds (and counting) of document production and legal memoranda from grantees to justify their compliance with its ever-expanding interpretation of § 1373.[7]  It has also threatened to issue subpoenas pursuant to its grant-administration authorities.  *See* 34 U.S.C. § 10225.

The Department's new position thus alters the power dynamics between itself and the States.  Section 10153 forecloses this dramatic new power, undiscovered until now, and at the very least, contains no clear statement that Congress intended the Department to enforce the entire U.S. Code and Code of Federal Regulations through JAG.

---

[7] *See* Dep't of Justice, Press Release, *Justice Department Demands Documents and Threatens to Subpoena 23 Jurisdictions As Part of 8 U.S.C. 1373 Compliance Review*, Jan. 24, 2018, https://www.justice.gov/opa/pr/justice-department-demands-documents-and-threatens-subpoena-23-jurisdictions-part-8-usc-1373; Dep't of Justice, Press Release, *Justice Department Sends Letters to 29 Jurisdictions Regarding Their Compliance with 8 U.S.C. 1373*, Nov. 15, 2017, https://www.justice.gov/opa/pr/justice-department-sends-letters-29-jurisdictions-regarding-their-compliance-8-usc-1373; Dep't of Justice, Press Release, *Justice Department Provides Last Chance for Cities to Show 1373 Compliance*, Oct. 12, 2017, https://www.justice.gov/opa/pr/justice-department-provides-last-chance-cities-show-1373-compliance; Dep't of Justice, Press Release, *Department of Justice Sends Letter to Nine Jurisdictions Requiring Proof of Compliance with 8 U.S.C. § 1373*, Apr. 21, 2017, https://www.justice.gov/opa/pr/department-justice-sends-letter-nine-jurisdictions-requiring-proof-compliance-8-usc-1373.

**D.      The Department's Cases Have No Bearing on the JAG Statute.**

The Department cites several cases to support its position that "applicable" applies to the applicant, not the award.  Mot. to Dismiss at 8.  But none of them involved a spending condition, much less a condition directed at state police, where *Pennhurst*, *Gregory*, *Solid Waste*, and *Bond* require clear statements.  None of them considered the phrase "applicable laws" embedded in a long list of narrow provisions like § 10153.  And none of them advanced a limitless construction of "applicable laws"; instead, they paid close attention to the phrase's interaction with nearby statutory terms.  *See Dep't of Treasury v. FLRA*, 494 U.S. 922, 931-32 (1990) (holding that "applicable laws" was narrower than "*all*" laws); *HHS v. FLRA*, 844 F.2d 1087, 1098 (4th Cir. 1988) (holding that "applicable law" did not include a particular law, which would have rendered a different provision superfluous); *Bennett Enters., Inc. v. Domino's Pizza, Inc.*, 45 F.3d 493, 497 (D.C. Cir. 1995) (holding that "all applicable laws" included tax laws in the context of a business contract, but doubting that it reached "every law"); *United States v. Odneal*, 565 F.2d 598, 600 (9th Cir. 1977) (noting that the Coast Guard has "very broad statutory authority" to enforce all federal laws "applicable" "upon the high seas").

If anything, the Department's cases illustrate that the meaning of "applicable laws" depends entirely on statutory context, and is often quite limited.  None have anything to do with the meaning of "applicable Federal laws" in § 10153.

## CONCLUSION

For the foregoing reasons, amici respectfully ask this Court to enjoin the compliance condition.

Dated: February 6, 2017                                    Respectfully submitted,

                                                                          /s/   Mark Fleming
                                                                          Mark Fleming

Kate Melloy Goettel
National Immigrant Justice Center
208 South LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 660-1370
Facsimile: (312) 660-1505
mfleming@heartlandalliance.org
kgoettel@heartlandalliance.org

Spencer E. W. Amdur
Cody H. Wofsy
American Civil Liberties Union Foundation
Immigrants' Rights Project
39 Drumm Street, 4th Floor
San Francisco, CA 94111
Tel: (415) 343-1198
samdur@aclu.org
cwofsy@aclu.org

Omar C. Jadwat
Lee Gelernt
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street
New York, NY 10004
(212) 549-2616
ojadwat@aclu.org
lgelernt@aclu.org

*Counsel for Amici*

## CERTIFICATE OF SERVICE

I, Mark Fleming, hereby certify that on February 6, 2018, I caused a true and correct copy of the foregoing Brief of Amici Curiae National Immigrant Justice Center, American Civil Liberties Union, et al. in Support of Plaintiff's Cross-Motion for Partial Summary Judgment to be filed and served on all participants in this case via the court's CM/ECF system.

Dated: February 6, 2018                    Respectfully submitted,

/s/   Mark Fleming

Mark Fleming
National Immigrant Justice Center
208 South LaSalle Street, Suite 1300
Chicago, Illinois 60604
Telephone: (312) 660-1370
Facsimile: (312) 660-1505
mfleming@heartlandalliance.org

16