UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **THE CITY OF CHICAGO,** *Plaintiff*, v. **JEFF SESSIONS, Attorney General of the United States,** *Defendant*. | Civil Action No. 1:17-cv-05720 Hon. Harry D. Leinenweber |

### RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO CITE SUPPLEMENTAL AUTHORITY

Plaintiff's "Motion for Leave to Cite Supplemental Authority" asks the Court to consider the Supreme Court's recent decision in *Murphy v. National Collegiate Athletic Association*, 138 S. Ct. 1461, 2018 WL 2186168 (May 14, 2018), in connection with the parties' pending dispositive motions. Although the defendant does not oppose plaintiff's request for leave to cite *Murphy*, defendant disagrees with plaintiff's conclusion regarding the applicability of that decision to this action.

The *Murphy* decision has little application to plaintiff's claim that 8 U.S.C. § 1373 is unconstitutional. Most fundamentally, *Murphy* is inapposite because the facial validity of Section 1373 is not legitimately before the Court. Since this case concerns conditions on a voluntary federal grant, the Section 1373 compliance condition challenged here cannot "commandeer" Chicago's resources or employees. Thus, the proper law to apply is Spending Clause jurisprudence, under which obligations on States or local governments can be imposed when they are germane to the subject program. The Supreme Court has routinely held that conditioning the receipt of federal funds on whether a state or local jurisdiction complies with a

federal statute or takes some other action does not violate the Tenth Amendment, so long as the "State could . . . adopt the simple expedient of not yielding to what she urges is federal coercion." *S. Dakota v. Dole*, 483 U.S. 203, 210 (1987) ("[A] perceived Tenth Amendment limitation on congressional regulation of state affairs d[oes] not concomitantly limit the range of conditions legitimately placed on federal grants.").

Even if this Court were to evaluate the facial constitutionality of Section 1373, *Murphy* would support its legality. The statute at issue in *Murphy* – the Professional Amateur Sports Protection Act of 1992 ("PASPA") – prohibited the States from authorizing any "betting, gambling, or wagering scheme based . . . on competitive sporting events." *Id*. at *4. That statute was a clear effort to avoid accountability by requiring the States themselves to regulate sports betting in the manner Congress wished. *See id*. at *12. Section 1373, on the other hand, is simply an information-access component of a regulatory scheme – immigration removal – over which the Federal Government retains full responsibility and accountability for its actions.

In *Murphy*, New Jersey repealed its existing statutory prohibition on sports gambling, and the NCAA challenged that repeal as a violation of PASPA. *Id*. at *6. The Supreme Court rejected the challenge, holding that PASPA violated the Tenth Amendment by effectively requiring each State to enact and "maintain" a prohibition on sports gambling. *Id*. at *10. The Court held that the Tenth Amendment prohibits Congress from "command[ing] a state government to enact *state* regulation" or "compelling them to enact and enforce a federal regulatory program." *Id*. at *11 (quoting *New York v. United States*, 505 U.S. 144, 161, 178 (1992)). Chief among the Court's concerns was that Congress could seek to deflect political accountability by commanding the States to impose regulation in an area where the Federal Government itself had been largely silent. *Id*. at *12.

2

By comparison, the Immigration and Naturalization Act ("INA") as a whole, and Section 1373 in particular, are very different. Rather than compelling the States to "enact state regulation" or to "enact and enforce a federal regulatory program," Section 1373 is merely an information-access component of the overall alien removal scheme, over which the Federal Government takes full responsibility for regulation of and enforcement against individuals under the INA. *See generally Arizona v. United States*, 567 U.S. 387, 394 (2012) ("The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens."). Whereas PASPA sought to compel the enactment and maintenance of a state statutory scheme, Section 1373 merely protects the Federal Government's ability to access the information necessary to carry out a *federal* scheme in an area highly regulated by the Federal Government. As such, Section 1373 ensures that the Federal Government has the information it needs to "regulate individuals, not States." *Murphy*, 2018 WL 2186168, at *15 (quotation omitted).

The reasoning of *Murphy* supports the constitutionality of Section 1373 for several reasons. First, *Murphy* did not call into question any aspect of *Arizona v. United States*, but cited it favorably with respect to the settled understanding that the Federal Government enjoys broad authority in the area of immigration and that Congress may "'foreclose any state regulation in the area,'" *id*. at *16 (quoting *Arizona*, 567 U.S. at 401). Here, Section 1373 forecloses conflicting state regulation that would preclude access to information regarding the regulated individuals. *Murphy* thus supports defendant's argument that States may not employ conflicting standards and practices that interfere with the federal scheme. *See Arizona*, 567 U.S. at 395, 406 (noting that "[f]ederal governance of immigration and alien status is extensive and complex" and that States may not "interfere with the careful balance struck by Congress" in immigration law).

3

Second, Section 1373 simply underscores that States and localities may not use their custody of aliens subject to removal proceedings to impair the Federal Government's enforcement of federal law; the analysis in *Murphy* would likely have been very different if PASPA had only required States to share information regarding sports betting operations to facilitate federal regulation. *See Printz v. United States*, 521 U.S. 898, 918 (1997) (stating that federal statutes that "require only the provision of information to the Federal Government, do not involve . . . the forced participation of the States' executive in the actual administration of a federal program"); *see also, e.g.*, Organized Crime Control Act of 1970, Pub. L. No. 91-452, § 806, 84 Stat. 922, 939-40 (creating commission to evaluate national policy towards gambling, which was "authorized to call upon . . . States to furnish, on a reimbursable basis or otherwise, such statistical data, reports, and other information as the Commission deems necessary").

Third, the Supreme Court has explained elsewhere that its precedents on "commandeering" do not apply in the same way when access to information is at issue, a principle that *Murphy* did not question. The Constitution does not prohibit federal enactments that "do[ ] not require the States in their sovereign capacity to regulate their own citizens," but instead "regulate[ ] the States as the owners of data bases." *Reno v. Condon*, 528 U.S. 141, 151 (2000). Thus, the Court upheld a federal statute that "restrict[ed] the States' ability to disclose a driver's personal information without the driver's consent." *Id*. at 144. It made no difference that compliance with the statute would "require time and effort on the part of state employees," *id.* at 150, or that the State had acquired the relevant information in its capacity as a regulator of drivers. Further, the Court has recognized that statutes "which require only the provision of information to the Federal Government[ ] do not involve . . . the forced participation of the States' executive in the actual administration of a federal program." *Printz*, 521 U.S. at 918. As Justice O'Connor

4

explained, the Supreme Court's Tenth Amendment cases are not properly read to invalidate reporting requirements, such as the requirement for "state and local law enforcement agencies to report cases of missing children to the Department of Justice." *Id*. at 936 (O'Connor, J., concurring) (citing 42 U.S.C. § 5779(a)). This is because an information-access requirement like Section 1373 does not "regulate the States' sovereign authority to regulate their own citizens," *Murphy*, 2018 WL 2186168, at *14 (internal quotation marks omitted), but ensures federal access to information regarding regulated individuals that is needed for the Federal Government to regulate those individuals. Thus, since Section 1373 merely secures information needed to carry out a federal statutory scheme, there is no concern here regarding a deflection of political responsibility. *See Arizona*, 567 U.S. at 401 (referring to "comprehensive" federal statutory framework for regulation of immigration).

Finally, plaintiff seeks to rely on the *Murphy* Court's observation that PASPA's characterization as a positive demand or a negative prohibition was irrelevant to the Court's holding (Pl's Motion at 2-3, quoting *Murphy*, 2018 WL 2186168, at *13). But that observation was not the fulcrum of the Court's decision nor the operative distinction between PASPA and Section 1373. PASPA violated the Tenth Amendment because it sought to compel the States to enact state regulation and deflect federal accountability for that regulation; the Court's observation regarding positive demands and negative prohibitions was simply a rejection of an attempt to establish that PASPA did not constitute such a compulsion. 2018 WL 2186168, at *13. Thus, for purposes of determining the effect of *Murphy* in this case, if any, it is irrelevant whether Section 1373 is a positive demand or a negative prohibition.

Dated: May 31, 2018

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOHN R. LAUSCH, JR.
United States Attorney

JOHN R. TYLER
Assistant Director

s/ W. Scott Simpson
_____

W. SCOTT SIMPSON
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone: (202) 514-3495
Facsimile: (202) 616-8470
E-mail: scott.simpson@usdoj.gov

COUNSEL FOR DEFENDANT