## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| THE CITY OF CHICAGO,<br><br>        Plaintiff,<br><br>   v.<br><br>JEFFERSON BEAUREGARD SESSIONS III, Attorney General of the United States,<br><br>        Defendant. | Case No. 17 C 5720<br><br>Hon. Harry D. Leinenweber |

## STATE OF ILLINOIS'S UNOPPOSED MOTION
## FOR REASSIGNMENT OF CASE AS RELATED

The STATE OF ILLINOIS (the "State"), by LISA MADIGAN, the Attorney General of the State of Illinois, plaintiff in *State of Illinois v. Sessions*, No. 18 C 4791 (N.D. Ill. July 12, 2018), respectfully submits this motion pursuant to Local Rule 40.4 for a finding that its case is related to *City of Chicago v. Sessions*, No. 17 C 5720, currently pending before this Court, and for reassignment to this Court. The State has served defendants in *Illinois v. Sessions* with the summons and complaint in that case via hand delivery and certified mail. *See* Return of Service, *State of Illinois v. Sessions*, No. 18 C 4791 (N.D. Ill. July 13, 2018) (ECF No. 9). The State has conferred with both parties in *Chicago v. Sessions*, and both parties have advised the State that they do not oppose this motion to reassign.

## BACKGROUND

The City of Chicago (the "City") filed a complaint against defendant Jefferson Beauregard Sessions III ("Sessions") on August 7, 2017. The City's complaint seeks to enjoin Sessions from imposing conditions on funds issued to states and localities under the FY 2017 Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") program. These conditions are (1) a signed

certification of compliance with 8 U.S.C. § 1373 by the awardee jurisdiction's chief legal officer; (2) provision by the grant recipient of 48 hours' notice to the Department of Homeland Security ("DHS") regarding the scheduled release date and time of an alien upon request; and (3) provision by the grant recipient of access by DHS to detention and correctional facilities to interview aliens. The City's claims are for (1) ultra vires; (2) violation of the separation of powers; (3) violation of the Spending Clause; (4) violation of the Tenth Amendment's anti-commandeering rule; (5) a declaratory judgment that the City complies with 8 U.S.C. § 1373; and (6) violation of the Administrative Procedure Act.

After this Court granted a preliminary injunction against the notice and access conditions in *Chicago v. Sessions*, the State in November 2017 filed an amicus brief along with the State of California in support of the City's response to defendant Sessions's motion for a partial stay of the injunction pending appeal in the Seventh Circuit. Brief of States of California and Illinois as *Amici Curiae*, *City of Chicago v. Sessions*, No. 17-2991 (7th Cir. Nov. 21, 2017) (ECF No. 34). In January 2018, the State joined other states in filing a brief before this Court supporting the City, which noted that Illinois and the other *amici* states had not received FY 2017 Byrne JAG funding and argued that the FY 2017 Byrne JAG funding conditions were unlawful. *See City of Chicago*, Dkt. Nos. 149-1, 165.

On July 12, 2018, the State filed its own complaint in the Northern District of Illinois challenging the Byrne JAG conditions. The State named Sessions, the United States Department of Justice, Alan R. Hanson, and the Office of Justice Programs as defendants. *See* Compl., *State of Illinois v. Sessions*, No. 18 C 4791 (N.D. Ill. July 12, 2018) (ECF No. 1) (Ex. 1). The State's case was assigned to the Honorable Thomas M. Durkin. The State is seeking declaratory, injunctive, and mandamus relief against the defendants for their withholding of FY 2017 Byrne

JAG funds from the State and imposition of unlawful conditions on the awarding of these funds. The State alleges that the defendants have withheld these funds because of their objections to a State law that the defendants have interpreted as interfering with federal immigration enforcement, and that the defendants seek to impose ultra vires and unconstitutional conditions upon recipients of FY 2017 Byrne JAG funds. The State's claims are for (1) declaratory judgment; (2) ultra vires as to the notice and access conditions; (3) violation of the Tenth Amendment as to all three conditions; (4) violation of the Spending Clause as to all three conditions; (5) violation of the Administrative Procedure Act as to all three conditions; and (6) mandamus.

## ARGUMENT

### A.    This Case Is Related to *City of Chicago v. Sessions*, No. 17 C 5720

In a motion for reassignment, the "party seeking reassignment must first demonstrate that the cases are related" under Local Rule 40.4(a). *Blocker v. City of Chicago*, No. 09-cv-7052, 2011 WL 1004137, at *2 (N.D. Ill. Mar. 16, 2011). Under that rule, civil cases may be related if one of the following is true: (1) the cases involve the same property; (2) the cases involve some of the same issues of fact or law; (3) the cases grow out of the same transaction or occurrence; or (4) in class action suits, one or more of the classes involved in the cases is or are the same." Local R. 40.4(a). Here, the State's case satisfies factors (2) and (3).

The State's case involves several of the same issues of fact and law as *Chicago v. Sessions*. Local Rule 40.4(a)(2) "does not require complete identity of issues in order for cases to be considered related, rather it is enough that the two cases involve *some of* the same issues of fact or law." *Gautreaux v. Chi. Housing Auth.*, No. 66 C 1459, 2013 WL 5567771, at *2 (N.D. Ill. Oct. 9, 2013) (citations and quotations omitted). Here, both cases concern the Justice Department's attempt to impose the same immigration-related conditions on all FY 2017 Byrne JAG applicants

and awardees. Accordingly, the plaintiffs in both cases have asserted several of the same claims concerning these conditions, including that some or all of the conditions (1) are ultra vires; (2) violate the Spending Clause; (3) violate the Tenth Amendment's anti-commandeering rule; and (4) are arbitrary and capricious under the Administrative Procedure Act. And plaintiffs in both cases seek a declaration that a law governing each plaintiff's jurisdiction complies with the same federal statute, 8 U.S.C. § 1373—claims that will require statutory construction and constitutional interpretation of that federal statute in both instances. For the same reasons, both cases both grow out of the same decision by the Justice Department to impose the same three conditions on states and localities alike for FY 2017 Byrne JAG funds, confirming that the cases are related under Local Rule 40.4(a).

### B. *Illinois v. Sessions* Should Be Reassigned to This Court

Local Rule 40.4(b) requires satisfaction of four conditions before reassignment may be ordered: "(1) both cases are pending in this Court; (2) the handling of both cases by the same judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating a later filed case as related would be likely to delay the proceedings in the earlier case substantially; and (4) the cases are susceptible of disposition in a single proceeding." Like *Chicago v. Sessions*, this case is pending in the Northern District of Illinois; it also meets the three other required factors for reassignment.

### 1. Substantial saving of judicial time and effort

Adding the State's case to this Court's calendar will promote judicial efficiency. "By far the best means of avoiding wasteful overlap when related suits are pending in the same court is to consolidate all before a single judge." *Blair v. Equifax Check Servs.*, 181 F.3d 832, 839 (7th Cir. 1999). Here, this Court is sufficiently familiar with many of the factual and legal issues related to

the three FY 2017 Byrne JAG conditions at issue. Moreover, reassignment "will avoid the possibility for conflicting rulings, which is particularly significant because the plaintiffs in both cases"—here, the City and the State—"are seeking injunctive relief." *Peery v. Chi. Housing Auth.*, No. 13-cv-5819, 2013 WL 5408860, at *2 (N.D. Ill. Sept. 26, 2013).

### 2.      Reassignment would not substantially delay *Chicago v. Sessions*

Reassignment of the State's case to this Court would not substantially delay disposition of the *Chicago* case, and the parties in the *Chicago* case have advised the State that they do not oppose reassignment. Although this Court has granted a preliminary injunction in that litigation, it has not yet ruled on dispositive or partially dispositive motions that either party has filed. Furthermore, the State is not seeking consolidation of this case with *Chicago v. Sessions*; it is moving only for reassignment to this Court, which has gained significant experience adjudicating the issues that are common to both cases. The Court's separate adjudication of both cases would not delay the *Chicago* case. *See Helferich Patent Licensing, LLC v. N.Y. Times Co.*, No. 10-cv-4387, 2012 WL 1368193, at *3 (N.D. Ill. Apr. 19, 2012) (observing that "[r]eassignment does not require that the two cases be bound together, proceeding in unison for all purposes. In fact, reassignment does not even require the cases to be disposed of at the same time.").

### 3.      This case and *Chicago v. Sessions* are capable of disposition in a single proceeding

Reassignment is also proper because the *Illinois* and *Chicago* cases are "susceptible of disposition in a single proceeding." Local R. 40.4(b)(4). This factor concerns whether there are "common issues [that] are outcome determinative to both cases." *KJ v. Cook Cty. Sch. Dist. 104*, No. 15-cv-8551, 2016 WL 212958, at *2 (N.D. Ill. Jan. 19, 2016). Issues need not, however, be so common that the proceedings are mirror images of one another. *See, e.g.*, *Anderson v. Cornejo*, 199 F.R.D. 228, 262 (N.D. Ill. 2000) (granting motion to reassign despite the fact that "some

additional facts … have to be determined as to [how] each individual plaintiff" was allegedly subjected to unlawful searches). Moreover, reassignment "does not require proof that the cases can or should be consolidated," but rather "only a finding that the cases are 'susceptible' (that is, capable) of determination in a single proceeding." *Fairbanks Capital Corp. v. Jenkins*, No. 02-cv-3930, 2002 WL 31655277, at *3 (N.D. Ill. Nov. 25, 2002).

Here, both cases "involve fundamentally similar claims and defenses that will likely be amenable to dispositive treatment in unified proceedings." *Helferich Patent Licensing*, 2012 WL 1368193, at *3 (noting that the cases need not "be exactly identical"). As described above, plaintiffs in both cases assert similar claims concerning actions of defendant Sessions and others to place the same unlawful and unconstitutional conditions on FY 2017 Byrne JAG funding. *Compare* Ex. 1 ¶¶ 51–69, *with* Compl., *City of Chicago*, Dkt. No. 1, ¶¶ 76–85, 94–135, 142–55. Moreover, these claims involve questions of law that are uniform across the cases—including the shared constitutional and statutory claims discussed above—rather than case-specific questions of fact. *Cf. Fairbanks Capital Corp.*, 2002 WL 31655277, at *3 (granting motion to reassign because plaintiff's claims against various defendants could not be determined without addressing identical issue each defendant raised in their respective affirmative defenses).

In addition, defendants in the State's case are likely to oppose the State's Complaint with most of the arguments employed in opposing Chicago's motion for a preliminary injunction. Indeed, assuming defendants move to dismiss the State's Complaint, they are likely to argue that their actions are consistent with the governing federal statutes, *e.g.*, Defs.' Opp'n to Pl's Mot. for Prelim. Injunction, *City of Chi. v. Sessions*, No. 17-cv-5720, Dkt. No. 32, at *11–15; the Spending Clause, *id.* at *16–21; and the Administrative Procedure Act, *id.* at *15 n.3. In short, the Court will likely need to determine many of the same issues in the State's case that it is also facing in the

*Chicago* action, indicating that the cases are susceptible of determination in one proceeding.

## CONCLUSION

The State of Illinois, plaintiff in *Illinois v. Sessions*, No. 18 C 4791, respectfully requests that this Court grant its unopposed motion for reassignment of its case to this Court as related to *City of Chicago v. Sessions*, No. 17 C 5720.


Dated: July 18, 2018                    Respectfully submitted,

                                        LISA MADIGAN,
                                        Attorney General of Illinois

                                        /s/  Darren Kinkead
                                        Cara A. Hendrickson
                                        Jeanne Witherspoon
                                        Karyn L. Bass Ehler
                                        Darren Kinkead
                                        Matthew J. Martin
                                        Jeff VanDam
                                        Assistant Attorneys General
                                        100 West Randolph Street, 12th Floor
                                        Chicago, Illinois 60601
                                        Phone: (312) 814-3000
                                        Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

On the 18th day of July, 2018, I electronically filed the foregoing document using the Court's CM/ECF system. Counsel for all parties are registered CM/ECF users and will be served by that system.

/s/  Darren Kinkead
Darren Kinkead
Assistant Attorney General

# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS,<br><br>                    Plaintiff,<br><br>          v.<br><br>JEFFERSON BEAUREGARD SESSIONS III, in his official capacity as Attorney General of the United States; the UNITED STATES DEPARTMENT OF JUSTICE; ALAN R. HANSON, in his official capacity as Acting Assistant Attorney General for the Office of Justice Programs; and the OFFICE OF JUSTICE PROGRAMS,<br><br>                    Defendants. | Case No. 18 C 4791 |

## <u>COMPLAINT</u>

1.      The State of Illinois ("the State"), by LISA MADIGAN, the Attorney General of

the State of Illinois, brings this action to restore critically needed and statutorily mandated

federal funding for Illinois law enforcement agencies and criminal justice initiatives. For the past

decade, law enforcement entities across the State have received significant funding from the

Edward Byrne Memorial Justice Assistance Grant ("Byrne JAG") program. Now, Defendants

have unlawfully withheld Byrne JAG awards from Illinois police and prosecutors, threatening

the safety and welfare of all Illinois residents.

2.      Rather than affirming the public safety goals Congress codified in the Byrne JAG

statutes, Defendants have sought to use Byrne JAG funding as a tool to further their immigration

enforcement agenda. First, Defendants have explicitly targeted the State for denial of Byrne JAG

funds based on their opposition to the Illinois TRUST Act, a State law, enacted in 2017, that encourages cooperation between law enforcement and immigrant communities. Defendants have informed the State of their belief that the TRUST Act violates federal law by preventing communications between law enforcement and immigration authorities even though the TRUST Act expressly provides that it shall not be construed to restrict or prohibit any communications between law enforcement and immigration authorities. Second, Defendants are required by law to distribute Byrne JAG funds to states and localities, yet refuse to award Byrne JAG funds to law enforcement entities unless they agree to actively assist Defendants in immigration enforcement. The Seventh Circuit recently concluded that this position is unlawful. Defendants' attempts to withhold this federally mandated funding for law enforcement are contrary to law, good policing, and common sense. The State seeks declaratory, injunctive, and mandamus relief to address Defendants' multiple violations of federal statutes and the Constitution of the United States.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it involves a civil action arising under the Constitution and the laws of the United States. The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1346 because it is against the federal government and founded upon the Constitution and federal law. The Court is authorized to issue the relief sought here under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, the Administrative Procedure Act, 28 U.S.C. §§ 702, 705, 706, and the Mandamus Statute, 28 U.S.C. § 1361.

4.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claim occurred there, the

2

State maintains offices there, and no real property is involved in this action.

## PARTIES

5.      The State brings this action on its own behalf to protect its proprietary interests. The State also brings this action on behalf of the people of Illinois by and through Lisa Madigan, Attorney General of the State of Illinois, as authorized by her authority under the doctrine of *parens patriae* and in her capacity as the State's chief law enforcement officer.

6.      Defendant Jefferson Beauregard Sessions III is the Attorney General of the United States and is sued in his official capacity as the federal official in charge of Defendant United States Department of Justice.

7.      Defendant United States Department of Justice ("DOJ"), of which the Office of Justice Programs is a subsidiary agency, is responsible for the federal government actions described herein.

8.      Defendant Alan R. Hanson is the Principal Deputy Assistant Attorney General for OJP and is sued in his official capacity.

9.      Defendant Office of Justice Programs ("OJP") is a subsidiary agency of DOJ and administers the federal funding at issue in this case.

10.      The State brings this action because Defendants' unconstitutional and unlawful actions threaten the State's proprietary interests in the form of millions of dollars of funds appropriated by Congress for the direct benefit of the State, its law enforcement, and its residents. Defendants are required by statute to distribute these funds to the State pursuant to a strict formula. *See* 34 U.S.C. § 10156(a). As Defendants themselves have acknowledged, the

State is entitled to an allocation of over $6.5 million in Byrne JAG funds for FY 2017.[1] Absent the injunctive relief the State seeks, Illinois will be faced with the difficult task of deciding whether and to what extent to reduce funding for critical law enforcement initiatives.

11.     The interest in the health and well-being of Illinois residents—both physical and economic—is also implicated in this case, and the Attorney General therefore possesses *parens patriae* authority to commence legal action for violations of federal or State law. The Attorney General brings this action to defend the State's quasi-sovereign interest in the prevention of present and future harm to its residents, including those who are assisted by Illinois law enforcement entities lawfully entitled to receive the federal funding at issue. In addition, the Attorney General has *parens patriae* authority to pursue legal actions that ensure the State and its residents are not excluded from receiving benefits that flow from full and equal participation in the federal system. The Defendants' violations affect a substantial segment of the residents of the State, including direct victims as well as other members of the public who suffer the indirect effects of the Defendants' unlawful actions.

12.     The Attorney General, in her capacity as the State's chief law enforcement officer, is uniquely situated to seek declaratory and injunctive relief that protects the rights of law enforcement entities across Illinois as well as the Illinois residents they protect and serve. Defendants have identified the Attorney General as the officer required to certify the State's compliance with an unconstitutional requirement, which harms the Attorney General's performance of her duties as chief law enforcement officer. In addition, the State is aggrieved by Defendants' actions because of the injury to its sovereignty caused by the challenged actions.

---

[1] *See* Fiscal Year (FY) 2017 State Edward Byrne Memorial Justice Assistance Grant (JAG) Allocations, UNITED STATES DEPARTMENT OF JUSTICE BUREAU OF JUSTICE ASSISTANCE (last visited July 12, 2018), https://www.bja.gov/funding/17jagstateallocations.pdf.

The imposition of unconstitutional and unlawful conditions on federal funding as described in this Complaint impairs the State's ability to exercise its police power in a manner it deems necessary to protect the public.

## FACTUAL ALLEGATIONS

### I.   The Byrne JAG Program

13.    At issue in this complaint are the funds Illinois is entitled to receive from the Byrne JAG program, a partnership between federal, state, and local governments that promotes innovative and evidence-based solutions to prevent crime and to improve the justice system. State and local governments can use Byrne JAG funds to provide additional police personnel, equipment, and training; to develop drug treatment and enforcement programs; and to support crime victims and witnesses, among many other functions. The wide variety of law enforcement opportunities made possible through Byrne JAG reflects Congress's specific intent "to give State and local governments more flexibility to spend money for programs that work for them rather than to impose a 'one size fits all' solution." H.R. Rep. No. 109-233, at 89 (2005).

14.    Byrne JAG is a formula grant administered by Defendants, who "shall" allocate all congressionally appropriated funds to each state according to a prescribed methodology. *See* 34 U.S.C. §§ 10156(a), (b), (c). The State may retain some of these funds for itself, *see id.* § 10156(c)(1), and must disburse the rest to its local governments, *see id.* § 10156(c)(2). Federal law entitles the State to Byrne JAG funds so long as the State proposes to use them to achieve one of eight criminal justice goals articulated in the authorizing statute. *See id.* § 10152(a)(1).

15.    The State has long satisfied this statutory standard, having received Byrne JAG funds every year since the program's creation in 2005.[2] These funds have allowed the State to

---

[2] *Edward Byrne Memorial Justice Grant*, ILLINOIS CRIMINAL JUSTICE INFORMATION AUTHORITY (last visited July 12, 2018), https://bit.ly/2L8K5fl.

achieve extraordinary successes.

16.     For example, the Illinois Center of Excellence for Behavioral Health and Justice, based in Winnebago County, is featured on Defendants' website as a Byrne JAG "success story."[3] The Center plays a crucial role in implementing Illinois's novel "problem-solving courts," which offer services to offenders who are battling issues of mental health or substance abuse. By diverting these offenders from prison and treating their underlying challenges, problem-solving courts have the potential to reduce recidivism and the costs of incarceration— but only if implemented properly. Over the past six years, and with the assistance of Byrne JAG funds, the Center has trained professionals from each of the State's 102 counties to implement best practices for problem-solving courts. The Center's work to improve the criminal justice system benefits communities across the State.

17.     The State of Illinois's Multi-Jurisdictional Drug Task Forces are also Byrne JAG funding beneficiaries. These Drug Task Forces, designed particularly to combat narcotics distribution and trafficking, are formed by law enforcement agencies who agree to pool their resources across municipal and county lines. Currently, the Drug Task Forces serve 62 Illinois counties that span the entire State. A recent study found that these Drug Task Forces, in collaboration with community stakeholders, made proportionately more drug arrests carrying more serious felony and manufacture/delivery charges than their local police counterparts.[4] And these Drug Task Forces are on the front lines as the State combats the tragic opioid crisis that is devastating Illinois families.

---

[3] *BJA-Funded Program Supports Problem-Solving Courts Across Illinois*, U.S. DEPARTMENT OF JUSTICE BUREAU OF JUSTICE ASSISTANCE, https://bit.ly/2u9WBV5 (last visited July 12, 2018).
[4] Jessica Reichert *et al.*, Evaluation of Illinois Multi-Jurisdictional Drug Task Forces, ILLINOIS CRIMINAL JUSTICE INFORMATION AUTHORITY (Dec. 6, 2017), https://bit.ly/2L2pJY8.

18.     The Cook County Human Trafficking Task Force provides yet another example of an innovative and evidence-based initiative that benefits Illinois residents and is made possible by Byrne JAG funds. The Task Force is a collaboration between the Cook County State's Attorney's Office, the U.S. Attorney's Office for the Northern District of Illinois, and the Salvation Army STOP-IT Program—assisted by a diverse steering committee of more than 25 law enforcement and social service agencies. The goal of the Task Force is to implement a systemic collaboration between law enforcement and service providers towards the common goal of combating human trafficking in Illinois's largest county, and to provide comprehensive, high-quality social services to all victims of human trafficking. As a result of their collaboration, county prosecutors have charged 161 defendants in 128 indictments, federal prosecutors have charged 41 traffickers in 28 cases, and service providers have reached 230 victims.[5]

19.     These criminal justice programs illustrate a common thread reflected in similar efforts throughout the State. Byrne JAG funds allow Illinois law enforcement officers to respond to pressing community needs using data-driven, results-oriented techniques. They promote partnerships between federal, State, and local agencies to address shared enforcement responsibilities. They help to ensure that the State's criminal justice systems operate efficiently and effectively. Illinois residents are safer because of Byrne JAG funds.

**II.     Defendants Impose Three Unlawful Conditions on Recipients of Byrne JAG Funds**

20.     Defendants announced they were seeking state and municipal applications for FY 2017 Byrne JAG funds on July 25, 2017. In this solicitation, Defendants imposed new requirements on every state and municipality that receives FY 2017 Byrne JAG funds, including the three unlawful, immigration-related conditions that are the subject of this action. Those

---

[5] *About the Cook County Human Trafficking Task Force*, COOK COUNTY HUMAN TRAFFICKING TASK FORCE (last visited July 12, 2018), https://www.cookcountytaskforce.org/about-us.html.

conditions are the Compliance Condition, the Access Condition, and the Notice Condition, none

of which relates to the purpose of Byrne JAG funds: to strengthen state and local law

enforcement.

>    **A.       Compliance Condition**

21.      In the FY 2017 Byrne JAG solicitation, Defendants announced that, "in order

validly to accept an FY 2017 [Byrne] JAG award, the chief legal officer of the applicant State

must properly execute, and the State must submit, the specific certification regarding compliance

with 8 U.S.C. § 1373 attached to this solicitation as Appendix II."[6] The Attorney General of

Illinois is the State's chief legal officer, and thus is the required signatory pursuant to

Defendants' Compliance Condition.

22.      Section 1373 is titled "Communication between government agencies and the

Immigration and Naturalization Service" and contains two sections relevant to state

governments. Section 1373(a) provides in full as follows:

> Notwithstanding any other provision of Federal, State, or local law, a Federal,
> State, or local government entity or official may not prohibit, or in any way
> restrict, any government entity or official from sending to, or receiving from, the
> Immigration and Naturalization Service information regarding the citizenship or
> immigration status, lawful or unlawful, of any individual.

Section 1373(b), in turn, forbids a "person or agency" from "prohibit[ing], or in any way

restrict[ing]," a federal, state, or local government from "requesting" immigration-status

information from federal immigration authorities, "maintaining" such information, or

"exchanging" such information with other governments.

23.      Defendants' FY 2017 Byrne JAG solicitation included the following language in

a required document to be signed by a jurisdiction's chief legal officer to certify the

---

[6] Edward Byrne Memorial Justice Assistance Grant FY 2017 Solicitation, U.S. DEPARTMENT OF
JUSTICE BUREAU OF JUSTICE ASSISTANCE (July 25, 2017), https://bit.ly/2zrqdm1.

jurisdiction's compliance with 8 U.S.C. § 1373:

> All applicants should understand that OJP awards, including certifications provided in connection with such awards, are subject to review by DOJ, including by OJP and by the DOJ Office of the Inspector General. Applicants also should understand that a materially false, fictitious, or fraudulent statement (or concealment or omission of a material fact) in a certification submitted to OJP in support of an application may be the subject of criminal prosecution, and also may result in civil penalties and administrative remedies for false claims or otherwise.[7]

### B.    Access and Notice Conditions

24.    The FY 2017 state solicitation also announced two other "express conditions" relating to immigration enforcement.

25.    Pursuant to the Access Condition, Defendants will require recipients of Byrne JAG funds to "permit personnel of the U.S. Department of Homeland Security ('DHS') to access any correctional or detention facility in order to meet with an alien (or an individual believed to be an alien) and inquire as to his or her right to be or remain in the United States."[8]

26.    Pursuant to the Notice Condition, Defendants will require recipients of Byrne JAG funds to "provide at least 48 hours' advance notice to DHS regarding the scheduled release date and time of an alien in the jurisdiction's custody when DHS requests such notice in order to take custody of the alien pursuant to the Immigration and Nationality Act."[9]

27.    The Illinois Criminal Justice Information Authority ("ICJIA"), the entity charged by Illinois law with applying for criminal justice funds from the United States, *see* 20 ILCS 3930/7(k), responded to Defendants' solicitation by the deadline of August 25, 2017. ICJIA's application proposed to use Byrne JAG funds to achieve the criminal justice goals articulated in

---

[7] *Id.*
[8] *Id.*
[9] *Id.*

the authorizing statute, *see* 34 U.S.C. § 10152(a)(1), and satisfied all other lawfully imposed

requirements. But as indicated by the conditions imposed in the FY 2017 Byrne JAG state

solicitation, and consistent with Defendants' statements and actions as described below,

Defendants have not released Illinois's congressionally appropriated Byrne JAG funds despite

making FY 2017 awards to the vast majority of other States.[10]

**III.    Defendants Improperly Contend That the Illinois TRUST Act Violates Federal Law**

28.    Several months after the State submitted its application for Byrne JAG funds,

Defendants responded in a letter by claiming in conclusory fashion that the Illinois TRUST Act

conflicts with 8 U.S.C. § 1373. The State replied with a detailed explanation of the Act's

legality; however, the Defendants' erroneous position appears to remain unchanged.

**A.    The Illinois TRUST Act**

29.    Effective as of August 28, 2017, and codified at 5 ILCS 805/1 *et seq.*, the Illinois

TRUST Act was enacted to protect the safety and welfare of all Illinois residents by building

trust between law enforcement agencies and immigrant communities. The Act accomplishes this

purpose by limiting local police involvement in federal immigration enforcement.

30.    The TRUST Act "[r]ecogniz[es] that State law does not currently grant State or

local law enforcement the authority to enforce federal civil immigration laws." 5 ILCS 805/5. To

that end, the statute prohibits law enforcement agencies and officials from complying with

immigration detainers and non-judicial immigration warrants, which are requests issued by

immigration agents to law enforcement officials concerning the release and custody of

individuals. 5 ILCS 805/10, 5 ILCS 805/15(a). Such detainers or warrants include a request to a

---

[10] *See Awards Made for "BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - State Solicitation,"* DEPARTMENT OF JUSTICE BUREAU OF JUSTICE ASSISTANCE (last visited July 12, 2018), https://bit.ly/2uqQuv1.

law enforcement agency to maintain custody or provide notice of release of a person. 5 ILCS 805/10.

31. These provisions of the TRUST Act reflect the reality that law enforcement officials must earn the trust of community members to ensure that crimes are reported, witnesses are willing to cooperate, and offenders are punished. The goal of building trust has historically been difficult in immigrant communities, where residents often have a well-founded fear—regardless of their immigration status—that engaging with law enforcement could result in deportation. This lack of trust hinders the ability of local police to solve crime and protect residents. The State's law enforcement officers have a vital interest in making sure that their policies and conduct do not create barriers that discourage or prevent cooperation from the immigrant community and their families. The Illinois TRUST Act is a reform that seeks to maintain and strengthen this vital cooperation.

32. The Illinois TRUST Act also reflects the fact that law enforcement agencies may be open to liability if they comply with immigration detainers because such requests do not establish individualized probable cause that would be sufficient justification for local law enforcement to detain an individual under the Fourth Amendment. *See Moreno v. Napolitano*, 213 F. Supp. 3d 999 (N.D. Ill. 2016). The Constitution requires that any detention of an individual without a judicial warrant—including prolonging an initial detention—must be supported by probable cause that the individual committed a criminal offense, which is not satisfied by the existence of an immigration detainer.

33. In addition, the TRUST Act contains two savings clauses that preserve all communications between local law enforcement and federal immigration authorities. First, Section 5 states that the "Act shall not be construed to prohibit or restrict any entity from sending

11

to, or receiving from, the United States Department of Homeland Security or other federal, State,

or local government entity information regarding the citizenship or immigration status of any

individual under Sections 1373 and 1644 of Title 8 of the United States Code." The second states

that "[n]othing in this Section 15 prohibits communication between federal agencies or officials

and law enforcement agencies or officials." 5 ILCS 805/15(c).

**B.    Defendants' Communications with the State About the Illinois TRUST Act**

34.    According to the FY 2017 Byrne JAG solicitation, Defendants anticipated issuing

Byrne JAG award notifications by September 30, 2017. Those notifications were to include

detailed instructions on the steps states would be required to take in order to accept their

awards—including consent to the Compliance, Access, and Notice Conditions. To date,

however, Defendants have not issued an award notification or otherwise contacted ICJIA or any

other Illinois entity regarding an acceptance of ICJIA's FY 2017 Byrne JAG application.

35.    Instead of responding directly to ICJIA's Byrne JAG application, on November

15, 2017, Defendant Hanson sent ICJIA a letter concerning the State's compliance with 8 U.S.C.

§ 1373. According to the letter, "[t]he Department of Justice is concerned that" the TRUST Act

"appears to restrict the sending of information regarding immigration status, in violation of

section 1373(a)."

36.    Hanson's letter lacked any explanation as to why the TRUST Act "appears to

restrict the sending of information" about immigration status in violation of 8 U.S.C. § 1373(a).

Rather, the letter requested a narrative detailing any Illinois "laws, policies, or practices that

violate section 1373," including the TRUST Act, and asked for an explanation of "so called

'savings clauses'" in these Illinois laws.

37.    In response to Hanson's letter, ICJIA explained that Hanson's interpretation of the

TRUST Act was "untenable for multiple reasons." ICJIA described the Illinois TRUST Act's

savings clauses and explained that "[t]hese provisions are interpreted in accordance with their plain meaning. Thus, the [Illinois TRUST Act] does not restrict Illinois officers or employees from sending information regarding the immigration status of any individual." As a result, ICJIA concluded, there is no conflict between Illinois law and 8 U.S.C. § 1373, and ICJIA had complied with Section 1373 throughout FY 2016 and would do so in FY 2017.

38.     Defendants were not satisfied. "After reviewing your response," a Department of Justice official responded to ICJIA, "the Department remains concerned that your jurisdiction's laws, policies, or practices may violate section 1373, or, at a minimum, that they may be interpreted or applied in a manner inconsistent with section 1373." Without explaining further, Defendants then requested Illinois produce all "orders, directives, instructions, or guidance to your law enforcement employees" regarding communications with federal immigration officials. ICJIA complied on February 23, 2018, but there has been no response from Defendants in the five months since the letter was sent. The documents that ICJIA provided to Defendants revealed no conflict between the Illinois TRUST Act and Section 1373, either as written or in practice. To date, Defendants have never pointed to an actual incident in which an Illinois law enforcement officer refused to share immigration-status information with federal authorities on the basis of the Illinois TRUST Act.

39.     Defendants' imposition of immigration-related conditions on FY 2017 Byrne JAG funding has been litigated in several courts, including the Seventh Circuit, which concluded in April 2018 that DOJ lacked authority to impose the Notice and Access Conditions. *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018). After the injunction was issued, Defendants announced that "the final award of Byrne JAG awards for the FY 2017 program is delayed due

to the nationwide injunction."[11] However, Defendant Sessions in June 2018 successfully moved for a stay of the nationwide effect of the court order enjoining those conditions. Order, *City of Chicago v. Sessions*, No. 17-2991, Dkt. No. 134 (7th Cir. June 29, 2018). The injunction remains in effect as to the City of Chicago.

40.     The day after the stay was issued, Defendants announced that they would begin distributing FY 2017 Byrne JAG funds, but only "to jurisdictions that share the Department's commitment to keeping criminal aliens off our streets and our law abiding citizens safe."[12] Although nearly all other states and over 750 cities and counties[13] have now been awarded FY 2017 Byrne JAG funds, the State of Illinois has not.

**IV.     Defendants Lack Authority to Impose the Compliance, Access, and Notice Conditions**

41.     As is codified in the TRUST Act itself, there is no conflict between the Illinois TRUST Act and 8 U.S.C. § 1373. Nor does any other provision of Illinois law restrict the ability of state or local police to communicate with federal authorities regarding immigration-status information. Illinois therefore satisfies the Compliance Condition. Accordingly, Defendants may not impose the Compliance Condition to withhold the State's FY 2017 Byrne JAG funds.

42.     In addition, Defendants may not impose the Compliance Condition to withhold the State's FY 2017 Byrne JAG funds because Defendants lack the authority to impose the Compliance Condition in the first instance. The Tenth Amendment limits Congress's legislative authority to those powers enumerated in the Constitution. Congress may not directly compel

---

[11] *See* Update Regarding FY 2017 Byrne JAG Grant Awards, DEPARTMENT OF JUSTICE BUREAU OF JUSTICE ASSISTANCE (last visited July 12, 2018), https://www.bja.gov/jag/updates.html.

[12] Kelly Cohen, *Justice Department Starts Handing out Public Safety Grants to Non-Sanctuary Cities*, Wash. Examiner (June 27, 2018), https://washex.am/2tLlpBX.

[13] *See Awards Made for "BJA FY 17 Edward Byrne Memorial Justice Assistance Grant (JAG) Program - Local Solicitation,"* DEPARTMENT OF JUSTICE BUREAU OF JUSTICE ASSISTANCE (last visited July 12, 2018), https://bit.ly/2JbgWhE.

states to enact a regulation or enforce a federal regulatory program, conscript state officers for such purpose, or prohibit a state from enacting laws. This constitutional anti-commandeering principle is not a mere technicality; to the contrary, it "is one of the Constitution's structural protections of liberty." *Printz v. United States*, 521 U.S. 898, 921 (1997). Among other benefits, the anti-commandeering principle ensures that the sovereign states are free to legislate as they see fit to promote the safety and welfare of their residents.

43. The Supreme Court recently clarified that the anti-commandeering principle forbids Congress to "unequivocally dictate[ ] what a state legislature may and may not do." *Murphy v. NCAA*, 138 S. Ct. 1461, 1478 (2018). "A more direct affront to state sovereignty is not easy to imagine." *Id.* But this is precisely what 8 U.S.C. § 1373(a) and (b) do. These provisions dictate to states like Illinois that they may not promulgate laws or regulations that prohibit state or local officials from sharing immigration-status information with federal officials. Nor are Section 1373(a) and (b) preemptive federal laws, for such laws, unlike Section 1373, "regulate[] the conduct of private actors, not the States." *Murphy*, 138 S. Ct. at 1481. For this reason, 8 U.S.C. § 1373(a) and (b) are unconstitutional. And Defendants may not, of course, condition Illinois's Byrne JAG funds on the State's compliance with an unconstitutional statute. *E.g., City of Philadelphia v. Sessions*, No. 17-3894, 2018 WL 2725503, at *28-*33 (E.D. Pa. June 6, 2018); *accord United States v. California*, No. 2:18-cv-490-JAM-KJN, 2018 WL 3301414, at *14 (E.D. Cal. July 5, 2018) ("The Court finds the constitutionality of Section 1373 highly suspect.").

44. The Compliance Condition also runs afoul of the Spending Clause, for two separate reasons. First, the federal government may not impose a condition on a spending grant unless it is relevant to the federal interest in that grant program; otherwise, the conditions veer

15

into impermissible federal regulation of state and local governments. Here, the immigration-enforcement provisions of 8 U.S.C. § 1373 have absolutely nothing to do with the federal interest in the Byrne JAG grant program—to promote innovative and evidence-based criminal-justice initiatives like the Illinois Center of Excellence for Behavioral Health and Justice's work on problem-solving courts, the Multi-Jurisdictional Drug Task Forces' cases against serious narcotics felonies, and the Cook County Human Trafficking Task Force. Second, the Compliance Condition is impermissibly ambiguous—particularly in view of Defendants' cryptic "concerns" asserted over the past year that make it difficult to determine what they understand 8 U.S.C. § 1373 to require of the State. For either of these reasons, Defendants many not impose the Compliance Condition on Illinois.

45.     The Compliance Condition also violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* The Compliance Condition is arbitrary and capricious because Defendants' decision to impose it fails to rely on reasoned decisionmaking or cites reasons contradicted by the evidence. In particular, Defendants employed an erroneous understanding of the plain language of the Illinois TRUST Act and unfounded assumptions as to how the TRUST Act affects Illinois law enforcement. Defendants have likewise disregarded the critical need to build trust between local police and immigrant communities in order to protect all Illinois residents.

46.     The Access and Notice Conditions also exceed Defendants' authority, and therefore may not be imposed by Defendants to withhold Illinois's Byrne JAG funds either. Defendants, as members of the executive branch, have no inherent authority to impose additional conditions on funds appropriated by the legislative branch for the Byrne JAG grant program; if they have the authority to do so, it must originate with Congress. But as the Seventh Circuit held in *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018), the Byrne JAG statute does not

16

contain a single provision that could authorize Defendants to impose the Access and Notice Conditions on any state or local jurisdiction. And even if imposed by Congress, the Access and Notice Conditions would violate the Spending Clause because they are not germane to the purposes of Byrne JAG funding, *see* 34 U.S.C. § 10152(a)(1), and are impermissibly ambiguous. Nor does any other statute grant Defendants such authority. Their attempt to force the Access and Notice Conditions upon Byrne JAG grant recipients like Illinois is therefore unconstitutional and unlawful.

## CLAIMS

### Count I: Declaratory Judgment

47.     The State incorporates by reference the allegations of the preceding paragraphs 1 through 46.

48.     An actual controversy exists as to whether the State satisfies the Compliance Condition Defendants have attached to receipt of FY 2017 Byrne JAG funds. Defendants have indicated that they have determined or will determine that there is a conflict between the Illinois TRUST Act and 8 U.S.C. § 1373, and that the State therefore does not satisfy the Compliance Condition. Accordingly, the State has a credible fear that Defendants, as a result of this determination, have withheld the State's FY 2017 Byrne JAG funds.

49.     In truth, there is no conflict between the Illinois TRUST Act and 8 U.S.C. § 1373. Section 1373 merely prohibits restrictions on the sharing, receiving, requesting, and maintaining of immigration-status information. It does not prohibit restrictions on complying with immigration detainers and non-judicial immigration warrants, which is all the TRUST Act concerns. The TRUST Act expressly provides that it shall not be construed to restrict or prohibit any communications between state law enforcement officials and federal immigration

17

authorities. Defendants therefore lack any basis to determine that the State does not satisfy the Compliance Condition.

50.     Pursuant to 28 U.S.C. § 2201, the State is entitled to a declaration that the Illinois Trust Act complies with 8 U.S.C. § 1373, that the Illinois TRUST Act does not provide a basis for withholding or terminating any of the State's Byrne JAG funding, and that Illinois satisfies the Compliance Condition imposed by Defendants on recipients of FY 2017 Byrne JAG funds.

**Count II: Ultra Vires as to the Access and Notice Conditions**

51.     The State incorporates by reference the allegations of the preceding paragraphs 1 through 46.

52.     Defendants may exercise only that power authoritatively prescribed by Congress. Defendants are required by law to distribute Byrne JAG funds to the State, and lack statutory authority to require States like Illinois to comply with the Access and Notice Conditions in order to receive Byrne JAG funds. Neither the Byrne JAG statute nor any other provision of law contains authority for Defendants to impose additional substantive conditions like the Access and Notice Conditions. For the reasons set forth by the Seventh Circuit in *City of Chicago v. Sessions*, 888 F.3d 272 (7th Cir. 2018), the Access and Notice Conditions unlawfully exceed Defendants' powers and intrude upon the powers of Congress.

53.     The Constitution vests the spending power in Congress, not the President. The President does not have unilateral authority to refuse to spend funds that have already been appropriated by Congress for a particular project or program. Imposing a new condition on a federal grant program amounts to refusing to spend money appropriated by Congress unless that condition is satisfied.

54.     The Access and Notice Conditions were not imposed by Congress but rather by

18

Defendants in issuing the FY 2017 Byrne JAG application. Therefore, the Access and Notice Conditions amount to an improper usurpation of Congress's spending power by the executive branch.

55. Pursuant to 28 U.S.C. § 2201, Illinois is entitled to a declaration that the Access and Notice Conditions are ultra vires and unconstitutional, that these conditions do not provide a basis for withholding or terminating any of the State's federal funding, and that Defendants may not impose these conditions to withhold the State's FY 2017 Byrne JAG funds.

**Count III**: **Violation of the Tenth Amendment as to All Three Conditions**

56. The State incorporates by reference the allegations of the preceding paragraphs 1 through 46.

57. The Tenth Amendment prohibits the federal government from requiring state and local governments to govern according to Congress's instructions or from commandeering state officials to administer or enforce a federal regulatory program. This anti-commandeering principle also forbids Congress from unequivocally dictating what a state legislature may and may not do—a direct affront to state sovereignty.

58. Using 8 U.S.C. §§ 1373(a) and (b), Defendants attempt to commandeer the State and its political subdivisions by directing how their personnel act and handle data under state and local control in order to advance a federal program. Section 1373 issues a direct order to state legislatures by prohibiting them from enacting statutes concerning the sharing of immigration-status information. Section 1373 also itself directly injects the federal government into state government affairs by dictating what measures state law enforcement entities must not take concerning immigration enforcement. This interference violates the Tenth Amendment, and Illinois cannot be required to comply with an unconstitutional statute. Accordingly, Defendants

19

may not impose the Compliance Condition on Illinois.

59.     The Access and Notice Conditions also commandeer the State and its political subdivisions contrary to the Tenth Amendment. The Access Condition requires a fundamental restructuring of State facilities' procedures and functions in order to accommodate on-demand access to their detainees for federal immigration authorities. The Notice Condition requires a fundamental restructuring of the manner in which the State has chosen to balance Fourth Amendment considerations against its interest in effective law enforcement. Accordingly, Defendants may not impose either the Access or Notice Conditions on the State.

60.     Pursuant to 28 U.S.C. § 2201, the State is entitled to a declaration that the Compliance, Access, and Notice Conditions are unconstitutional and unlawful, that these conditions do not provide a basis for withholding or terminating any of the State's federal funding, and that Defendants may not impose these conditions to withhold the State's FY 2017 Byrne JAG funds.

### Count IV: Violation of the Spending Clause as to All Three Conditions

61.     Illinois incorporates by reference the allegations of the preceding paragraphs 1 through 46.

62.     Congress's spending power under the Spending Clause, Art. I, § 8, cl. 1, is not unlimited. When Congress desires to condition the states' receipt of federal funds, it must do so unambiguously to enable the states to exercise their choice knowingly, cognizant of the consequences of their participation. In addition, any condition that Congress imposes must be related to the federal interest in the particular national projects or programs.

63.     The Compliance, Access, and Notice Conditions are ambiguous because they do not provide Illinois with notice to make a choice knowingly, cognizant of the consequences of its

participation. These conditions are also unrelated to the federal interest in particular national projects or programs for which Congress intended Byrne JAG funds to be used. In particular, the immigration objectives reflected in the conditions are not germane to the functions of local law enforcement.

64.     Pursuant to 28 U.S.C. § 2201, Illinois is entitled to a declaration that the Compliance, Access, and Notice Conditions are unconstitutional and unlawful, that these conditions do not provide a basis for withholding or terminating any of the State's federal funding, and that Defendants may not impose these conditions to withhold the State's FY 2017 Byrne JAG funds.

## **Count V**: **Violation of the Administrative Procedure Act as to All Three Conditions**

65.     Illinois incorporates by reference the allegations of the preceding paragraphs 1 through 46 and 51 through 64.

66.     Pursuant to the Administrative Procedure Act, Defendant United States Department of Justice is an agency, 5 U.S.C. § 551(1), and the FY 2017 Byrne JAG state solicitation issued on July 25, 2017 constitutes agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court, *id.* §§ 551(13) & 704.

67.     The courts must hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.* § 706(2)(A). The courts must hold unlawful and set aside agency action, findings, and conclusions found to be contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory rights. *Id.* § 706(2)(B) & (C).

68.     Defendants' imposition of the Compliance, Access, and Notice Conditions on the

State is arbitrary and capricious because it relies on factors Congress did not intend and fails to rely on reasoned decisionmaking. In addition, Defendants' imposition of the Compliance, Access, and Notice Conditions is unconstitutional or unlawful for the reasons set forth in paragraphs 51 through 64 of this complaint.

69.     Pursuant to 5 U.S.C. § 706 and 28 U.S.C. § 2201, the State is entitled to a declaration that the Compliance, Access, and Notice Conditions violate the Administrative Procedure Act, that these conditions do not provide a basis for withholding or terminating any of the State's federal funding, and that Defendants may not withhold the State's FY 2017 Byrne JAG funds on the basis of these conditions.

## Count VI: Mandamus

70.     Illinois incorporates by reference the allegations of the preceding paragraphs 1 through 46.

71.     Pursuant to Part A, Subchapter V, Chapter 101, Subtitle 1, of Title 34 of the United States Code, the State has a clear right to receive from Defendants—and Defendants have a nondiscretionary duty to provide to the State—a Byrne JAG award notification that does not contain any unconstitutional or unlawful conditions. No other adequate remedy is available to the State.

72.     Pursuant to 28 U.S.C. § 1361, this Court has the authority to issue a writ of mandamus compelling Defendants to perform their duty to provide the State a Byrne JAG award notification that does not contain any unconstitutional or unlawful conditions.

**PRAYER FOR RELIEF**

WHEREFORE, the State of Illinois, by Lisa Madigan, the Attorney General of Illinois, prays this Court:

A.      Declare that the Illinois TRUST Act does not provide a basis for withholding or terminating any of the State's Byrne JAG funding and that the State satisfies the Compliance Condition;

B.      Declare that Defendants' imposition of the Access and Notice Conditions is ultra vires;

C.      Declare that Defendants' imposition of the Compliance, Access, and Notice Conditions is unconstitutional for violation of the Tenth Amendment and the Spending Clause;

D.      Declare that Defendants' imposition of the Compliance, Access, and Notice Conditions is unlawful for violation of the Administrative Procedure Act;

E.      Schedule a speedy hearing on the State's prayer for declaratory relief as permitted by Federal Rule of Civil Procedure 57;

F.      Enjoin Defendants from enforcing the Compliance, Access, and Notice Conditions with respect to FY 2017 Byrne JAG funds and retain jurisdiction to monitor Defendants' compliance;

G.      Issue a writ of mandamus compelling Defendants to immediately disburse the State's FY 2017 Byrne JAG award, without further delay; and

H.      Award costs and grant such other relief as this Court may deem just and proper.

Dated: July 12, 2018                    Respectfully submitted,

                                        LISA MADIGAN,
                                        Attorney General of Illinois

                                        /s/ Cara A. Hendrickson
                                        Cara A. Hendrickson
                                        Jeanne Witherspoon
                                        Karyn L. Bass Ehler
                                        Darren Kinkead
                                        Matthew J. Martin
                                        Jeff VanDam
                                        Assistant Attorneys General
                                        100 West Randolph Street, 12th Floor
                                        Chicago, Illinois 60601
                                        Phone: (312) 814-3000

                                        *Attorneys for Plaintiff*